# Exhibit B

**Ambulatory Surgery Center Lease Agreement**

**Tenant**

**SARC by HSI - KELLER, TX Inc.**

**Lease Guaranty**

**Healthcare Solutions Management Group, Inc.**

**Developed by American Development Partners**

## AMBULATORY SURGERY CENTER LEASE AGREEMENT

**THIS AMBULATORY SURGERY CENTER LEASE AGREEMENT** ("Lease") is entered into as of 11/18/20 (the "Effective Date") by and between Millrock Investment fund 1 LLC, a Utah limited liability company ("Landlord") and SARC by HSI - KELLER, TX Inc., a Delaware corporation ("Tenant").

## RECITALS

WHEAREAS, Landlord is the owner of, or is under contract to purchase, the land, buildings, and improvements located at 1220 Keller Parkway, Keller, Tx. and more particularly described in attached Exhibit "A" ("Premises"); and

WHEREAS, Landlord desires to lease to Tenant and Tenant desires to lease from Landlord the Premises as a walk-in clinic focused on the delivery of ambulatory care in a dedicated medical facility outside of a traditional emergency room ("Ambulatory Surgery Center").

NOW THEREFORE, for good and valuable consideration, the parties agree as follows:

### SECTION ONE. PREMISES.

Landlord leases to Tenant and Tenant leases from Landlord the Premises on the terms and conditions in this Lease. The Premises is the real property described on the attached Exhibit "**A**", and all improvements belonging to Landlord now or in the future located on the real property (including the Improvements completed pursuant to Section 13 below).

### SECTION TWO. INTIAL TERM OF LEASE/OPTIONS TO RENEW.

(a)  <u>Effective/Commencement and Termination Dates of Initial Term.</u>  The initial term of this Lease shall be for twenty (20) years (the "Initial Term").   The term of this Lease (the "Term") shall commence upon the earlier of (i) Landlord's substantial completion of the Improvements in accordance with the Scope of Work (each as defined in Section 13(a) hereof) ("Landlord's Work") and Landlord's receipt of a certificate of occupancy (or equivalent) for the Premises, or (ii) the date upon which Tenant opens to the public for business within the Premises (such earlier date being the "Commencement Date").   The termination date shall be twenty (20) years after the Commencement Date (the "Termination Date"), subject to Section 2(b) below. Should the Commencement Date fall on any day other than the 1st of the month, the Term shall be extended by any partial month thereof.   Promptly following the Commencement Date, Landlord and Tenant shall execute a Commencement Date Agreement in the form attached hereto as Exhibit "F". If for whatever reason the construction has not been started on or before 270 days from the date of the building purchase the lease is considered null and void.

(b)  <u>Option Periods</u>.  Landlord grants to Tenant options to extend the Term of this Lease for three (3) consecutive five (5) year periods (each, an "Option Period") upon the same terms and conditions set forth in this Lease, at an adjusted Minimum Monthly Rent as determined prior to

the beginning of each Option Period in accordance with Section 4(c) hereof. Tenant's extension option shall be exercised by Tenant upon written notice to Landlord at least one hundred eighty (180) days but no more than two-hundred seventy (270) days prior to the expiration of the Initial Term of this Lease or any Option Period, as applicable. Notwithstanding the foregoing, the extension options described above shall be null and void and of no further force or effect if any of the following have occurred: (i) Tenant has assigned this Lease or sublet the Premises, notwithstanding the fact Landlord may have consented to such assignment or subletting; (ii) A default has occurred and is continuing, either at the time Tenant exercises the option or at the time the renewal term is scheduled to commence; or (iii) Tenant has vacated the Premises. In no event shall any Landlord's Work, improvement allowance or other monies or work be required of Landlord in connection with any such Option Period.

### SECTION THREE. DELAY IN POSSESSION

If for any reason Landlord fails to deliver or offer to deliver physical possession of the Premises to Tenant, this Lease shall not be void or voidable, nor shall Landlord be liable to Tenant for any loss or damage resulting from the failure to deliver possession, so long as Landlord has exercised, and continues to exercise, reasonable diligence to deliver possession; provided, however, that rent shall be abated until Landlord delivers physical possession of the Premises to Tenant. Tenant's taking possession of the Premises or any portion thereof shall be conclusive evidence that (i) Landlord's Work is complete, and (ii) the Premises are in the condition required by this Lease and in good order and satisfactory condition.

### SECTION FOUR.  MINIMUM MONTHLY RENT

(a) Partial Rent - Beginning 30 days after the building is purchased the tenant will pay 50% of the scheduled rent payable in advance on the first day of each month at the following address in accordance with the rent schedule below:
(b) Full Rent - Beginning on the date that the tenant receive the full certificate of occupancy and completion of construction the tenant will pay 100% of the scheduled rent payable in advance on the first day of each month at the following address in accordance with the rent schedule below:

CAMS Realty LLC / Mountain West
C/O Mary Street
Mary.street@mtnwest.com
2015 West Grove Parkway, Suite J, Pleasant Grove, UT 84062

or at another address that Landlord may from time to time designate by written notice to Tenant. Additionally, the Lease Administrator may direct the Tenant to deposit the rent by ACH to a designated bank account

On each anniversary of the Commencement Date through and until the Termination Date of the Initial Term, the Minimum Monthly Rent shall increase annually by 2% as follows:

| YEAR | RENT | ANNUALLY |
|------|------|----------|
| 1 | $83,519.79 | $1,002,237.50 |
| 2 | $85,190.19 | $1,022,282.25 |
| 3 | $86,893.99 | $1,042,727.90 |
| 4 | $88,631.87 | $1,063,582.45 |
| 5 | $90,404.51 | $1,084,854.10 |
| 6 | $92,212.60 | $1,106,551.18 |
| 7 | $94,056.85 | $1,128,682.21 |
| 8 | $95,937.99 | $1,151,255.85 |
| 9 | $97,856.75 | $1,174,280.97 |
| 10 | $99,813.88 | $1,197,766.59 |
| 11 | $101,810.16 | $1,221,721.92 |
| 12 | $103,846.36 | $1,246,156.36 |
| 13 | $105,923.29 | $1,271,079.49 |
| 14 | $108,041.76 | $1,296,501.08 |
| 15 | $110,202.59 | $1,322,431.10 |
| 16 | $112,406.64 | $1,348,879.72 |
| 17 | $114,654.78 | $1,375,857.31 |
| 18 | $116,947.87 | $1,403,374.46 |
| 19 | $119,286.83 | $1,431,441.95 |
| 20 | $121,672.57 | $1,460,070.79 |

Notwithstanding the foregoing rent schedule, the final rent schedule for Minimum Monthly Rent will be calculated by Landlord upon completion of Landlord's Work. Minimum Monthly Rent for Year 1 will be calculated at 9% of the total cost of Landlord's Work (the "Final Rent Calculation"), including, but not limited to, the cost of land acquisitions, construction costs, pursuit and due diligence fees, design fees, development fees, and all other hard and soft costs incurred by Landlord, directly or indirectly, in connection with the acquisition and development of the Premises and completion of Landlord's Work. Landlord and Tenant agree that the Final Rent Calculation may not exceed a thirty percent (30%) increase over the Minimum Monthly Rent for Year 1 specified above. Tenants agree that the Final Rent Calculation may not exceed a thirty percent (30%) increase over the Minimum Monthly Rent for Year 1 specified above. Revisions to the schedule of the Minimum Monthly Rent, if any, will be contained in the Commencement Date Agreement.

(a) Minimum Monthly Rent During Option Periods.

(i) <u>First 5-year Option Period</u>: Market Rate (Determined pursuant to Section 5) but in no event, shall the Minimum Monthly Rent be less than 100% of the Minimum Monthly Rent under this Lease for the period immediately preceding the commencement of the First Option Period.

(ii) Second 5-year Option Period: Market Rate (Determined pursuant to Section 5) but in no event shall the Minimum Monthly Rent be less than 100% of the Minimum Monthly Rent under this Lease for the period immediately preceding the commencement of the Second Option Period

(iii) Third 5-year Option Period: Market Rate (Determined pursuant to Section 5) but in no event, shall the Minimum Monthly Rent be less than 100% of the Minimum Monthly Rent under this Lease for the period immediately preceding the commencement of the Third Option Period.

## SECTION FIVE. MARKET RATE.

(a) Market Rate Definition.  "Market Rate" shall be defined as the bona fide rates, terms and conditions then being paid by tenants in "arm's length" transactions for comparable space, for comparable uses, in comparable buildings in the same geographic submarket as the Premises within the previous six (6) month period.  To determine the Market Rate the parties must also take into consideration the quality, size, design and location of the Premises.

(b) Determination and Appraisal Process.  In the event Tenant exercises a renewal option, to initiate the negotiation, Tenant shall notify Landlord in writing of Tenant's determination of the Market Rate for the applicable Option Period (the "Tenant's Initial Determination"). Landlord shall, within fifteen (15) days following receipt of Tenant's Initial Determination, notify Tenant in writing that it accepts Tenant's Initial Determination or, if it does not, notify Tenant of Landlord's determination of the Market Rate ("Landlord's Initial Determination"). If, within fifteen (15) days after receipt by Tenant of Landlord's Initial Determination, Tenant rejects in writing Landlord's determination, the parties agree to negotiate their differences in good faith within thirty (30) days following Landlord's receipt of Tenant's notice of objection or deemed rejection. Should the parties be unable to agree upon the Market Rate within such thirty (30) day period, the parties will each appoint a real estate appraiser who is a member of the American Institute of Real Estate Appraisers with at least five (5) years full-time commercial appraisal experience in the geographic area in which the Premises are located to determine the Market Rate. If either Landlord or Tenant does not notify the other party in writing that it has appointed an appraiser within ten (10) days after the other party has provided written notice of its appointed appraiser, the single appraiser appointed will determine the Market Rate. If two (2) appraisers are appointed, they will meet promptly and attempt to set the Market Rate. If the two appraisers agree upon a Market Rate, such determination shall be final and binding on the parties. If they are unable to agree on the Market Rate within thirty (30) days after the date upon which the second appraiser has been appointed, the two appraisers will appoint, or request that the American Institute of Real Estate Appraisers appoint, a third appraiser meeting the qualifications stated in this paragraph and the appraisers will then notify Landlord and Tenant of such appraiser's name, address and selection within ten (10) days following the failure of the parties to agree upon the Market Rate. Landlord and Tenant will each bear one half (1/2) of the cost of the third appraiser. The third appraiser, however selected, must be a person who has not previously acted in any capacity for either Landlord or Tenant. Within thirty (30) days after the selection of the third appraiser, a majority of the appraisers will determine the Market Rate. If a majority of the appraisers cannot agree on the Market Rate within thirty (30) days after selection of the third appraiser, the high and the low appraisal will be thrown out and the middle appraisal shall be the final and binding determination of the Market Rate.

(c) <u>Amendment</u>. The parties will execute an amendment to this Lease within fifteen (15) days after determination of the new Market Rate.

## SECTION SIX. MEMORANDUM OF LEASE.

Contemporaneously with the execution of this Lease, or at any time or from time to time hereafter, at the request of either Landlord or Tenant, the parties will execute and deliver a Memorandum of Lease in recordable form which either party may record at its sole expense. The Memorandum of Lease shall not contain rental amounts.

## SECTION SEVEN. TENANT PAYMENTS.

(a) <u>Minimum Monthly Rent</u>. Tenant shall pay Landlord as rent for the Premises a sum equal to the Minimum Monthly Rent set forth in <u>Section 4</u> on or before the first (1st) day of each and every month during the Term of this Lease and continuing for the duration of the Term of this Lease. If any installment of Rent due from Tenant shall not be received by Landlord within five (5) days after the date due, Tenant shall pay to Landlord a late charge equal to five percent (5%) of such overdue amount. The parties agree that such late charge represents a fair and reasonable estimate of the costs Landlord will incur by reason of late payment by Tenant. Except as expressly set forth herein, any amount due to Landlord not paid within ten (10) days after written notice that such payment is past due shall bear interest at 1 ½ percent per month or any part of a month until the date such amount is paid.

