Mitchell A. Stephens (11775)
Lara A. Swensen (8493)
JAMES DODGE RUSSELL & STEPHENS, P.C.
545 East 300 South
Salt Lake City, Utah 84102
Telephone:  801.363.6363
Email: mstephens@jdrslaw.com
          lswensen@jdrslaw.com

*Counsel for Defendant Trevor Weber*

---

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH**

| | |
|---|---|
| PATTI KLAIR; ROBERT MYERS; ROBERT BARNES; ERIC CARNRITE; ELIZABETH HILL-D'ALESSANDRO; ROBERT TANNEHILL; DITAS TANNEHILL; JOSE REMENTERIA; TEENA REMENTERIA; CHARLES BRAUER; LAURA BRAUER; KAREN MARION; KATHERINE MADERA; CARL MCQUEARY; LYNN MCQUEARY; DONALD PATTERSON; KURTIS TRENT MANNING; TONY SCHAKER; PATRICK WHITE; HILDEGARD WHITE; QUEST REALTY TRUST; SECURE STORAGE LLC; KURTIS TRENT MANNING LIVING TRUST, | **DEFENDANT TREVOR WEBER'S MOTION TO DISMISS**  <br><br> Case No. 2:23-cv-00407 <br><br> District Judge Ann Marie McIff Allen. <br><br> Magistrate Judge Cecilia M. Romero |
| *Plaintiffs*, | |
| v. | |
| KEVIN LONG, MILLCREEK COMMERCIAL LLC, COLLIERS INTERNATIONAL, ANDREW BELL, TREVOR WEBER; SPENCER TAYLOR; BLAKE MCDOUGAL, SCOTT RUTHERFORD; EQUITY SUMMIT GROUP; ELEVATED 1031; MILLROCK INVESTMENT FUND 1, LLC; MILLROCK INVESTMENT FUND 1 MANAGEMENT, | |

LLC; KGL REAL ESTATE DEVELOPMENT PLLC; SMART COVE, LLC; GTR HOLDINGS, LLC; LONG HOLDINGS, LLC; BRENT SMITH; THOMAS SMITH; LEW CRAMER; MATTHEW HAWKINS; GIL BOROK; DAVID JOSKER; JERALD ADAM LONG; MARY STREET; CAMS REALTY, LLC; MOUNTAIN WEST COMMERCIAL, LLC; STEVE CATON; SARC US, INC.; EMANUEL BUTERA; JAMIE BUTERA; JAMESON, LLC DBA AMERICAN DEVELOPMENT PARTNERS; SCOTT KING; MERIT COMMERCIAL REAL ESTATE, LLC; MARK MACHLIS; LADY MIRA BLUE MACHLIS; HELLO BELLO, LLC; SAMUEL DUKE; KGL ADVISORS, LLC, COLLIERS INTERNATIONAL GROUP, INC.; COLLIERS INTERNATIONAL HOLDINGS (USA), INC.; COLLIERS INTERNATIONAL INTERMOUNTAIN, LLC;

*Defendants*.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Trevor Weber, by and through his counsel of record, hereby moves to dismiss the claims against him in Plaintiffs' Second Amended Complaint (Dkt. 158).

## INTRODUCTION

The third iteration of Plaintiffs' complaint has added pages and parties, but still lacks the requisite allegations to state a cognizable claim against Trevor Weber ("Weber"). The gravamen of Plaintiffs' Second Amended Complaint is that they are unhappy with certain investments they made in various commercial properties. But Weber – even under Plaintiffs' allegations – was simply a low-level employee who passed on marketing materials and information supplied by others. There are no allegations that he was involved in acquiring the properties, performing due

1

diligence, or creating any of the marketing materials allegedly at issue.  Nor do Plaintiffs allege that Weber had any authority or control over any of the other defendants (individuals or entities) involved with the properties.  He was simply an "employee and agent of Millcreek" and Colliers who allegedly "reviewed" the marketing materials for the Tenancy-in-Common ("TIC") program. [SAC, ¶¶ 39-40, 508].

Rather than give Weber fair notice of the claims specifically against him, Plaintiffs' allegations lump at least **nineteen different defendants** under the collective term "the Colliers/Long Parties" and proceed to make general allegations of fraud against the group as a whole.  [*See id.* at ¶ 71].  This generalized approach cannot satisfy the heightened pleading standard for fraud claims, nor does it adequately allege a basis for claiming that Weber had a fiduciary duty towards Plaintiffs.  In short, none of the claims against Weber include the requisite factual allegations to survive dismissal.