(b) <u>Utilities</u>. Tenant shall promptly pay for all utilities and other services including, but not limited to, telephone, water, sewage service charges, garbage or trash removal, fuels, including natural gas, and electricity, for any heating in the Premises furnished to and or used in or at the Premises for any purpose, from and after the date Tenant shall have possessed the Premises, whether prior to, during or after the Term hereof. Landlord shall not be liable for any interruption or curtailment whatsoever in the furnishing of utility services or other services to the Premises, unless caused by the gross negligence of Landlord.

(c) <u>Net Lease</u>. This Lease is what is commonly called a "Net Lease", it being understood that Landlord shall receive the Rent set forth in this Lease free and clear of any and all impositions, taxes, liens, charges, or expenses of any nature whatsoever in connection with its ownership and leasing of the Premises except those expenses specifically designated in this Lease to be borne by Landlord. In addition to the Minimum Monthly Rent, Tenant shall pay all impositions, taxes, insurance premiums, operating costs, charges and expenses which arise or may be contemplated under any provisions of this Lease during the Term (i) when required to be made hereunder or (ii) if no payment date is specified, by the later to occur of (A) the due date for the next installment of Minimum Monthly Rent or (B) ten (10) days from demand. All of such charges, costs and expenses shall constitute additional rent, and upon the failure of Tenant to pay any of such costs, charges or expenses, Landlord shall have the same rights and remedies as otherwise provided in this Lease for the failure of Tenant to pay Rent. "Rent" shall mean Minimum Monthly Rent, additional rent, and all other amounts to be paid by Tenant to Landlord pursuant to this Lease. It is the intention of the parties hereto that Tenant shall in no event be entitled to any abatement of or reduction in Rent or additional rent payable hereunder, except as expressly provided herein. Any present or future law to the contrary shall not alter this

agreement of the parties. Landlord and Tenant acknowledge and agree that this Lease is a "true lease" and not a financing lease, capital lease, mortgage, equitable mortgage, deed of trust, trust agreement, security agreement or other financing or trust arrangement, and the economic realities of this Lease are those of a true lease, the business relationship created by this Lease and any related documents is solely that of a long-term commercial lease between landlord and tenant and has been entered into by both parties in reliance upon the economic and legal bargains contained herein, and Tenant and Landlord each waive any claim or defense based upon the characterization of this Lease as anything other than as a "true lease".

(d) <u>Pro-Rata Rent</u>. Rent for any period during the Term of this Lease which is for less than one (1) month shall be a pro rata portion of such monthly installment. Rent shall be payable, without deduction or offset, in lawful money of the United States to Landlord at the address set forth in <u>Section 4(a) above</u> or to such other persons or at such other places as Landlord may designate in writing.

## SECTION EIGHT. USE OF THE PREMISES.

(a) Tenant shall occupy and use the Premises as an Ambulatory Surgery Center, and all other operations incident to the conduct of the business of an Ambulatory Surgery Center, and Tenant agrees not to use the Premises for any other purpose or any immoral or unlawful purpose. Landlord agrees that, subject to the prior reasonable review and approval by Landlord and compliance with all applicable governmental requirements and any signage criteria in any covenants, conditions, and restrictions recorded prior to the date of this Lease, Tenant may erect and maintain on the Premises and the building and improvements any signs advertising Tenant's business, as Tenant may desire.

(b) Tenant shall not commit any acts on the Premises, nor use the Premises in any manner that will increase the existing rates for or cause the cancellation of any fire, liability, or other insurance policy insuring the Premises or the improvements on the Premises. Tenant shall, at Tenant's own cost and expense, comply with all requirements of Landlord's insurance carriers that are necessary for the continued maintenance at reasonable rates of fire and liability insurance policies on the Premises and the improvements on the Premises.

(c) Tenant shall not commit any waste or any public or private nuisance upon the Premises.

(d) Tenant shall comply with all laws, rules, and orders of all federal, state, and municipal governments or agencies that may be applicable to use of the Premises. Notwithstanding the Permitted Use or any other provision of this Lease, Landlord does not represent, warrant or covenant in any respect whatsoever that the Permitted Use or any element of Tenant's existing or future operations is or will be permitted under applicable zoning, codes and regulations of any governmental or quasi-governmental authority. Tenant is solely responsible for verifying the same.

(e) Tenant shall operate Tenant's business on the Premises with due diligence and efficiency so as to maximize the gross profits that may be produced profitably. To this end Tenant shall maintain business hours and levels of personnel and advertising that in Tenant's reasonable judgment is

necessary to maximize gross profits profitably consistent with the operation of the businesses on the Premises and at any other locations of Tenant's businesses.

### SECTION NINE. UTILITIES AND MEDICAL WASTE.

(a)  During the Term, Tenant shall pay, before delinquency, all charges or assessments for telephone, water, sewer, gas, heat, electricity, garbage disposal, trash disposal, and all other utilities and services of any kind that may be used on the Premises.

(b)  <u>Medical Waste</u>.  Tenant shall, at Tenant's sole cost and expense, directly contract for the disposal of any and all hazardous, bio-hazardous, chemical, infectious, medical and other similar types of waste generated within the Premises or otherwise resulting from Tenant's business (collectively, "<u>Medical Waste</u>").  Tenant shall immediately separate any Medical Waste from other types of office waste and store such Medical Waste in a leak-proof, moisture-proof, puncture-resistant container, or a container of sufficient strength to resist tearing, ripping or bursting in the course of normal usage and handling.  Tenant shall ensure that all such generation, storage and disposal of Medical Waste is done in full compliance with all federal, state and local laws, rules and regulations pertaining to Medical Waste.  If at any time Tenant fails to dispose of any Medical Waste in a timely manner (including upon expiration or earlier termination of this Lease), Landlord shall have the right, but not the obligation, to dispose of such Medical Waste at Tenant's cost and expense plus a twenty percent (20%) administrative fee.  Tenant shall defend, indemnify and hold Landlord and Landlord's officers, agents, employees, affiliates and mortgagees harmless from and against any and all claims, demands, penalties, fines, liabilities, settlements, damages, costs or remediation, or other costs and expenses (including, without limitation, attorneys' fees, consultants' fees, and litigation expenses) of whatever kind or nature, known or unknown, contingent or otherwise, arising out of or in any way related to the generation, storage, disposal or presence of Medical Waste in the Premises or otherwise. Tenant's obligations hereunder shall survive the termination or expiration of this Lease.

### SECTION TEN. TAXES.

(a)  Tenant shall pay during the Term of this Lease, in each case prior to the date the same are delinquent, all of the Real Estate Taxes and personal property taxes levied or assessed against the Premises and improvements thereon for any period, all of which is included in the Term of this Lease, and also its pro rata share of all such taxes levied or assessed thereon for any period, part of which is included in the Term of this Lease, subject to the terms of <u>Section 10(b)</u> below. As used herein, the term "**<u>REAL ESTATE TAXES</u>**" means all taxes and general and special assessments and other impositions in lieu thereof, as a supplement thereto and any other tax which is measured by the value of land and assessed on a uniform basis against the owners of land, including any substitution in whole or in part therefor due to a future change in the method of taxation, in each case assessed against, or allocable or attributable to, the Premises and accruing during the Term. Tenant shall pay all Real Estate Taxes directly to the collecting authority no less than fifteen (15) days prior to the delinquency date thereof and shall provide Landlord written evidence thereof. Notwithstanding the foregoing, upon the occurrence of both of the following events, Tenant shall pay Real Estate Taxes to Landlord on a monthly basis (the "Real Estate Taxes Reserve") in lieu of the applicable collecting authority: (i) delivery to Tenant of a written request

therefor from Landlord, and (ii) the existence of any default or breach of this <u>Section 10(a)</u> by Tenant, or any Event of Default under any provision in this Lease (the foregoing clause (ii) may be hereinafter referred to as a "Real Estate Taxes Reserve Trigger"). If Tenant fails to pay the appropriate party (Landlord or the collecting authority, as provided herein) all Real Estate Taxes when due hereunder, then Tenant shall, without limiting any other remedies available to Landlord, reimburse Landlord for any and all penalties or interest, or portion thereof, incurred by Landlord as a result of such nonpayment or late payment by Tenant.

This Section shall not be deemed or construed to require Tenant to pay or discharge any tax which may be levied by any governmental authority upon the income, profits, or business of Landlord, including Rent due Landlord hereunder, or any personal property taxes, franchise, inheritance or estate bases, or taxes upon inheritance or right of succession which may be levied against any estate or interest of Landlord, even if such taxes become a lien against the Premises.

(b) Landlord agrees that Tenant shall have the right, at Tenant's sole cost and expense, to contest the legality or validity of any of the taxes which are to be paid by Tenant pursuant to the foregoing provisions, and in the event of any such contest, failure on the part of Tenant to pay any such tax, prior to the delinquency date thereof shall not constitute a default hereunder. Tenant, upon the final determination of such contest, shall immediately pay and discharge any judgment rendered against it, together with all costs and charges incidental thereto. If Tenant has not paid any tax, assessment, or public charge required by this Lease to be paid by Tenant before its delinquency, or if a tax, assessment, or public charge is contested by Tenant and that tax, assessment, or public charge has not been paid within thirty (30) days after a final determination of the validity, legality, or amount of the tax, assessment or public charge, then Landlord may, but shall not be required to, pay and discharge the tax, assessment, or public charge. If a tax, assessment, or public charge, including penalties and interest, are paid by Landlord, the amount of that payment shall be due and payable to Landlord by Tenant with the next succeeding rental installment, and shall bear interest at the rate of ten percent (10%) per annum from the date of the payment by Landlord until repayment by Tenant. Landlord further agrees at the request of Tenant, to execute, or join in the execution of any instrument or documents necessary in connection with any such contest, but at no expense to Landlord.

(c) Landlord agrees either to (i) forward to Tenant in a timely fashion the periodic statements for taxes, or (ii) join with Tenant in the necessary formalities to ensure that such statements are sent directly to Tenant.

### SECTION ELEVEN. LIENS.

Any work on the Premises performed by Tenant hereunder shall be performed subject and pursuant to the provisions of this Lease. Upon completion thereof and Landlord's written request, Tenant shall furnish Landlord with lien waivers confirming that all contractors, subcontractors, laborers, and materialmen who have performed work on the Premises have been paid in full. Such lien waivers shall be in a form reasonably acceptable to Landlord and in accordance with applicable laws of the State where the Premises are located. If any such lien or claim of lien shall at any time be filed against the Premises, or Tenant's interest therein or hereunder, by reason of Tenant's acts or omissions or because of a claim against Tenant or any contractor, subcontractor or

materialman of Tenant, Tenant shall cause the lien or claim of lien to be canceled and discharged of record by bond or otherwise within twenty (20) days after receipt of written notice from Landlord. If Tenant fails to cause such lien or claim of lien to be so discharged or bonded within such period, Tenant shall be in default hereunder, and, in addition to any other right or remedy it may have, the Landlord may, but shall not be obligated to, discharge the same by paying the amount claimed to be due or by procuring the discharge of such lien or claim by deposit in court or bonding, and in any such event, the Landlord shall be entitled, if Landlord so elects, to compel the prosecution of an action for the foreclosure of such lien or claim by the lienor or claimant and to pay the amount of the judgment, if any, in favor of the lienor, with interest, costs and allowances. Tenant shall pay as additional rent on demand any sum so paid by Landlord for the aforesaid purposes with interest as hereinafter provided and all costs and expense incurred by Landlord including, but not limited to reasonable attorney's fees in processing such discharge or in defending any such action. **THE INTEREST OF THE LANDLORD SHALL NOT BE SUBJECT TO LIENS FOR IMPROVEMENTS MADE BY TENANT.**

### SECTION TWELVE. REPAIRS AND MAINTENANCE.

(a) Throughout the Term of this Lease Tenant shall at all times and at its sole cost and expense, put, keep, replace and maintain the entire Premises and all of the Improvements (including, without limitation, the roof, walls, structural and non-structural elements of the buildings, plumbing systems, electric systems, HVAC systems, all site improvements, paving, parking lots, driveways, sidewalks, signs, landscaping, any storm drainage system or sewer system, and any water retention ponds) in good repair and in good and safe order and condition, shall make all repairs and replacements thereto, both inside and outside, structural and non-structural, ordinary and extraordinary, howsoever the necessity or desirability for repairs or replacements may occur, and whether or not necessitated by wear, tear, obsolescence or defects, latent or otherwise, and shall use all reasonable precautions to prevent waste, damage or injury.