Plaintiffs' strategy in this case appears to be casting an ever-widening net in an attempt to hold someone accountable for their alleged losses.  Trevor Weber is not that person.

## ARGUMENT

### I.      The Fraud Claims Against Weber Should be Dismissed.

Plaintiffs' claims against Weber for fraud, negligent misrepresentation, and concealment/fraudulent nondisclosure[1] (collectively, the "Fraud Claims") should be dismissed for failure to meet the heightened pleading standards of Rule 9(b).  Federal Rule of Civil Procedure 9(b) requires Plaintiffs to "state with particularity the circumstances constituting fraud or mistake."

---

[1] These are the Seventh, Eighth, and Tenth Claims of the Second Amended Complaint, respectively.

Fed. R. Civ. P. 9(b).  To adequately state the "circumstances constituting fraud," Plaintiffs must "set forth the who, what, when, where and how of the alleged fraud and describe the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  *TDC Lending LLC v. Private Cap. Grp., Inc.*, 340 F. Supp. 3d 1218, 1224 (D. Utah Sept. 13, 2018) (internal citations omitted).

Plaintiffs' fraud claim is asserted against **twenty-four defendants** and relies on generic assertions against the entire group, such as, "As alleged more fully herein, Defendants made false statements about vital facts regarding Plaintiffs' investments" and "Defendants made the statements knowing that they were false."  [SAC ¶¶ 1003-04].  Particularly given the breadth of the complaint, it is impossible for Weber to deduce which alleged statements Plaintiffs are attributing to him as fraudulent, much less when or how they were made, or what the consequences were.  Moreover, there is no alleged basis to infer that Weber knew any particular representation or omission was false or made the statements for the purposes of inducing a party to rely upon it. *See Summit Mountain Holding Grp., LLC v. Summit Vill. Dev. Lender 1, LLC,* No. 1:21-cv-00110, 2024 WL 4905639, at *9 (D. Utah Nov. 27, 2024) ("The elements of a fraud cause of action consist of a misrepresentation or material omission of fact which was false and known to be false by the defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury.").  Conclusory recitations attributable to a large group of defendants cannot suffice to meet the pleading standard for fraud.

Plaintiffs broadly allege that Weber made representations regarding the Keller Property "in or about March to May 2022" to two of the Plaintiffs.  The representations attributed to Weber merely quote marketing materials allegedly provided by Weber's employers.  For example:

3

| Alleged Marketing Materials | Alleged Weber Statements |
|---|---|
| HSH was the "Tenant of Your Dreams" who "meets our pillars for success." [¶ 260]² | HSH was the "Tenant of Your Dreams" and met Millcreek's "pillars for success." [¶ 603]. |
| "The Marketing Materials provided by Colliers/Long represented that the Keller … Lease[] [was] 'all backed by an HSH corporate guarantee" [¶ 525; *see also* ¶ 256 ("Millcreek Commercial ensures that any commercial property has a corporate guarantee to protect investors")³]. | Millcreek's buildings had "corporate guarantees to protect you financially." [*Id.*]. |
| "Millcreek represented the lease on each of its TIC properties… was triple-net – meaning the tenant, not the owner, would be responsible for paying taxes, paying insurance, and maintaining the property." [¶ 255]. | "[D]ue to the triple-net nature of the lease, there would be no regular or ongoing expenses to the TIC owners." [*Id.*]. |
| "Each Plaintiff was told that with every property, investors could 'enjoy a quality property that has been identified and vetted by seasoned professionals.'" [¶ 250 (allegedly quoting Millcreek website)]. | "Long-term, vetted tenant in place" for Keller Property [*Id.*]. |
| "Millcreek … represented to Plaintiffs that they would always retain 5% to 20% ownership." [¶ 536]. | "Millcreek maintains at least 5% ownership in all their properties" [*Id.*]. |

There are no allegations that Weber knew these statements to be false. Nor are there factual allegations from which the Court could infer that Weber knew the statements were false. At best, Plaintiffs have alleged that Weber repeated information from the general marketing materials that he was not responsible for drafting or fact-checking. That cannot establish an inference of the requisite mental state for fraud-based claims.