(b) If at any time during the Term, including renewals or extensions, Tenant fails to maintain the Premises or make any repairs or replacements as required by Section 12, Landlord may, but shall not be required to, enter the Premises and perform the maintenance or make the repairs or replacements for the account of Tenant; any sums expended by Landlord in so doing, together with interest at ten percent (10%) per annum, shall be deemed additional rent and shall be immediately due from Tenant on demand of Landlord.

(c) Except for Landlord's Work, Landlord shall not be required to make any alterations, reconstructions, replacements, changes, additions, improvements, repairs or replacements of any kind or nature whatsoever to the Premises, or any portion thereof, or to any of the Improvements at any time during the Term of this Lease. Tenant waives any law that would require Landlord to maintain the Premises in a tenantable condition or would provide Tenant with the right to make repairs and deduct the cost of those repairs from the rent.

### SECTION THIRTEEN. LANDLORD'S WORK AND ALTERATIONS.

(a) Promptly following the Effective Date, Landlord shall commence Landlord's Work. The Improvements shall be constructed in a good and workmanlike manner, in accordance with all applicable laws and requirements, and in accordance with local codes. Tenant acknowledges that

it has approved Built-More, LLC, a Tennessee limited liability company, to construct the Improvements. The term "Improvements" shall mean the building, all sidewalks, driveways, parking areas, curbs, curb cuts, lighting, retaining walls, landscaping, fire hydrants, and related improvements, and all identification, advertising and directional signs, fixtures, and equipment to the extent described on the plans and specifications listed on Exhibit "**B**" attached hereto (the "Scope of Work") or otherwise constructed or located on the Premises subject to the conditions and restrictions set forth in this Lease.

(b) After the date on which Tenant first opens the Premises to the public for business, Tenant may not make alterations, additions or improvements to the Premises including the exterior, the building structure, or the storefront thereof without the prior written consent of the Landlord and such consent shall not be unreasonably delayed, withheld or conditioned. Provided, if Tenant wishes at any time during the Term to perform alterations, additions or improvements to the Premises that do not affect structural elements or building systems in any material respect and cost, on a per project basis, less than $50,000.00 ("Minor Alterations"), after at least fifteen (15) days' written notice to Landlord, Tenant shall have the right to make Minor Alterations in compliance with all applicable laws, rules and regulations without obtaining written consent of the Landlord. All alterations, additions and improvements (excluding personal property, machinery, equipment, signage, trade improvements and trade fixtures of Tenant, no part of the cost of which shall have been paid by Landlord, collectively "Tenant's Property") made by, for or at the direction of Tenant, shall become the property of Landlord and shall remain upon and be surrendered with the Premises as a part thereof at the expiration or earlier termination of this Lease or at such time as Landlord shall re-enter and take possession of the Premises without terminating this Lease pursuant to the provisions of Section 13 hereof. Landlord shall have no obligation to make any alterations, improvements, repairs or replacements to the Premises other than Landlord's Work.

(c) Tenant's Property shall remain the property of Tenant. Upon the termination or expiration of the Term, Tenant shall remove Tenant's Property from the Premises no later than the termination or expiration date. In addition, Tenant may remove from the Premises all items and structural characteristics installed by Tenant that are indicative of Tenant's business and may otherwise "de-identify" the Premises, as Tenant reasonably believes necessary or appropriate for the protection of Tenant's interest in Tenant's trademarks, trade names or copyrights. Tenant shall, at its sole cost and expense, repair any damage to the Premises or the improvements caused by such removal, including patching and filling holes, ordinary wear and tear excepted. In no event shall Tenant remove or be required to remove any restrooms, flooring, ceilings, or utility or electrical components located inside the walls or HVAC systems. All other utility systems will be capped and returned to a condition compatible with code requirements at Tenant's sole cost and expense.

(d) Any of Tenant's Property not removed from the Premises within ten (10) days following the date this Lease terminates or expires shall be deemed abandoned and shall thereupon become the property of Landlord. Landlord may possess and dispose of such property provided that Landlord shall not use or permit anyone holding under Landlord to use (a) any trademark, trade dress, trade name, millwork, copyrighted floor plan, copyrighted color palette, or sign used by Tenant in the Premises; or (b) any item that is similar to any other item protected by Tenant's intellectual property rights. This provision shall apply under all circumstances, including default by Tenant

under this Lease. The reasonable costs incurred by Landlord in removing and disposing of such Tenant's Property (plus 10%) shall be paid by Tenant within thirty (30) days after delivery to Tenant of an invoice therefor.

(e) Notwithstanding anything to the contrary herein, Landlord agrees that it has no lien rights or security interest in any of Tenant's trade fixtures or inventory, furniture, equipment or other personal property in the Premises or in any other items that may be used as collateral for any Tenant financing (collectively, "Collateral") and hereby waives any such rights or interest to same. Upon request by Tenant from time to time during the Term, Landlord shall provide a written statement, in a form reasonably acceptable to Tenant and Tenant's lender or lenders, as the case may be, confirming that Landlord has no such lien rights and waiving any rights or interest to the Collateral; provided that in no event shall Landlord be required to grant Tenant's lender and/or lienholder any right to occupy the Premises or other access right unless required by applicable law or agreed to otherwise in writing by Landlord, nor shall any of the foregoing give Tenant the right to collaterally assign this Lease.

(f) Subject to any covenants, conditions and restrictions and other matters of record applicable to the Premises which are disclosed in the public records or in writing to Tenant ("CC&Rs"), Tenant shall have the right to install building signs on the Premises in the maximum number and size permitted under the governmental development standards, rules and regulations that are applicable to the Premises.

## SECTION FOURTEEN. ENTRY.

Tenant shall permit Landlord or Landlord's agents, representatives, or employees to enter the Premises at all reasonable times and upon reasonable notice to inspect the Premises to determine whether Tenant is complying with the terms of this Lease and to do other lawful acts that may be necessary to protect Landlord's interest in the Premises under this Lease or to perform Landlord's duties under this Lease.

## SECTION FIFTEEN. SURRENDER OF PREMISES; HOLDING OVER

(a) On the Termination Date or the end of any extension or renewal of this Lease, Tenant shall promptly surrender and deliver the Premises to Landlord in as good condition as they were on the Commencement Date, reasonable wear and tear excepted.

(b) At the end of the Term, or any extension, should Tenant hold over for any reason, it is agreed that in the absence of a written agreement to the contrary, that tenancy shall be from month to-month only and not a renewal of this Lease, nor an extension for any further term. Tenant shall pay Minimum Monthly Rent in an amount equal to ONE AND ONE-HALF times the Minimum Monthly Rent payable prior to the end of the Term or any extension. The month-to month tenancy shall be subject to every other term, covenant, and condition in this Lease that is consistent with and not contrary to a month-to-month tenancy.

## SECTION SIXTEEN. INDEMNITY.

Without limiting or being limited by any other indemnity in this Lease, but rather in confirmation and furtherance thereof, Tenant agrees to indemnify, defend by counsel reasonably acceptable

to Landlord and hold Landlord and Landlord's officers, agents, employees and affiliates harmless of, from and against any and all losses, damages, liabilities, claims, liens, costs and expenses (including, but not limited to, court costs, reasonable attorney's fees and litigation expenses) in connection with injury to or death of any person or damage to or theft, loss or loss of the use of any property occurring in or about the Premises arising from Tenant's occupancy, or from any materially false information provided by Tenant to Landlord, or the conduct of its business or from any activity, work, or thing done, permitted or suffered by Tenant or its agents, employees or contractors in or about the Premises, or from any breach or default on the part of Tenant in the performance of any covenant or agreement on the part of Tenant to be performed pursuant to the terms of this Lease, or due to any other act or omission or willful misconduct of Tenant or any of its agents, employees, contractors, assigns, subtenants, guest or invitees.

## SECTION SEVENTEEN. INSURANCE.

Tenant shall, at its sole cost, procure and maintain, during the entire Term, at least the following types (and limits) of insurance coverages with respect to the Premises issued by insurance companies reasonably acceptable to Landlord and licensed to do business in the State of Arkansas, and subject to the following terms and conditions:

(a) Commercial general liability insurance, including (without limitation) coverage for bodily injury and death, property damage and personal injury and contractual liability as referred to below, in an amount not less than Two Million and 00/100 Dollars ($2,000,000.00), combined single limit per occurrence for injury (or death) and damage to property; (ii) insurance on an "all risk" basis, including (without limitation) sprinkler leakage, vandalism, malicious mischief, fire, windstorm, flood and extended coverage, covering the entire Premises, and all fixtures, furnishings, removable floor coverings, equipment, signs and all other decorations or stock in trade, inventory and personal property of Tenant, in amounts not less than the full replacement value thereof; (iii) workers' compensation insurance, if required by statute, with not less than the maximum statutory limits of coverage; and (iv) business interruption or lost profits coverage, in reasonable amounts for a business of similar size and nature of Tenant operating in the geographical area of the Building. Such policies shall: (A) include Landlord and such other parties as Landlord may reasonably designate as loss payees (except with respect to the insurance required in clause (iv) directly above)  as a named insured thereunder, (B) be written and considered as primary insurance, neither in contribution with nor in excess of any other insurance policies that may be maintained by Landlord or any other person or entity with respect to any other portion of the Building; (C) include within the terms of the policy or by contractual liability endorsement coverage insuring Tenant's indemnity obligations under this Lease; and (D) provide that it may not be cancelled or changed without at least thirty (30) calendar days prior written notice from the company providing such insurance to each party insured thereunder.

(b) The insurance coverage to be provided by Tenant will be for a period of not less than one (1) year. At least fifteen (15) days prior to the Commencement Date, Tenant will deliver to Landlord original certificates of all such insurance, together with proof of payment of the premium therefor; thereafter, at least fifteen (15) calendar days prior to the expiration of any policy, Tenant will deliver to Landlord such original certificates as will evidence a paid-up renewal or new policy to take the place of the one expiring.

(c) Each party will look first to any insurance in its favor before making any claim against the other party for recovery for loss or damage resulting from fire or other casualty, and to the extent that such insurance is in force and collectible and to the extent permitted by law, Tenant hereby waives and releases all rights of subrogation under Tenant's insurance policies, and Tenant will cause each such insurance policy to be properly endorsed to evidence such waiver and release of subrogation in favor of Landlord.

(d) Tenant acknowledges that Landlord will not carry insurance on the Premises or furniture, furnishings, trade fixtures, equipment installed in or made to the Premises by or for Tenant, and Tenant agrees that Tenant, and not Landlord, will be obligated to promptly repair any damage thereto or to replace the same.

(e) Any failure by Tenant to maintain continuous insurance coverage as required under the terms and conditions of this Section 17 shall constitute an immediate and automatic default by Tenant hereunder.  Provided there is no interruption in such continuous coverage, any other failure of Tenant to satisfy the terms and conditions of this Section 17 shall constitute a default hereunder only if such failure remains uncured fifteen (15) days after Landlord provides Tenant with written notice of such failure. If Tenant shall fail to procure and maintain the insurance required herein, Landlord may, but shall not be required to and shall incur no liability for doing so, procure and maintain the same through Tenant's insurance broker or otherwise, at the expense of Tenant, plus a fifteen percent (15%) administrative fee, which Tenant shall pay to Landlord upon demand.

## SECTION EIGHTEEN.  TRADE FIXTURES.

(a) Tenant shall have the right, at any time and from time to time during the Term and any renewals or extensions, at Tenant's sole cost and expense, to install and affix on the Premises items for use in Tenant's Ambulatory Surgery Center, which Tenant, in Tenant's sole discretion, deems advisable (collectively "Trade Fixtures"), provided that Tenant shall not overload the floors. Trade Fixtures installed in the Premises by Tenant shall always remain the property of Tenant and shall be removed at the expiration of the Term or any extension, provided that any damage to the Premises caused by the removal of the Trade Fixtures shall be repaired by Tenant, and further provided that Landlord shall have the right to keep any Trade Fixtures or to require Tenant to remove any Trade Fixtures that Tenant might otherwise elect to abandon.