---

² Plaintiffs allege this language is excerpted from the Keller Property's Offering Memorandum. [SAC ¶ 260].
³ Plaintiffs allege this language is excerpted from an article from Millcreek Commercial.

Similarly, Plaintiffs' negligent misrepresentation fails to provide the requisite level of detail. "[T]he heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure applies to negligent misrepresentation claims." *Logan v. Bank of Am., N.A.*, No. 2:12-cv-00191, 2012 WL 5874364, at *3 (D. Utah Nov. 20, 2012). The omission of details regarding which defendant allegedly made statements or omissions, when said statements took place, and how the statements were communicated violates the requirements for all fraud-based pleadings.

## II.     The Conspiracy and Aiding/Abetting Claims Against Weber Should be Dismissed.

Plaintiffs' claims for conspiracy and aiding and abetting tortious conduct[4] fail because they are dependent on viable fraud claims, which are absent from the Second Amended Complaint. Without an underlying tort, the claims are not "viable independent causes of action that can survive on their own." *Hansing v. Utah Dep't of Nat. Res.*, No. 2:24-cv-480, 2025 WL 1676532, at *9 n. 32 (D. Utah June 13, 2025). Plaintiffs are required to "adequately plead the existence" of an underlying tort, or face dismissal of the dependent claims. *See Puttuck v. Gendron,* 2008 UT App 362, ¶ 21, 199 P.3d 971.

Here, Plaintiffs' underlying tort appears to be the fraud allegations, to the extent discernable from the generic assertions. [SAC, ¶ 1060 (alleging a conspiracy to "fraudulently induc[e] Plaintiffs' investment"), ¶ 1062 ("participants in the conspiracy committed one or more unlawful acts, including the acts described in the Causes of Action above"); *see also id.* at ¶ 1065 ("certain Defendants have engaged in conduct constituting a tort")]. As discussed *supra*, those fraud allegations have not been adequately plead and should be dismissed. Lacking adequate

---

[4] These are the Twelfth and Thirteenth Causes of Action in the Second Amended Complaint.

pleading of an underlying tort, the conspiracy and aiding and abetting claims should also be dismissed.

## III.   The Securities Claims Against Weber Should be Dismissed.

Plaintiffs raise the same securities claims against Weber that they do against other defendants, without meaningful distinction.   Specifically, Plaintiffs' First, Second, and Third Causes of Action (the "Federal Securities Claims") assert that the defendants (collectively) "made untrue statements of material fact and omitted material facts … in violation of Rule 10b-5," engaged in the sale of unregistered securities, and were liable for controlling other "Liable Persons."  [SAC, ¶¶ 952, 965, 971].  The Fourth, Fifth and Sixth Claims allege that the defendants violated state securities law (the "State Securities Claims").  Neither set of claims should survive dismissal.

First, with respect to the Federal Securities Claims, the bare bones allegations fail to satisfy the heightened pleading requirement that applies to these claims.  *See In re Level 3 Commc'ns, Inc. Sec. Litig.,* 667 F.3d 1331, 1333 (10th Cir. 2012).  Plaintiffs must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  *Koch v. Koch Indus., Inc.,* 203 F.3d 1202, 1236 (10th Cir. 2000).  Generalized assertions that "Defendants made untrue statements of material fact and omitted material facts necessary to make the statements not misleading, as alleged above" are insufficient.  [*See* SAC ¶ 952].  As explained *supra*, the allegations of misrepresentations specific to Weber cannot satisfy the heightened pleading requirement for claims regarding fraudulent conduct, including allegations of securities fraud.  Lumping Weber in with eighteen other defendants (grouped as the "Colliers/Long Parties" in the Second Amended Complaint) also fails to meet the

6

pleading requirements with respect to the details of the alleged statements or the requisite mental state. *See* 15 U.S.C. § 78u-4(b)(2)(A) (plaintiff must "state with particularity facts giving rise to a **strong inference** that the defendant acted with the required state of mind.") (emphasis added). There are no such facts included in the Second Amended Complaint with respect to Weber and no basis to conclude that he acted "with intent to defraud or recklessness." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015).