(b) Any Trade Fixtures that are not removed from the Premises by Tenant within thirty (30) days after the Termination Date shall be deemed abandoned by Tenant and shall automatically become the property of Landlord as owner of the real property to which they are affixed.

## SECTION NINETEEN. SIGNS.

Tenant may not place, maintain, nor permit on any exterior door, wall, or window of the Premises any sign, awning, canopy, marquee, or other advertising of a permanent and irremovable nature without the express written consent of Landlord and such consent shall not with unreasonably withheld, delayed or conditioned.  Tenant shall maintain any sign, decoration, or advertising in good appearance and repair at all times during this Lease.  At the Termination Date, any of the items mentioned in this section that are not removed from the

Premises by Tenant may, without damage or liability, be removed and destroyed by Landlord at Tenant's cost. Nothing in this provision is intended to prevent Tenant from placing or maintaining any sign, awning, canopy, marquee, or other advertising relating to Tenant's operation.

## SECTION TWENTY. DAMAGE OR DESTRUCTION.

(a) In the event that during the Term of this Lease, the Premises shall be damaged by fire or other casualty which renders the Premises untenantable, Tenant, shall repair said damage.  Such repairs shall be commenced within sixty (60) days of the date of said damage and such repairs shall be completed within two hundred forty (240) days of said damage;  provided, however, if the Premises are damaged or destroyed by fire or any casualty which cannot, despite diligent, good faith efforts be repaired or restored within such time period, Tenant shall have such additional time as necessary, so long as Tenant is using diligent, good faith efforts to repair and restore the Premises.  All such work shall be approved by Landlord in advance and Landlord shall have the unfettered right to supervise all such work, in which case Tenant shall pay Landlord a construction supervision fee not to exceed 5% of the cost of such restoration.

## SECTION TWENTY ONE. CONDEMNATION.

(a) The term "total taking" means the permanent taking of or a voluntary transfer under the threat of the exercise of the right of eminent domain or other authority of all or a portion of the Premises such that it is impossible for Tenant to occupy and operate an Ambulatory Surgery Center within the Premises in compliance with applicable laws, rules, ordinances and regulations. The term "partial taking" means the taking of only a portion of the Premises which does not constitute a total taking, Tenant can continue to operate the its business on the Premises in compliance with applicable laws, rules, ordinances and regulations.

(b) If a total taking occurs during the Term of this Lease, this Lease will terminate as of the date of the taking.  The phrase "date of the taking" means the date of taking actual physical possession by the condemning authority or such earlier date as the condemning authority gives notice that it is deemed to have taken possession.

(c) If a partial taking results in the Premises in violation of municipal parking requirements, then Tenant shall promptly restore the Premises to an architecturally fit unit in accordance with plans approved by Landlord and reopen for business.

(d) All compensation and damages awarded for a total or partial taking of the Premises, will belong to Landlord; provided, however, Tenant may make its own claim for any separate award that may be made by the condemner for Tenant's moving expenses, loss of business or for the taking of or injury to Tenant's improvements, or on account of any cost or loss Tenant may sustain in the removal of Tenant's trade fixtures, equipment, and furnishing, or as a result of any alterations, modifications, or repairs which may be reasonably required by Tenant in order to place the remaining portion of the Premises not so condemned in a suitable condition for the continuance of Tenant's occupancy, provided that no such award shall reduce the award to Landlord.

(e) If this Lease is terminated pursuant to the provisions of this Section 21, then all rentals and other charges payable by Tenant to Landlord under this Lease will be paid up to the day of the taking, and any rentals and other charges paid in advance and allocable to the period after the date of the taking will be repaid to Tenant by Landlord. Landlord and Tenant will then be released from all further liability under this Lease.

### SECTION TWENTY TWO. ASSIGNMENT AND SUBLETTING.

Tenant shall not voluntarily or involuntarily or by operation of law, assign, transfer, mortgage or otherwise encumber this Lease, the Premises (including fixtures), or any interest of Tenant in either, in whole or in part, or sublet the Premises or any part thereof, or permit the Premises or any part thereof to be used or occupied by others, without the prior written consent of Landlord, which consent shall not be unreasonably withheld, conditioned or delayed, nor shall Tenant's leasehold interest hereunder be assignable or transferable by the voluntary act of Tenant, or anyone claiming by, through or under Tenant by reason of bankruptcy, voluntary or involuntary, or by operation of law. Consent to any one sublease or assignment shall not be deemed a waiver of the right to consent to future subletting and assignments. Even though Landlord may consent to a sublease or assignment, Tenant shall not be released from liability hereunder. Any attempt by Tenant to effectuate such sublease, assignment, transfer, mortgage or other encumbrance without Landlord's consent shall be null and void.

The transactions deemed to be restricted under the terms of this Section 22 shall include without limitation any assignment, subletting, sale or other transfer that would otherwise occur by operation of law, merger, consolidation, reorganization, transfer or other change of Tenant's corporate or proprietary structure; the sale or transfer of fifty percent (50%) or more of the capital stock or ownership interests of Tenant; the sale, assignment or transfer of all or substantially all of the assets of Tenant, with or without specific assignment of this Lease; or in the event that Tenant is a partnership, limited liability company, corporation or similar entity (other than one whose shares are regularly and publicly traded on a recognized stock exchange), any change in the ownership, control and/or power to vote the majority of the outstanding stock of Tenant occurs (whether direct or indirect, and whether such change is by sale, assignment, bequest, operation of law or otherwise).

To review any proposed assignment or sublease, Landlord will require thirty (30) days to review Tenant's submission of (i) the name of the entity receiving such transfer (the "Transferee"); (ii) a detailed description of the business of the Transferee; (iii) audited financial statements of the Transferee; (iv) all written agreements governing the transfer; (v) if the Transferee is an individual, a true and correct copy of the Transferee's driver's license and a completed and signed copy of Landlord's credit application; (vi) any information reasonably requested by Landlord with respect to the transfer or the Transferee; and (vii) a fee of One Thousand Dollars ($1,000.00) to compensate Landlord for certain fees and costs of administration, and other expenses incurred in connection with the review and processing of such documentation. In the event that Landlord consents to Tenant's subletting of the Premises or any part thereof, or the sale, transfer or assignment of its leasehold interest, Tenant agrees to furnish to Landlord an executed copy of the sublease, sale, transfer, or assignment agreement(s) with all amendments and riders within ten (10) days of execution thereof; provided that in no event shall such sublease, sale, transfer or assignment be effective unless the assignee thereof unconditionally assumes all obligations of

Tenant under this Lease.  In the event that any administrative fee, transfer fee or similar fee is paid to Tenant in connection with any such assignment or sublease, whether or not included in the assignment or sublease agreement itself, all such fees shall be disclosed to and paid over to Landlord as additional rent, and in the case of a sublease, if the rental rate for such sublease is greater than that which Tenant is obligated to pay hereunder, then Tenant shall remit to Landlord, as additional rent, the entire amount of any such excess each month.  Finally, in the event of any assignment or subletting, it is understood and agreed that all rentals paid to Tenant by an assignee or sublessee shall be received by Tenant in trust for Landlord, to be forwarded immediately to Landlord (to be applied as a credit and offset to Tenant's rent obligations hereunder).

### SECTION TWENTY THREE.  SUBORDINATION.

This Lease and the rights of Tenant hereunder are and shall be subject and subordinate at all times to any ground lease, mortgage, deed of trust, or other lien created by Landlord, whether now existing or hereafter arising upon the Premises, and to all amendments, modifications, renewals, extensions, consolidations and replacements thereof, and to all advances made or hereafter to be made upon the security thereof (collectively, an "Encumbrance"). Notwithstanding anything to the contrary contained herein, any holder of such an Encumbrance (a "Holder") may subordinate, in whole or in part, such Encumbrance to this Lease on such terms and subject to such conditions as such Holder may deem appropriate in its discretion without joinder of Tenant by sending Tenant notice in writing. Tenant agrees within five (5) days of request by Landlord or any Holder to execute and deliver to Landlord or such Holder such further instruments, in form and content acceptable to the requesting party, consenting to or confirming the subordination of this Lease to any Encumbrance now existing or hereafter placed upon the Premises or any part thereof, or attorning to such Holder, and containing such other provisions, as Landlord or such Holder may request. Tenant shall, in the event of the sale or assignment of Landlord's interest in the Premises, or in the event of any proceedings brought for the foreclosure of, or in the event of exercise of the power of sale under, any mortgage or deed of trust made by Landlord covering the Premises, attorn to the purchaser and recognize the purchaser as Landlord under this Lease.  The subordination and attornment set forth in this Section are self-operative and no further instrument of subordination and/or attornment will be necessary unless required by Landlord or the holder of a mortgage or deed of trust.  Further, Tenant shall execute and deliver to Landlord and any Landlord's lender, within ten (10) business days after Landlord's written request therefor, an SNDA or other subordination, no disturbance and attornment agreement substantially in the form of Exhibit "C" hereto. In the event that the lender, mortgagee, beneficiary, or any other person, acquires title to the Premises pursuant to the exercise of any remedy provided for in the Mortgage, this Lease shall not be terminated or affected by said foreclosure or sale, or any such proceeding, and the lender, mortgagee or beneficiary shall agree that any sale of the Premises pursuant to the exercise of any rights and remedies under the Mortgage, shall be made subject to this Lease and the rights of the Tenant hereunder and Tenant's rights arising out of this Lease shall not be enlarged, affected or disturbed. Tenant agrees to attorn to the lender, beneficiary or such other person as its new landlord, and this Lease shall continue in full force and effect as a direct lease between Tenant and Lender, mortgagee, beneficiary or such other person, upon all the terms, covenants, and agreements set forth in this Lease. The parties hereto agree to execute or obtain execution of

such reasonable documents as may be necessary to effectuate such subordination, non-disturbance, and attornment.

### SECTION TWENTY FOUR.  COVENANT OF TITLE AND QUIET ENJOYMENT.

Subject to the rights of mortgagees and matters of record, Landlord hereby covenants and agrees that so long as Tenant has performed and observed all terms, conditions, covenants or obligations required under this Lease, Tenant shall have quiet enjoyment of the Premises and all appurtenances thereto.  Tenant hereby acknowledges and agrees that this covenant and any and all other covenants of Landlord contained in this Lease shall be binding upon Landlord and its successors only with respect to breaches occurring during the ownership of Landlord's interest hereunder.

### SECTION TWENTY FIVE. DEFAULT.

Any of the following events or occurrences shall constitute a material breach of this Lease by Tenant and, after the expiration of any applicable grace period, shall constitute an event of default (each an "Event of Default"):

(a) The failure by Tenant to pay any amount in full when it is due under the Lease.

(b) The failure by Tenant to perform any obligation under this Lease, which by its nature Tenant has no capacity to cure; and such performance is deemed an immediate and automatic default under the Lease.

(c) The failure by Tenant to perform any other obligation under this Lease, if the failure has continued for a period of ten (10) days after Landlord demands in writing that Tenant cure the failure. If, however, by its nature the failure cannot be cured within ten (10) days, Tenant may have a longer period as is necessary to cure the failure, but this is conditioned upon Tenant's promptly commencing to cure within the ten (10) day period and thereafter diligently completing the cure (not to exceed ninety (90) days). Tenant shall indemnify and defend Landlord against any liability, claim, damage, loss, or penalty that may be threatened or may in fact arise from that failure during the period the failure is uncured.