Additionally, the assertions that defendants engaged in the alleged sale of unregistered securities fails as a matter of law because Plaintiffs have not alleged compliance with the one-year limitation required by the Securities Act. *See* 15 U.S.C. § 77m. Plaintiffs seemingly claim that Weber's alleged conduct with respect to their purchases of TIC interests took place from "approximately May 2021 to November 2021" (SAC ¶ 662) and "about March to May 2022" (¶ 603). Plaintiffs do not allege the specific dates of their respective investments.[5] However, Plaintiffs filed their original complaint in this matter on June 21, 2023, more than one year after the latest alleged conduct by Weber. [*See* Dkt. 1]. Accordingly, the claim is presumptively barred by the Securities Act.

Pursuant to DUCivR 7-1(a)(8), Weber also joins in and incorporates by reference the arguments raised by Defendants Long and Taylor regarding the timeliness of the claims. [*See* Dkt. 179 at 8-10; Dkt. 180 at 8-10].

Finally, with respect to the State Securities Claims, Plaintiffs have failed to allege the prerequisite existence of a "security" under Utah law. The Legislature's definition of a "security"

---

[5] Nor are there allegations that Weber prevented Plaintiffs from discovering that the securities allegedly were unregistered.

expressly excludes the type of interest in real property (the TIC investments) at issue here. *See* Utah Code § 61-1-13(ee)(ii)(C); *Wilson v. Millcreek Com. Props., LLC*, No. 2:24-cv-00624, 2025 WL 2256685, at *11 (D. Utah Aug. 7, 2025). [*See* Dkt. 179 at 10-11, Dkt. 180 at 11-12, Dkt. 173 at 2-4]. The State Securities Claims against Weber should be dismissed for that reason alone, as well as their failure to satisfy the heightened pleading standard applicable to fraud claims, as discussed *supra.*

Pursuant to DUCivR 7-1(a)(8), Weber joins in and incorporates by reference the arguments raised by Defendants Long, Taylor, and Colliers with respect to the dismissal of the State Securities Claims.

## IV.    The Fiduciary Duty Claim against Weber Should be Dismissed.

Plaintiffs' Fiduciary Duty Claim[6] fails because there are no allegations that could establish Weber had a fiduciary duty to Plaintiffs. The existence of a fiduciary duty is a prerequisite to proceeding with the claim. *See First Am. Title Ins. Co. v. Nw. Title Ins. Agency, LLC*, No. 2:15-cv-00229, 2016 WL6902473, at *25 (D. Utah Nov. 23, 2016) (listing elements of claim). Although Plaintiffs generically assert that "Defendants owed Plaintiffs fiduciary duties," they have not alleged any basis to conclude that Weber was in a "position of peculiar confidence," or had a "duty to act primarily for the benefit of" any of the Plaintiffs. [*See* SAC ¶ 1025]; *cf. First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.,* 786 P.2d 1326, 1333 (Utah 1990). Plaintiffs do not allege that Weber had a contractual duty to act as Plaintiffs' fiduciary, nor have they alleged facts that would imply he served in that role as a result of "the factual situation surrounding the involved transactions and the relationship of the parties to each other." *Id.* at 1332.

---

[6] The Fiduciary Duty Claim is the Ninth Cause of Action.

The allegations regarding Weber's role are simply that he was "an employee and agent of Millcreek" and Colliers who allegedly "reviewed" the marketing materials for the TIC program. [SAC, ¶¶ 39-40, 508].  There are no allegations that he had "years of confidential dealings" with Plaintiffs, or even that he knew them for longer than a couple months.  *See First Sec. Bank*, 786 P.2d at 1332 (finding that even being a "longtime customer" was insufficient to establish a fiduciary relationship).  Plaintiffs do not allege that Weber acted as their agent, negotiated on their behalf, or received confidential information from them in trust.  They simply rely on conclusory assertions regarding the relationships of the Defendants, as a whole, to all of the Plaintiffs.  [*See* SAC at ¶¶ 1021-1027].  In short, there is no alleged basis for the Court to conclude that Weber had a fiduciary duty to the Plaintiffs.  The breach of fiduciary duty claim should be dismissed.

## V.     The Unjust Enrichment Claim against Weber Should be Dismissed.

Plaintiffs' Unjust Enrichment claim[7] should be dismissed because they fail to allege conferring a benefit directly on Weber.  To establish a claim for unjust enrichment, Plaintiffs most establish "(1) a benefit conferred; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention of the benefit by the conferee under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *US. Fidelity v. U.S. Sports Specialty*, 2012 UT 3, ¶ 12, 270 P.3d 464 (cleaned up).  The remedy for an unjust enrichment claim "is one of restitution designed to restore to a plaintiff a benefit unjustly enjoyed." *Id.*

"Under Utah law, a party cannot satisfy the first element of unjust enrichment if the party did not confer a benefit on the alleged recipient." *Security Sys., Inc. v. Alder Holdings, LLC*, 421

---

[7] The unjust enrichment claim is the eighteenth cause of action in the Second Amended Complaint.