(d) Any of the following: A general assignment by Tenant for the benefit of Tenant's creditors; any voluntary filing, petition, or application by Tenant under any law relating to insolvency or bankruptcy, whether for a declaration of bankruptcy, a reorganization, an arrangement, or otherwise; the abandonment, vacation, or surrender of the Premises by Tenant without Landlord's prior written consent; or the dispossession of Tenant from the Premises (other than by Landlord) by process of law or otherwise;

(e) The appointment of a trustee or receiver to take possession of all or substantially all of Tenant's assets; or the attachment, execution or other judicial seizure of all or substantially all of Tenant's assets located at the Premises or of Tenant's interest in this Lease, unless the appointment or attachment, execution, or seizure is discharged within thirty (30) days; or the involuntary filing

against Tenant, or any general partner of Tenant if Tenant is a partnership, of (i)a petition to have Tenant, or any partner of Tenant if Tenant is a partnership, declared bankrupt, or (ii) a petition for reorganization or arrangement of Tenant under any law relating to insolvency or bankruptcy, unless, in the case of any involuntary filing, it is dismissed within sixty (60) days;

(f) The abandonment of the Premises by Tenant; or

(g) A default occurs under the Guaranty, or any Guarantor files bankruptcy, dissolves or dies.

## SECTION TWENTY SIX. LANDLORD REMEDIES.

Upon the occurrence of an Event of Default, Landlord, in addition to any other rights or remedies available to Landlord at law or in equity, shall have the right to

(a)     terminate this Lease and all rights of Tenant under this Lease by giving Tenant written notice that this Lease is terminated, in which case Landlord may recover from Tenant the aggregate sum of (i) the worth at the time of award of any unpaid rent that had been earned at the time of termination; (ii) the worth at the time of award of the amount by which (A) the unpaid rent that would have been earned after termination until the time of award exceeds (B) the amount of the rental loss, if any, that could have been reasonably avoided; (iii) the worth at the time of award of the amount by which (A) the unpaid rent for the balance of the Term after the time of award exceeds (B) the amount of rental loss, if any, that could be reasonably avoided; (iv) any other amount necessary to compensate Landlord for all the detriment caused by Tenant's failure to perform Tenant's obligations or that, in the ordinary course of things, would be likely to result from Tenant's failure; and (v) all other amounts in addition to or in lieu of those previously set out as may be permitted from time to time by applicable Arkansas law.

As used in clauses (i) and (ii) of Section 26(a), the worth at the time of award is computed by allowing interest at the rate of ten percent (10%) per annum. As used in clause (iii) of Section 23(a), the worth at the time of award is computed by discounting that amount at the discount rate of the Federal Reserve Bank at the time of award plus one percent (1%). As used in this Section, the term rent shall include Minimum Monthly Rent and any other payments required by Tenant under this Lease.

(b)     continue this Lease, and from time to time, without terminating this Lease, either (i) recover all rent and other amounts payable as they become due; or (ii) relet the Premises or any part on behalf of Tenant on terms and at the rent that Landlord, in Landlord's sole discretion, may deem advisable, all with the right to make alterations and repairs to the Premises, at Tenant's cost, and apply the proceeds of reletting to the rent and other amounts payable by Tenant. To the extent that the rent and other amounts payable by Tenant under this Lease exceed the amount of the proceeds from reletting, the Landlord may recover the excess from Tenant as and when due.

(c)     Upon the occurrence of an Event of Default, Landlord shall also have the right, with or without terminating this Lease, to re-enter the Premises and remove all persons and property from the

Premises. Landlord may store the property removed from the Premises in a public warehouse or elsewhere at the expense and for the account of Tenant.

(d)    None of the following remedial actions, alone or in combination, shall be construed as an election by Landlord to terminate this Lease unless Landlord has in fact given Tenant written notice that this Lease is terminated or unless a court of competent jurisdiction decrees termination of this Lease: any act by Landlord to maintain or preserve the Premises; any efforts by Landlord to relet the Premises; any re-entry, repossession, or reletting of the Premises; or any re-entry, repossession, or reletting of the Premises by Landlord pursuant to this Section. If Landlord takes any of the previous remedial actions without terminating this Lease, Landlord may nevertheless at any later time terminate this Lease by written notice to Tenant.

(e)    If Landlord relets the Premises, Landlord shall apply the revenue from the reletting as follows: first, to the payment of any indebtedness other than rent due from Tenant to Landlord; second, to the payment of any cost of reletting, including without limitation finder's fees and leasing commissions; third, to the payment of the cost of any maintenance and repairs to the Premises; and fourth, to the payment of rent and other amounts due and unpaid under this Lease. Landlord shall hold and apply the residue, if any, to payment of future amounts payable under this Lease as the same may become due and shall be entitled to retain the eventual balance with no liability to Tenant. If the revenue from reletting during any month, after application pursuant to the previous provisions, is less than the sum of (i) Landlord's expenditures for the Premises during that month and (ii) the amounts due from Tenant during that month, Tenant shall pay the deficiency to Landlord with the applicable time period as provided under the  applicable Lease subsection upon demand.

(f) After the occurrence of an Event of Default, Landlord, in addition to or in lieu of exercising other remedies, may, but without any obligation to do so, cure the breach underlying the Event of Default for the account and at the expense of Tenant.  Tenant shall, upon demand, immediately reimburse Landlord for all costs, including costs of settlements, defense, court costs, and attorney's fees, that Landlord may incur in the course of any cure.

(g)    No security or guaranty for the performance of Tenant's obligations that Landlord may now or later hold shall in any way constitute a bar or defense to any action initiated by Landlord for unlawful detainer or for the recovery of the Premises, for enforcement of any obligation of Tenant, or for the recovery of damages caused by a breach of this Lease by Tenant or by an Event of Default.

(h)    The exercise by Landlord of any one or more of the rights and remedies provided in this Lease shall not prevent the subsequent exercise by Landlord of any one or more of the other rights and remedies herein provided.  All remedies provided for in this Lease are cumulative and may, at the election of Landlord, be exercised alternatively, successively, or in any other manner and are in addition to any other rights provided for or allowed by law or in equity.  Landlord shall have an affirmative obligation to mitigate its damages hereunder; provided that Landlord and Tenant agree that any such duty to attempt to mitigate shall be satisfied and Landlord shall be conclusively deemed to have used objectively fair and reasonable efforts to relet the Premises by (i) advising Landlord's leasing staff of the availability of the Premises and (ii) engaging a

commercial real estate agent to attempt to relet the Premises; provided further that in all events Landlord may refuse to relet the Premises if the proposed use or quality of any prospective tenant's operation or financial standing is not then appropriate for the Premises or if Landlord determines that the proposed rent is below market, nor shall Landlord be obligated to give preference to reletting the Premises over other vacant space.

### SECTION TWENTY SEVEN. LATE CHARGE.

Tenant acknowledges that Tenant's failure to pay any installment of the Minimum Monthly Rent or any other amounts due under this Lease as and when due may cause Landlord to incur costs not contemplated by Landlord when entering into this Lease, the exact nature and amount of which would be extremely difficult and impracticable to ascertain. Accordingly, if any installment of the Minimum Monthly Rent or any other amount due under the Lease is not received by Landlord as and when due, then, without any notice to Tenant, Tenant shall pay to Landlord an amount equal to five percent (5%) of the past due amount, which the parties agree represents a fair and reasonable estimate of the costs incurred by Landlord as a result of the late payment by Tenant.

### SECTION TWENTY EIGHT. DEFAULT INTEREST.

Unless otherwise specified herein, If Tenant fails to pay any amount due under this Lease as and when due, that amount shall bear interest at the maximum rate then allowable by law from the due date until paid.

### SECTION TWENTY NINE. WAIVER OF BREACH.

Any express or implied waiver of a breach of any term of this Lease shall not constitute a waiver of any further breach of the same or other term of this Lease; and the acceptance of rent shall not constitute a waiver of any breach of any term of this Lease, except as to the payment of rent accepted.

### SECTION THIRTY. ESTOPPEL CERTIFICATES.

At any time, with at least fifteen (15) days' prior notice by Landlord, landlord shall deliver, and Tenant shall execute, acknowledge, and return to Landlord a certificate in form attached hereto as Exhibit "D".  Any certificate may be relied on by prospective purchasers, mortgagees, or beneficiaries under any deed of trust on the Premises or any part of it.

### SECTION THIRTY ONE.  SALE OR ASSIGNMENT BY LANDLORD.

Landlord shall have the right to transfer, sell and/or assign, in whole or in part, all of its rights and obligations hereunder and in the Premises, and, in such event, Landlord shall be and is hereby entirely released of all liability under any and all of its covenants and obligations contained in or derived from this Lease arising out of any act, occurrence or omission occurring on or after the consummation of such sale, and the purchaser at such sale or any subsequent sale, or the assignee of such assignment or any subsequent assignment, shall be deemed, without any further agreement between the parties or their successors in interest or between the parties and any such purchaser or assignee, to have assumed and agreed to carry out any and all of the covenants

and obligations of Landlord under this Lease, and Tenant shall look solely to such successor in interest of Landlord for the performance of such covenants and obligations.

### SECTION THIRTY-TWO.  ATTORNEYS' FEES.

If any action at law or in equity is brought to recover any rent or other sums under this Lease, or for or on account of any breach of or to enforce or interpret any of the covenants, terms, or conditions of this Lease, or for the recovery of the possession of the Premises, the prevailing party shall be entitled to recover from the other party as part of prevailing party's costs reasonable attorney's fees, the amount of which shall be fixed by the court and shall be made a part of any judgment rendered.

### SECTION THIRTY-THREE.  SECURITY DEPOSIT.

Upon delivery of possession of the Premises to Tenant, Tenant shall deposit with Landlord the sum of  **one month's estimated Minimum Monthly Rent** as a security deposit securing the performance of Tenant's obligations under this Lease. Upon the occurrence of a default hereunder by Tenant, Landlord may, from time to time, without prejudice to any other remedy, use the Security Deposit to the extent necessary to make good any arrears of Minimum Monthly Rent and/or additional rent, including, but not limited to, the cost of any damage, injury, expense, or liability caused by any default by Tenant hereunder.  Any remaining balance of the Security Deposit shall be returned by Landlord to Tenant within a reasonable period of time after the termination or expiration of this Lease and the satisfaction of Tenant's obligations hereunder. The Security Deposit shall not be considered an advance payment of rental or a measure of Landlord's damages in case of default by Tenant. Tenant shall not be entitled to receive and shall not receive any interest on the Security Deposit, and Landlord may commingle the same with other monies of Landlord.  In the event Landlord applies the Security Deposit or any portion thereof to the payment of any sum described above and this Lease is not terminated, Tenant shall immediately deposit with Landlord an amount of money equal to the amount so applied and such amount shall be deemed to be part of the Security Deposit.  In the event of a sale or transfer of Landlord's interest in the Premises or all or any portion of the Premises, Landlord shall have the right to transfer the Security Deposit to the purchaser or lessor, as the case may be, and upon any such transfer Landlord shall be relieved of all liability to Tenant for the return of the Security Deposit, and Tenant shall look solely to the new owner or lessor for the return of the Security Deposit.

### SECTION THIRTY-FOUR. AUTHORITY.

If Tenant is a corporation, trust, or general or limited partnership, all individuals executing this Lease on behalf of that entity represent that they are authorized to execute and deliver this Lease on behalf of that entity. If Tenant is a corporation, trust, or partnership, Tenant shall, prior to the execution of this Lease, deliver to Landlord evidence of that authority and evidence of due formation, all satisfactory to Landlord. If Tenant is a partnership, Tenant shall furnish Landlord with a copy of Tenant's partnership agreement and with a certificate from Tenant's attorney, stating that the partnership agreement constitutes a correct copy of the existing partnership agreement of Tenant.

## SECTION THIRTY-FIVE.  NOTICES.

Except as otherwise expressly provided by law, all notices or other communications required or permitted by this **Lease** or by law to be served on or given to either party to this **Lease** by the other party shall be in writing and shall be deemed served when personally delivered to the party to whom they are directed, or in lieu of the personal service, upon deposit in the United States Mail, certified or registered mail, return receipt requested, postage prepaid, or by express mail or courier service (e.g. Fedex), addressed to the receiving party at:

**IF TO LANDLORD:**
Millrock Investment fund 1 LLC
C/O Mary Street
Mary.street@mtnwest.com
2015 West Grove Parkway, Suite J, Pleasant Grove, UT 84062

**IF TO TENANT:**
SARC by HIS - KELLER, TX Inc.
The Crescent
100 Crescent Court, 7th Floor
Dallas, TX 75201

**IF TO GUARANTOR**:
Healthcare Solutions Management Group, Inc.
3 School Street, Suite 303
Glen Cove, NY 117542
Either party, Tenant or Landlord, may change the address for this Section by giving written notice of the change to the other party in the manner provided in this Section.