F. Supp. 3d 1186, 1193 (D. Utah 2019). "It must first be determined whether a benefit has been conferred on plaintiffs by defendants." *Berrett v. Stevens*, 690 P.2d 553, 557 (Utah 1984). For example, in *Security Systems, Inc. v. Alder Holdings*, the Court dismissed the plaintiff's unjust enrichment claim where the benefit at issue ("revenue and other compensation") came from third-party customers who enrolled with defendant, not directly from plaintiff. "Plaintiff's role in the allegations here is incidental to any benefit their former customers conferred on defendants." 421 F. Supp. 3d at 1194. "Case law is clear that it is the claimant who must confer the benefit . . . ." *Id.*

In the instant case, Plaintiffs do not allege that they conferred a benefit directly on Weber. Instead, Plaintiffs perpetuate their conclusory, all-inclusive approach to the pleadings by asserting that "Plaintiffs conferred benefits on the Defendants by making their investment in Millcreek TIC Properties." [SAC ¶ 1151]. Further, Plaintiffs allege that "Defendants" received a benefit "in the form of commissions or other compensation." [*Id.* at ¶ 1152]. The Second Amended Complaint does not allege any benefit that any particular Plaintiff conferred on Weber in particular.

Moreover, "[U]njust enrichment does not result if the defendant has received only an incidental benefit from the plaintiff's services." *Jones v. Mackey Price Thompson & Ostler*, 2015 UT 60, ¶ 65, 355 P.3d 1000 (cleaned up). In *Jones*, a former employee of a law firm argued that he was entitled to a greater share of the fees from a contingency case than he had received, and that the individual defendants had "ultimately benefited" from his work by improperly retaining his share of fees. *Id.* at ¶ 64. While it was undisputed that the individual defendants, Mr. Mackey and Mr. Price, had received money from the law firm, the question was whether that benefit from

10

the former employee's work was "direct or incidental." *Id.* at ¶ 67. The Court found that it was

incidental.

> Whether a benefit is direct or incidental depends on the relationship between the parties . . . [T]he undisputed facts show that Mr. Mackey and Mr. Price were third parties to the primary relationship between the law firm of Mackey Price and Mr. Jones. This primary relationship is evidenced by the fact that all of the direct contractual relationships involved in this case were with the law firm, not with Mr. Mackey or Mr. Price individually. . . . ***Even viewed in the light most favorable to Mr. Jones, these facts fail to raise a genuine issue of material fact concerning whether Mr. Mackey and Mr. Price directly benefited*** from his work on the Fen-Phen litigation.

*Id.* (affirming dismissal of unjust enrichment claim) (emphasis added); *see also Simons v. Park City RV Resort, LLC*, 2015 UT App 168, ¶ 18, 354 P.3d 215 (affirming summary judgment where none of the disputed payments were made directly to the individual defendant, as president of the construction company, but rather the payments "may have indirectly helped fund his salary as an employee of NSC or other disbursements.").

Simply alleging that the Defendants were paid by the same company or companies that allegedly received Plaintiffs' investments "do[es] not plausibly state a claim for unjust enrichment" as to individual employees like Weber. *See Smith v. LifeVantage Corp.*, No. 2:18-cv-00621, 2020 WL 6940735, *5 (D. Utah Nov. 25, 2020) (dismissing unjust enrichment claim as to officer of company). Plaintiffs have alleged nothing more than this type of indirect benefit by Weber. The unjust enrichment claim should be dismissed.

## CONCLUSION

For the foregoing reasons, Weber respectfully requests that the Court grant the Motion to Dismiss and narrow the claims allowed to proceed in this litigation. Repeatedly lumping an individual employee in with numerous other individuals and entities should not suffice to provide

11

adequate notice, much less satisfy the heightened pleading standard applicable to claims of fraudulent conduct.

DATED this 27th day of March, 2026.

JAMES DODGE RUSSELL & STEPHENS, P.C.

/s/ Lara A. Swensen
Lara A. Swensen
Mitchell A. Stephens

*Counsel for Defendant Trevor Weber*

12