## SECTION THIRTY-SIX.  HEIRS AND SUCCESSORS.

This Lease shall be binding on and shall inure to the benefit of the heirs, executors, administrators, successors, and assigns of Landlord and Tenant.

## SECTION THIRTY-SEVEN.  PARTIAL INVALIDITY.

Should any provision of this Lease be held by a court of competent jurisdiction to be either invalid or unenforceable, the remaining provisions of this Lease shall remain in effect, unimpaired by the holding.

## SECTION THIRTY-EIGHT. ENTIRE AGREEMENT.

This instrument constitutes the sole agreement between Landlord and Tenant respecting the Premises, the leasing of the Premises to Tenant, and the specified lease term, and correctly sets forth the obligations of Landlord and Tenant. Any agreement or representations respecting the Premises or their leasing by Landlord to Tenant not expressly set forth in this instrument are void.

### SECTION THIRTY-NINE.  TIME IS OF THE ESSENCE.

Time is of the essence of this Lease and each and all of its provisions in which performance is a factor.

### SECTION FORTY.  BROKERAGE.

Landlord and Tenant each warrant that it has had no dealings with any broker or agent about this Lease, other than N/A representing Tenant and N/A representing Landlord and covenants to pay, hold harmless and indemnify the other from and against all cost, expense, or liability for any compensation, commissions and charges claimed by any other broker or other agent with respect to this Lease or the negotiations thereof.

### SECTION FORTY-ONE.  RENT.

All monetary obligations of Tenant to Landlord under the Lease, including but not limited to the Minimum Monthly Rent shall be deemed rent.

### SECTION FORTY-TWO. AMENDMENTS.

This Lease may be modified only in writing and only if signed by the parties at the time of the modification.

### SECTION FORTY-THREE. GUARANTY.

As a condition to the effectiveness of this Lease, the obligations of Tenant under this Lease shall be guaranteed by Healthcare Solutions Management Group, Inc., a Delaware corporation ("Guarantor"), pursuant to a guaranty in form attached hereto as Exhibit "E" ("Guaranty").

### SECTION FORTY-FOUR. MERGER

The voluntary or other surrender of this Lease by Tenant, or a mutual cancellation of the Lease, or a termination by Landlord, shall not work a merger, and shall, at the option of Landlord, terminate all or any existing sub tenancies or may, at the option of Landlord, operate as an assignment to a Landlord of any of the sub tenancies.

### SECTION FORTY-FIVE. FINANCIAL REPORTING.

Tenant shall submit to Landlord within sixty (60) days following the end of each calendar year during the Term and otherwise upon Landlord's reasonable request (not more than twice during any calendar year), Tenant shall deliver to Landlord complete financial statements satisfactory to Landlord in form and content (i) covering the preceding twelve (12) months and any other financial information requested by Landlord and/or Landlord's lender, including, without limitation, a profit and loss statement and balance sheet for Tenant and/or consolidated versions of the same from Tenant's parent company.  Such statements shall be prepared in accordance with generally accepted accounting principles and, if such is the normal practice of Tenant, shall be audited by an independent certified public accountant or otherwise certified by Tenant. Landlord will agree to execute a commercially reasonable NDA unless the information comes from a public company.

## SECTION FORTY-SIX. LIABILITY OF LANDLORD.

In no event shall Landlord be in default hereunder unless it has failed to cure such default within thirty (30) days after written notice (or if more than thirty (30) days shall be required because of the nature of the default, if Landlord shall fail to proceed diligently to cure such default after written notice); provided that in any event: (i) Tenant shall have no right to offset or abate rent in the event of any default by Landlord under this Lease, except to the extent offset rights are specifically provided to Tenant in this Lease; (ii) Tenant shall have no right to terminate this Lease; and (iii) Tenant's rights and remedies hereunder shall be limited to the extent (A) Tenant has expressly waived in this Lease any of such rights or remedies and/or (B) this Lease otherwise expressly limits Tenant's rights or remedies.  It is expressly understood and agreed that any money judgment resulting from any default or other claim arising under this Lease shall be satisfied only out of Landlord's interest in the Premises, and no other real, personal or mixed property of Landlord (the term "Landlord" for purposes of this Section only shall mean any and all partners, both general and/or limited, officers, directors, shareholders and beneficiaries, if any, who comprise Landlord), wherever situated, shall be subject to levy on any judgment obtained against Landlord.  Tenant hereby waives, to the extent waivable under law, any right to satisfy a money judgment against Landlord except from Landlord's interest in the Premises.  If such interest is not sufficient for the payment of such judgment, Tenant will not institute any further action, suit, claim or demand, in law or in equity, against Landlord for or on the account of such deficiency.  Notwithstanding anything herein contained to the contrary, Tenant hereby waives, to the extent waivable under law, any right to specific performance in the event of Landlord's default referred to herein, and Tenant expressly agrees that except as provided in the immediately following sentence, Tenant's remedy shall be limited to the monetary damages referred to in this Section.  Notwithstanding the foregoing, in the event of failure by Landlord to give any consent, as provided in this Lease, Tenant's sole remedy shall be an action for specific performance at law, but in no event shall Landlord be responsible in monetary damages for failure to give such consent. Under no circumstances whatsoever shall Landlord ever be liable hereunder for consequential, punitive or special damages.

## SECTION FORTY-SEVEN.  CHOICE OF LAW/VENUE; WAIVER OF TRIAL BY JURY; COUNTERCLAIMS.

This Agreement shall be governed by and construed according to the laws of the State of Arkansas, without giving effect to its choice of law principles. The parties agree that all actions and proceedings arising out of or relating directly or indirectly to this Agreement or any ancillary agreement or any other related obligations shall be litigated solely and exclusively in the state or federal courts located in Crittenden County, Arkansas and that such courts are convenient forums. Each party hereby submits to the personal jurisdiction of such courts for purposes of any such actions or proceedings. To the extent permitted by applicable law, the parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this Lease, the relationship of landlord and tenant, Tenant's use or occupancy of the Premises and/or any claim of injury or damage.  In the event Landlord commences any proceedings for nonpayment of rent or any other amounts payable hereunder, Tenant shall not interpose any counterclaim of whatever nature or description in any such proceeding, unless the failure to raise the same would constitute a waiver thereof.  This shall not, however, be construed as a waiver of Tenant's right to assert such claims in any separate action brought by Tenant.

### SECTION FORTY-EIGHT.  COOPERATION.

Each Party agrees to cooperate fully with the other Party and to execute and deliver such further documents, certificates, agreements, and instruments and to take such other actions as may be reasonably requested by the other Party to evidence or reflect the Contemplated Transactions and to carry out the intent and purposes of this Agreement.  The Tenant agrees, if requested by Landlord, to fully cooperate and adjust for clerical and scrivener's errors, on all documents related to this Lease and the underlying Guaranty, if deemed necessary or desirable in the reasonable discretion of Landlord.

### SECTION FORTY-NINE.  ACQUISITION CONTINGENCY.

Tenant acknowledges that Landlord does not currently own the Premises and that this Lease and Landlord's obligations hereunder are strictly contingent upon Landlord acquiring fee simple ownership of the Premises on or before December 31, 2020 (the "Acquisition Deadline") on terms satisfactory to Landlord in its sole and absolute discretion, the foregoing being "Landlord's Acquisition Contingency".   In the event Landlord has not satisfied Landlord's Acquisition Contingency on or before Acquisition Deadline, then both Landlord and Tenant shall have the right to terminate this Lease upon written notice to the other at any time prior to Landlord's acquisition of the Premises.

**IN WITNESS WHEREOF,** the said Landlord has hereunto the day and year first above written.


MILLROCK INVESTMENT FUND 1 LLC

Name: _____

Title: _Manager_____

**IN WITNESS WHEREOF,** the said Landlord has hereunto the day and year first above written.


Signed & Delivered in the **SARC BY HSI – KELLER, TX, INC.** presence of:


By:

Name : Justin Smith

Title: Executive Chairman

## EXHIBIT "A" <u>LEGAL DESCRIPTION</u>



**EXHIBIT "B"**

**SCOPE OF WORK**

Landlord and Tenant shall work in good faith to mutually agree on the scope of Landlord's Work, and the final, agreed plans and specifications for the same shall constitute Exhibit "B".

**EXHIBIT C**

**[FORM OF SNDA]**

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

 *

**SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT**

**THIS SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT** ("**Agreement**") is made as of the _____ of the *, between * ("**Landlord**"), * ("**Tenant**"), and * ("**Lender**").

**RECITALS:**

A.  Tenant is the holder of a leasehold interest in that certain real property together with all easements, rights and appurtenances thereto located in the County(ies) of *, State of *, as legally described on **Schedule A**, attached hereto and incorporated herein by this reference ("**Leased Premises**") pursuant to that certain Lease, dated as of * between Landlord, as landlord, and Tenant, as tenant.  The Lease as amended from time to time shall hereinafter be referred to as the "**Lease**"; and

B.  Lender has made or has agreed to make a loan to Landlord in the original principal amount of $*, which loan shall be secured by that certain mortgage encumbering all the Leased Premises dated as of *, and recorded, in the official records of * County(ies), State of * ("**Mortgage**"); and

C.  The parties desire to subordinate the Lease to the Mortgage and to establish certain rights of quiet and peaceful possession to the Leased Premises for Tenant's benefit together with certain obligations of attornment, all in the manner hereafter provided.

The foregoing recitals are incorporated into and made an integral part of this Agreement.

**AGREEMENT:**

**NOW, THEREFORE**, in consideration of the Leased Premises and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, it is mutually agreed among the parties as follows:

1.  SUBORDINATION.  Subject to the terms and conditions set forth in this Agreement, the Tenant agrees that the Lease is and shall at all times be subject to and subordinate to the lien, terms and conditions of the Mortgage and to any renewals, modifications, consolidations and extensions of the Mortgage, and all advances made thereunder.

2. NON-DISTURBANCE. So long as Tenant is not then currently in default, Lender agrees that (a) Tenant will not be made a party in any action or proceeding to foreclose the Mortgage or to remove or evict Landlord from the Leased Premises except to the extent required under applicable law in order for Lender to avail itself of and complete the foreclosure or other remedy; (b) Tenant will not be evicted or removed from the Leased Premises nor will its possession or right to possession of the Leased Premises, or any of its rights and remedies under the Lease be terminated, diminished, affected, impaired or disturbed or in any way interfered with by any action taken by Lender to enforce any rights or remedies under the Mortgage; and (c) Lender, upon succeeding to Landlord's interest in the Leased Premises, will recognize all provisions of the Lease and Tenant as its direct tenant under the Lease for the term thereof (including any and all extensions or renewals thereof effected in accordance with any option therefor in the Lease), and, subject to the limitations of liability herein contained, will be bound by and perform all of the obligations of Landlord set forth in the Lease as if said person were named therein as the landlord thereunder; provided, however, that Lender shall not be: (i) personally liable for the payment of any sum arising under or with respect to the Lease prior to the date Lender acquires Landlord's interest in the Leased Premises, which sum it is Landlord's obligation to pay, provided, however, that the foregoing shall not in any event prevent recourse by the Tenant against all or any part of Lender's right, title and interest in and to the Leased Premises or any part thereof (including, without limitation, Lender's right, title and interest in and to the rents and other income or revenue receivable from the Leased Premises or any part thereof, or the consideration receivable from the sale or other disposition, including a condemnation, of all or any part of the Leased Premises or from any fire or other casualty affecting all or any of the improvements located on the Leased Premises); (ii) obligated to cure any default of any prior landlord (including Landlord) under the Lease which occurred prior to the date Lender acquires Landlord's interest in the Leased Premises unless such default is of a continuing nature and has not been cured prior to Lender acquiring Landlord's interest in the Leased Premises, and provided that the foregoing shall not be deemed to constitute a waiver of any other rights or remedies of Tenant under the Lease including, without limitation, any right of offset against rent or any right of termination; (iii) subject to any right of offset against rent for any event of which Lender has not received written notice from Tenant pursuant to this Agreement; (iv) bound by any payment of rent or other amount by Tenant to any prior landlord (including Landlord) more than thirty (30) days in advance of the due date under the Lease; except to the extent said payment is required by the terms, covenants, conditions or agreements contained in the Lease; (v) personally liable for any warranties of any nature whatsoever; (vi) personally liable for construction or completion of any improvements for Tenant's use and occupancy; or (viii) personally liable for any claims, offsets or defenses which Tenant might have against Landlord.

In the event that the Lender or any other person acquires title to the Leased Premises pursuant to the exercise of any remedy provided for in the Mortgage or under the law of the state where the Leased Premises is located, the Lease shall not be terminated or affected by said foreclosure or sale resulting from any such proceeding and the Lender covenants that any sale by it of the Leased Premises pursuant to the exercise of any rights and remedies under the Mortgage or otherwise, shall include the assumption of the Lease and the obligations of the Landlord thereunder subject to the restrictions set forth herein.

3. ATTORNMENT.  Tenant agrees that, if the interest of Landlord in the Leased Premises shall be transferred to and owned by Lender by reason of foreclosure or other proceeding brought by it under any present or future lien against Landlord's interest in the Leased Premises, or by any other manner, Tenant shall be bound to the Lender under all of the terms, covenants, conditions and agreements set forth in the Lease for the balance of the term thereof remaining (including any and all extensions or renewals thereof effected in accordance with any option therefor in the Lease) with the same force and effect as if Lender were named therein as the landlord thereunder, and Tenant does agree to attorn to Lender as its landlord thereunder so as to establish direct privity of estate and contract between Lender and Tenant, said attornment to be effective and self-operative without the execution of any further instrument on the part of either of the parties hereto immediately upon Lender succeeding to the interest of Landlord in the Leased Premises.  The parties acknowledge and agree that the Mortgage provides that, under certain circumstances, Lender shall be entitled to collect, receive and demand payment of all or any part of the rent and other sums due and payable to Landlord under the Lease to Lender.  The parties agree that:  (a) Tenant shall be under no obligation to pay rent or any other sums due and payable to Landlord under the Lease to Lender until such time as Tenant receives written notice from Lender demanding payment of said amounts to Lender; (b) Tenant shall be entitled to rely on any such written notice from Lender and shall not incur any liability to Landlord as a result of such reliance notwithstanding the existence of any dispute between Landlord and Lender with respect to the existence of any default or the satisfaction of any condition under the Mortgage or any other document executed in connection with the transaction which is the subject of the Mortgage which would entitle Lender to collect, receive or demand payment of said amounts from Tenant; and (c) all of Lender's rights described in this sentence shall be subject to all of Tenant's rights and remedies set forth in the Lease including, without limitation, the right of offset against rent.

There shall be no merger of the fee estate in the Leased Premises and the leasehold estate in the Lease by reason of the fact that the leasehold estate in the Lease may be held, directly or indirectly, by or for the account of any person or entity who shall own the fee estate in the Leased Premises.

Tenant recognizes the Mortgage and, and that in the case of any such conveyance either the Mortgage will be paid, or the conveyance shall be made subject to the lien of the Mortgage.

Mortgagee shall be named as an additional insured under the Tenants liability insurance policies with coverage in the amount of * Dollars ($*) and as a mortgagee/loss payee under all property insurance policies covering the Leased Premises.

4. Lender's Option to Cure.  Tenant agrees to provide Lender with a copy of any written notice of default given to Landlord pursuant to the Lease.  Tenant shall not terminate the Lease unless Tenant has sent a copy of the notice of default to Lender and Lender has not rectified the particulars specified in such notice of default within the time period allowed Landlord in the Lease.

5.  DEFINITIONS.  For the purpose of this Agreement:  (a) the term "foreclosure" shall be deemed to include the acquisition of Landlord's interest in the Leased Premises by foreclosure or pursuant to the exercise of any power of sale contained in the Mortgage, or by deed (or assignment) given in lieu of, or in anticipation of, foreclosure or the exercise of any such power of sale, or by any other means whatsoever, and (b) the term "Lender" shall be deemed to include anyone who succeeds to Landlord's interest in the Leased Premises pursuant to the Mortgage including, without limitation, any purchaser at foreclosure or pursuant to the exercise of any power of sale contained in the Mortgage, or any grantee of a deed (or assignment) given in lieu of, or in anticipation of, foreclosure or the exercise of any such power of sale.

6.  NOTICES.  All notices given pursuant to this Agreement shall be in writing and shall be given by personal delivery, by United States registered or certified mail, or by United States express mail or other established express delivery service (such as Federal Express), postage or delivery charge prepaid, return receipt requested, addressed to the appropriate party at the address set forth above.

    The person and address to which notices are to be given may be changed at any time by any party upon written notice to the other party.  All notices given pursuant to this Agreement shall be deemed given upon receipt.  For the purpose of this Agreement, the term "receipt" shall mean any of the following:  (a) the date of delivery of the notice or other document as shown on the return receipt; (b) the date of actual receipt of the notice or other document by the person or entity specified pursuant to this section; or (c) in the case of refusal to accept delivery or inability to deliver the notice or other document, the earlier of:  (i) the date of the attempted delivery or refusal to accept delivery; (ii) the date of the postmark on the return receipt; or (iii) the date of receipt of notice of refusal or notice of non-delivery by the sending party.

7.  ATTORNEYS' FEES.  If any litigation is commenced between the parties hereto concerning this Agreement or the rights or obligations of any party in relation thereto, the prevailing party in such litigation shall be entitled, in addition to such other relief as may be granted, to a reasonable sum for its attorney's fees in such litigation (including any appeal thereof), which sum shall be determined by the court in such litigation or in a separate action brought for that purpose.

8.  SUCCESSORS AND ASSIGNS.  This Agreement shall bind and inure to the benefit of the parties hereto, their heirs, personal representatives, successors and assigns, including, without limitation, the mortgagee or beneficiary under any mortgage or deed of trust on Tenant's interest in the Lease or the Leased Premises, its successors and assigns.

9.  COUNTERPARTS.  This Agreement may be executed in any number of counterparts, each of which shall for all purposes be deemed to be an original and all of which together shall constitute but one and the same instrument and shall be effective upon execution of one or more of such counterparts by each of the parties hereto.

10. **MISCELLANEOUS.** If any term, covenant, condition or agreement contained in this Agreement or the application thereof to any person, firm or entity shall at any time or to any extent be deemed or found to be invalid or unenforceable by operation of law, judicial proceedings or otherwise, the remainder of this Agreement or the application of such term, covenant, condition or provision to persons or entities or to circumstances other than those as to which it is held invalid or unenforceable shall not be affected, and each remaining term, covenant, condition or provision of this Agreement or the application thereof shall be valid and enforced to the fullest extent permitted by law. This Agreement contains the entire agreement between the parties and supersedes all prior agreements, oral or written, with respect to the subject matter hereof. This Agreement may not be modified in any manner whatsoever except by an instrument in writing signed by each of the parties hereto. In construing the provisions of this Agreement and whenever the context so requires, the use of a gender shall include all other genders, the use of the singular shall include the plural, and the use of the plural shall include the singular. This Agreement shall be promptly recorded in the official land records of the county in which the Leased Premises is located. The original recorded Agreement shall be sent to Tenant. Lender shall receive a copy of the recorded Agreement.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

## EXHIBIT "D"

### [FORM OF TENANT ESTOPPEL]

### TENANT ESTOPPEL

The undersigned, *, (individually, and collectively the "**Tenant**"), whose address is * represents and certifies as follows:

1. The Tenant under that certain * Lease dated * (the "**Lease**") by and between the Tenant and * (the "**Landlord**") whose address is *, covering the property commonly known as * and described therein (collectively the "**Demised Property**").

2. The Lease constitutes the only agreement, either written or oral the Tenant has with respect to the Demised Property and any right of occupancy or use thereof.

3. The Lease is in full force and effect and has not been assigned, subleased, supplemented, modified or amended, in whole or in part, except as follows: *(if none, so state)* *

4. The Tenant took possession of the Demised Property on or about *, and commenced paying rent on or about *. The Tenant presently occupies the Demised Property and is paying rent on a current basis. No rent has been paid by Tenant in advance except for the monthly rental that became due on *, and a security deposit in the sum of US$* *(if none, so state)* now held by the Landlord in accordance with the terms of the Lease.

5. The *monthly base* rental is the sum of * Dollars and * Cents (US$*). The Landlord has not agreed to reimburse the Tenant for or to pay the Tenant's rent obligation under any other lease.

6. The Lease term commenced on *, and expires on *, and there are no options to renew except: *(if none, so state)* *

7. The Tenant is not in default of any of its obligations under the Lease, nor has there occurred any events which with the passage of time or giving of notice or both will result in any such default. To the actual knowledge of the Tenant, there are no defaults under the Lease by the Landlord, nor have any events occurred which, with the passage of time or giving of notice or both, will result in any such default. The Tenant does not presently have (nor with the passage of time or giving of notice or both will have) any offset, charge, lien, claim, termination right or defense under the Lease.

8. The Tenant has no right of first offer, right of first refusal, or option to purchase, with respect to all or any portion of the Demised Property.

9. The Tenant is aware that third parties intend to rely upon this Estoppel and the statements set forth herein and that the statements and facts set forth above shall be binding on the Tenant.

The Tenant and the persons executing this Estoppel on behalf of the Tenant have the power and authority to execute and deliver this Estoppel.

**TENANT:**

**By:** _____

**Name:** Justin Smith

**Its:** Executive Chairman


**Guarantor:**

**By:** _____

**Name:** Justin Smith

**Its:** Executive Chairman

**EXHIBIT "E"**
**COMMERCIAL LEASE GUARANTY AGREEMENT**

THIS COMMERCIAL LEASE GUARANTY ("Guaranty" or "Agreement") is made by Healthcare Solutions Management Group, Inc. ("Guarantor") in favor of Millrock Investment fund 1 LLC, a Utah limited liability company, and/or its assigns ("Landlord"), in connection with that certain lease dated on or about even date herewith (the "Lease") pursuant to which Landlord is to lease to SARC by HSI - KELLER, TX Inc. ("Tenant") those premises located at 1220 Keller Parkway, Keller, Tx. (the "Demised Premises"), as more particularly described in the Lease.

RECITALS

WHEREAS Landlord requires this Guaranty as a condition to its execution of that certain Commercial Lease and the performance of the obligations to be performed under the Lease by Landlord; and

WHEREAS, Guarantor has agreed to provide this Guaranty to induce Landlord to enter into the Lease with Tenant and perform its obligations under the Lease.

In consideration of Landlord's agreement to execute the Lease and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor does hereby agree with Landlord as follows:

1.     The Lease is hereby incorporated into and made a part of this Guaranty by this reference.

2.     Guarantor hereby unconditionally guarantees, as a primary obligor and not as a surety, without deduction by reason of setoff, defense or counterclaim, the full and punctual payment of all sums of rent and other amounts payable under the Lease and the full and punctual performance of all terms, covenants and conditions in the Lease to be kept, performed and/or observed by Tenant (collectively, the "Guaranteed Obligations"). Guarantor's obligations under this Guaranty are irrevocable, continuing, and unconditional.

3.     Guarantor hereby agrees that, without the consent of or notice to any Guarantor and without affecting any of the obligations of Guarantor hereunder:  (a) the Lease may be extended and any other term, covenant or condition of the Lease may be amended, compromised, released or otherwise altered by Landlord and Tenant, and Guarantor does guarantee and promise to perform all the obligations of Tenant under the Lease as so extended, amended, compromised, released or altered; (b) any guarantor of or party to the Lease may be released, substituted or added; (c) any right or remedy under the Lease may be exercised, not exercised, impaired, modified, limited, destroyed, or suspended; (d) Landlord or any other person may deal in any manner with Tenant, any guarantor, any party to the Lease or any other person; (e) Landlord may permit Tenant to holdover the Demised Premises beyond the Lease

Term: and (f) all or any part of the Demised Premises or of Tenant's rights or liabilities under the Lease may be sublet, assigned or assumed.  Without in any way limiting the foregoing, Guarantor agrees not to unreasonably withhold its consent to any sublease, assignment of the Lease or other modification of the Lease which is agreed to by Landlord and Tenant.

4.     Guarantor hereby waives and agrees not to assert or take advantage of:  (a) any right to require Landlord to proceed against Tenant, or any other guarantor or person or to pursue any other security or remedy before proceeding against any Guarantor; (b) any defense based on the genuineness, validity, regularity or enforceability of the Lease; (c) any right or defense that may arise by reason of the incapacity, lack of authority, death or disability

of Tenant or any other person; and (d) any right or defense arising by reason of the absence, impairment, modification, limitation, destruction or cessation (in bankruptcy, by an election of remedies, or otherwise) of the liability of Tenant, of the subrogation rights of any Guarantor or of the right of any Guarantor to proceed against Tenant for reimbursement.

5.   Guarantor hereby waives and agrees not to assert or take advantage of (a) any right or defense based on the absence of any or all presentments, demands (including demands for performance), notices (including notices of any adverse change in the financial status of Tenant, notices of any other facts which increase the risk to Guarantor, notices of non-performance and notices of acceptance of this Guaranty) and protests of each and every kind; (b) the defense of any statute of limitations in any action under or related to this Guaranty or the Lease; (c) any right or defense based on a lack of diligence or failure or delay by Landlord in enforcing its rights under this Guaranty or the Lease.

6.   Guarantor hereby waives and agrees not to assert or take advantage of any right to (a) exoneration if Landlord's actions shall impair any security or collateral of any Guarantor; (b) any security or collateral held by Landlord; (c) require Landlord to proceed against or exhaust any security or collateral before proceeding against any Guarantor; (d) require Landlord to pursue any right or remedy for the benefit of any Guarantor.

7.   Guarantor shall not, without the prior written consent of Landlord, commence, or join with any other person in commencing, any bankruptcy, reorganization or insolvency proceeding against Tenant. Guarantor's obligations under this Guaranty shall in no way be affected by any bankruptcy, reorganization or insolvency of Tenant or any successor or assignee of Tenant or by any disaffirmance or abandonment of the Lease or any payment under this Guaranty by a trustee of Tenant in any bankruptcy proceeding including, without limitation, any impairment, limitation, or modification of the liability of Tenant or the estate of Tenant in bankruptcy, or of any remedy for the enforcement of Tenant's liability under the Lease resulting from the operation of any present or future provision of any federal or state bankruptcy or insolvency law or other statute or from the decision of any court. Guarantor shall file in any bankruptcy or other proceeding in which the filing of claims is required or permitted by law all claims which such Guarantor may have against Tenant relating to any indebtedness of Tenant to such Guarantor and will assign to Landlord all rights of such Guarantor thereunder. Landlord shall have the sole right to accept or reject any plan proposed in such proceeding and to take any other action which a party filing a claim is entitled to do. In all such cases, whether in administration, bankruptcy or otherwise, the person or persons authorized to pay such claim shall pay to Landlord the amount payable on such claim and, to the full extent necessary for that purpose, Guarantor hereby assigns to Landlord all of such Guarantor's rights to any such payments or distributions to which such Guarantor would otherwise be entitled; provided, however, that such Guarantor's obligations hereunder shall not be satisfied except to the extent that Landlord receives cash by reason of any such payment or distribution. If Landlord receives anything hereunder other than cash, the same shall be held as collateral for amounts due under this Guaranty.

8.   Until all the Tenant's obligations under the Lease are fully performed, Guarantor: (a) shall have no right of subrogation or reimbursement against the Tenant by reason of any payments or acts of performance by Guarantor under this Guaranty; (b) subordinate any liability or indebtedness of the Tenant now or hereafter held by Guarantor to the obligations of the Tenant under, arising out of or related to the Lease or Tenant's use of the Demised Premises; and (c) acknowledge that the actions of Landlord may affect or eliminate any rights of subrogation or reimbursement of Guarantor as against Tenant without any liability or recourse against Landlord.

9.   Prior to the execution of this Guaranty and at any time during the Term of the Lease upon ten (10) days prior written notice from Landlord, Guarantor agrees to provide Landlord with a current financial statement for Guarantor and financial statements for such Guarantor. Guarantor's financial statements are to be prepared in accordance with generally accepted accounting principles. Guarantor represents and warrants that all such financial statements shall be true and correct statements of such Guarantor's financial condition.

10.  The liability of Guarantor and all rights, powers and remedies of Landlord hereunder and under any other agreement now or at any time hereafter in force between Landlord and Guarantor relating to the Lease shall be cumulative and not alternative and such rights, powers and remedies shall be in addition to all rights, powers and remedies given to Landlord by law.

11.  If this Guaranty is signed by more than one person, then all of the obligations of Guarantor arising hereunder shall be jointly and severally binding on each of the undersigned, and their respective heirs, personal representatives, successors and assigns, and the term "Guarantor" shall mean all of such persons and each of them individually.

12.  This Guaranty is for the benefit of Landlord and Landlord's successors and assigns, and in the event of an assignment of the Guaranteed Obligations, or any part thereof, the rights and benefits hereunder, to the extent applicable to the Guaranteed Obligations so assigned, may be transferred with such Guaranteed Obligations. Guarantor waives notice of any transfer or assignment of the Guaranteed Obligations or any part thereof.

13.  This Guaranty shall constitute the entire agreement between Guarantor and the Landlord with respect to the subject matter hereof. No provision of this Guaranty or right of Landlord hereunder may be waived nor may any guarantor be released from any obligation hereunder except by a writing duly executed by an authorized officer, director or trustee of Landlord. The waiver or failure to enforce any provision of this Guaranty shall not operate as a waiver of any other breach of such provision or any other provisions hereof. No course of dealing between Landlord and Tenant shall alter or affect the enforceability of this Guaranty or Guarantor's obligations hereunder.

14.  Guarantor hereby agrees to indemnify, protect, defend and hold Landlord harmless from and against, all losses, costs and expenses including, without limitation, all interest, default interest, post-petition bankruptcy interest and other post-petition obligations,

late charges, court costs and attorneys' fees, which may be suffered or incurred by Landlord in enforcing or compromising any rights under this Guaranty or in enforcing or compromising the performance of Tenant's obligations under the Lease.

15.    The term "Landlord" whenever hereinabove used refers to and means the Landlord in the foregoing Lease specifically named and also any assignee of said Landlord, whether by outright assignment or by assignment for security, and also any successor to the interest of said Landlord or of any assignee of such Lease or any part thereof, whether by assignment or otherwise. The term "Tenant" whenever hereinabove used refers to and means the Tenant in the foregoing Lease specifically named and also any assignee or subtenant of said Lease and also any successor to the interests of said Tenant, assignee or sub lessee of such Lease or any part thereof, whether by assignment, sublease or otherwise including, without limitation, any trustee in bankruptcy and any bankruptcy estate of Tenant, Tenant's assignee or sub lessee.

16.    If any or all Guarantor shall become bankrupt or insolvent, or any application shall be made to have Guarantor declared bankrupt or insolvent, or Guarantor shall make an assignment for the benefit of creditors,, notice of such occurrence or event shall be promptly furnished to Landlord by Guarantor or such Guarantor's fiduciary. This Guaranty shall extend to and be binding upon Guarantor's successors and assigns, including, but not limited to, trustees in bankruptcy.

17.    <u>Notices</u>.

All notices from the Guarantor to Landlord and Landlord to Guarantor required or permitted by any provision of this Guaranty shall be in writing and sent by registered or certified mail or nationally recognized overnight delivery service and addressed as follows:

TO LANDLORD:          Millrock Investment fund 1 LLC
                      C/O Mary Street
                      Mary.street@mtnwest.com
                      2015 West Grove Parkway, Suite J, Pleasant
                      Grove, UT 84062

TO GUARANTOR:         Healthcare Solutions Management Group, Inc.
                      3 School Street, Suite 303
                      Glen Cove, NY 117542

Such addresses may be changed by such notice to the other party. Notice given as hereinabove provided shall be deemed given on the date of its deposit in the United States Mail and, unless sooner actually received, shall be deemed received by the party to whom it is addressed on the third calendar day following the date on which said notice is deposited in the mail, or if a courier system is used, on the date of delivery of the notice.

18.    Guarantor agrees to pay to Landlord on demand all reasonable costs and expenses incurred by Landlord in seeking to enforce Landlord's rights and remedies under this

Guaranty, including court costs, costs of alternative dispute resolution and reasonable attorneys' fees and costs, whether or not suit is filed, or other proceedings are initiated hereon. All such reasonable costs and expenses incurred by Landlord shall constitute a portion of the Guaranteed Obligations hereunder, shall be subject to the provisions hereof with respect to the Guaranteed Obligations and shall be payable by Guarantor within ten (10) days of written demand by Landlord.

19. **GUARANTOR AND LANDLORD HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT ANY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS GUARANTY AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LANDLORD ENTERING INTO THIS AGREEMENT.**

20. Guarantor agrees that all questions with respect to this Guaranty shall be governed by, and decided in accordance with, the laws of the in which the Demised Premises is located.

21. If any provision of this Guaranty or the application thereof to any person or circumstance shall, for any reason and to any extent, be declared to be invalid or unenforceable, neither the remaining provisions of this Guaranty nor the application of such provision to any other person or circumstance shall be affected thereby, and the remaining provisions of this Guaranty, or the applicability of such provision to other persons or circumstances, as applicable, shall remain in effect and be enforceable to the maximum extent permitted by applicable law.

22. Time is strictly of the essence under this Guaranty and any amendment, modification or revision hereof.

23. When the context and construction so requires, all words used in the singular herein shall be deemed to have been used in the plural. The word "person" as used herein shall include an individual, company, firm, association, partnership, corporation, trust or other legal entity of any kind whatsoever.

24. If any Guarantor is a corporation, each individual executing this Guaranty on behalf of said corporation represents and warrants that he is duly authorized to execute and deliver this Guaranty on behalf of said corporation, in accordance with a duly adopted resolution of the Board of Directors of said corporation or in accordance with the by-laws of said corporation, and that this Guaranty is binding upon said corporation in accordance with its terms. If any Guarantor is a corporation, Landlord, at its option, may require such Guarantor to concurrently, with the execution of this Guaranty, deliver to Landlord a certified copy of a resolution of the Board of Directors of said corporation authorizing or ratifying the execution of this Guaranty.

Notwithstanding anything in this Guaranty to the contrary and provided neither Tenant nor any Guarantor are in default or have defaulted under the Lease or this

Guaranty, Guarantor shall be released from this Guaranty after either. The guarantor is subject to the guaranty for the full term of the lease. This Guaranty shall not be subject to any bankruptcy preference prior or any other disgorgement.

**THIS GUARANTY REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**IN WITNESS WHEREOF,** the said Guarantor has hereunto l the day and year first above written.

Signed & Delivered in the
presence of:

HEALTHCARE SOLUTIONS
MANAGEMENT GROUP, INC.
Name: Justin Smith

Title: Executive Chairman
By:

**EXHIBIT "F"**
**COMMENCEMENT DATE AGREEMENT**


This Agreement is made and entered into as of the ___ day of _____, 20___ between [_____, a _____ _____] ("Landlord") and [_____, a _____ _____] ("Tenant"), and shall be attached to and made a part of that certain Retail Lease between Landlord and Tenant dated _____, 20___ (the "Lease"). Pursuant to the provisions of the Lease, Landlord and Tenant intending to be legally bound hereby, agree to the following:

a.    The Commencement Date of the Lease occurred on _____, 20___.

b.    Tenant agrees that, as of and through the date hereof, Landlord has fully and timely complied with and performed each and every of its obligations as set forth in the Lease and that Tenant has no claims or causes of action against Landlord whatsoever and has no right to any setoffs against any and all sums due Landlord.

IN WITNESS WHEREOF, the parties have duly executed this supplement to the Lease as of the day and year first above written

Landlord

Millrock Investment fund 1 LLC

C/O Mary Street

Mary.street@mtnwest.com

2015 West Grove Parkway, Suite J, Pleasant Grove, UT

84062

TENANT:

SARC BY HSI – DRAPER UT Inc.

By:_____
Name: Justin Smith
Title: Executive Chairman
Date: 11-19-2020