Mitchell A. Stephens (11775)
Lara A. Swensen (8493)
JAMES DODGE RUSSELL & STEPHENS, P.C.
545 E 300 South
Salt Lake City, Utah 84102
Telephone:  801.363.6363
Email: mstephens@jdrslaw.com
       lswensen@jdrslaw.com

*Counsel for Defendant Trevor Weber*

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH**

| | |
|---|---|
| PATTI KLAIR; ROBERT MYERS; ROBERT BARNES; ERIC CARNRITE; ELIZABETH HILL-D'ALESSANDRO; ROBERT TANNEHILL; DITAS TANNEHILL; JOSE REMENTERIA; TEENA REMENTERIA; CHARLES BRAUER; LAURA BRAUER; KAREN MARION; KATHERINE MADERA; CARL MCQUEARY; LYNN MCQUEARY; DONALD PATTERSON; KURTIS TRENT MANNING; TONY SCHAKER; PATRICK WHITE; HILDEGARD WHITE; QUEST REALTY TRUST; SECURE STORAGE LLC; KURTIS TRENT MANNING LIVING TRUST,<br><br>*Plaintiffs*,<br><br>v.<br><br>KEVIN LONG, MILLCREEK COMMERCIAL LLC, COLLIERS INTERNATIONAL, ANDREW BELL, TREVOR WEBER; SPENCER TAYLOR; BLAKE MCDOUGAL, SCOTT RUTHERFORD; EQUITY SUMMIT GROUP; ELEVATED 1031; MILLROCK INVESTMENT FUND 1, LLC; MILLROCK INVESTMENT FUND 1 MANAGEMENT, | **DEFENDANT TREVOR WEBER'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Case No. 2:23-cv-00407<br><br>District Judge Ann Marie McIff Allen.<br><br>Magistrate Judge Cecilia M. Romero |

1

| | |
|---|---|
| LLC; KGL REAL ESTATE DEVELOPMENT PLLC; SMART COVE, LLC; GTR HOLDINGS, LLC; LONG HOLDINGS, LLC; BRENT SMITH; THOMAS SMITH; LEW CRAMER; MATTHEW HAWKINS; GIL BOROK; DAVID JOSKER; JERALD ADAM LONG; MARY STREET; CAMS REALTY, LLC; MOUNTAIN WEST COMMERCIAL, LLC; STEVE CATON; SARC US, INC.; EMANUEL BUTERA; JAMIE BUTERA; JAMESON, LLC DBA AMERICAN DEVELOPMENT PARTNERS; SCOTT KING; MERIT COMMERCIAL REAL ESTATE, LLC; MARK MACHLIS; LADY MIRA BLUE MACHLIS; HELLO BELLO, LLC; SAMUEL DUKE; KGL ADVISORS, LLC, COLLIERS INTERNATIONAL GROUP, INC.; COLLIERS INTERNATIONAL HOLDINGS (USA), INC.; COLLIERS INTERNATIONAL INTERMOUNTAIN, LLC; *Defendants*. | |

Pursuant to Rules 7 and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Trevor Weber ("Weber"), by and through his counsel of record, hereby submits this reply in support of his Motion to Dismiss ("Motion") (Dkt. 181) the claims against him in Plaintiffs' Second Amended Complaint (Dkt. 158).

## INTRODUCTION

It is telling that in response to four different defendants' motions to dismiss, Plaintiffs chose to file an "omnibus" opposition collectively addressing all four motions and largely continuing to treat all defendants as if they engaged in the same unspecified conduct, with the same generalized intent, and now face the same collective liability. This is legally and factually inaccurate.

2

Consider who Plaintiffs have lumped together – the Second Amended Complaint treats the "Colliers/Long Parties" as if the nineteen different defendants can be treated as a unit. [*See, e.g.,* SAC at ¶¶ 213-218 (reciting "The Colliers/Long Parties represented…")]. But that group includes ten different companies, the officers of many of those companies, and various employees. Of that group, Weber is merely alleged to be a low-level employee of Millcreek and Colliers. He is not alleged to have an ownership interest in any of the companies at issue, nor is he alleged to have any involvement in selecting the TIC properties, performing due diligence on those properties, or creating any of the marketing materials that he allegedly passed on to some of the Plaintiffs. There is no basis to hold him liable for representations of others, nor transforming his limited role into one of a "fiduciary" towards Plaintiffs.

Plaintiffs' lengthy pleadings and repeated expansion of the pool of defendants ignores the legal deficiencies in the claims raised against individual defendants such as Trevor Weber. The ancient maxim holds true – "it is quality rather than quantity that matters."[1] The claims against Weber should be dismissed.

**ARGUMENT**

I.       **The Fiduciary Duty Claim against Weber Should be Dismissed.**

Plaintiffs' Opposition argues that because the marketing materials allegedly disseminated by Weber were "deceptive" regarding the quality of the investments, the Defendants were implicitly inviting Plaintiffs "to repose special trust in them." [Opp. at 44]. Whether or not the marketing materials were accurate does not establish that Weber was in a "position of peculiar confidence" with respect to the Plaintiffs. *See First. Sec. Bank of Utah N.A. v. Banberry Dev.*

---

[1] Generally attributed to the Roman philosopher Seneca.

3

*Corp.,* 786 P.2d 1326, 1333 (Utah 1990).  Even under Plaintiffs' allegations, Weber was just a salesman, forwarding marketing materials regarding the TIC investments.  He was not their advisor; he was not their agent or representative.  There are no allegations that he received confidential information for them, or that they believed he was acting on their behalf.  There are no allegations that he had known Plaintiffs for an extended period of time.  *See id.* (finding that even being a relationship with a "longtime customer" was insufficient to establish a fiduciary relationship).  In short, there are no allegations that could establish Weber served as Plaintiffs' fiduciary due to "the factual situation surrounding the involved transactions and the relationship of the parties to each other."  *Id.*

Plaintiffs attempt to salvage their fiduciary duty claim by asserting that Weber's role should be "considered against the backdrop of the larger alleged scheme."  [Opp. at 46].  But whether or not Plaintiffs establish a "larger scheme" does not affect the analysis of whether ***Weber*** had a fiduciary relationship with Plaintiffs.  There simply are no allegations establishing Weber's alleged sales activities that can establish him as a fiduciary for potential buyers such as Plaintiffs.[2]  "[M]ere confidence in one party by another is not sufficient alone to constitute a fiduciary or confidential relationship."  *See Bower v. Stein Eriksen Lodge Owners Ass'n, Inc.*, 201 F. Supp.2d 1134, 1144 (D. Utah 2002) (applying Utah law to dismiss fiduciary duty claim and noting that "the general rule is no fiduciary obligations exist between a buyer and seller of any property.").

---

[2] In fact, Plaintiffs' copy-and-paste approach to Weber's liability is further illustrated by their Opposition.  Plaintiffs argue that they have alleged ***Weber*** had a fiduciary relationship with Plaintiffs by quoting verbatim the sentence that they used to address co-defendant Spencer Taylor's role – even including Taylor's name instead of Weber's.  [*See* Opp. at 46 ("These allegations plausibly place ***Taylor*** in an advisory and influential position over Plaintiffs' investment decisions") (emphasis added)].

The breach of fiduciary duty claim should be dismissed.

**II.      The Unjust Enrichment Claim against Weber Should be Dismissed.**

Plaintiffs do not dispute that an unjust enrichment claim must allege that Plaintiffs conferred a benefit directly on Weber.  [*See* Motion at 10-12].  Nor do they claim that Plaintiffs paid any amounts directly to Weber.  Instead, they assert that Weber received the "benefits" of compensation from his employer and "perpetuating the TIC program."  [*See* Opp. at 49].  Notably, the underlying allegations are not specific to Weber at all.  The Second Amended Complaint simply asserts that ***all*** Defendants received "commissions or other compensation" and "perpetuation of the underlying scheme."  [SAC ¶ 1152].  There is no allegation as to how ***Weber*** was paid or how he benefitted from the alleged "underlying scheme."  In fact, Plaintiffs concede that they do not know the "exact financial structure of the Colliers'' Long TIC Program," which would include how Weber and others were compensated.  [Opp. at 50].

Moreover, Plaintiffs ignore the cited caselaw establishing that a merely "incidental benefit" cannot establish a claim for unjust enrichment.  *See, e.g. Jones v. Mackey Price Thompson & Ostler*, 355 P.3d 1000, ¶ 65 (Utah 2015) ("[U]njust enrichment does not result if the defendant has received only an incidental benefit from the plaintiff's services.") (cleaned up).  As in *Jones,* Plaintiffs have alleged that Weber "ultimately benefitted" from his work because his employer received funds from Plaintiffs and compensated Weber.  However, the scenario here is even more attenuated.  In *Jones*, the Court found that even if the employer's retention of funds from plaintiff had resulted in individual defendants receiving increased compensation, that did not mean plaintiff had directly conferred a benefit on the individual defendants.  *Id.* at ¶ 67.  Here, Plaintiffs have not alleged that Weber's compensation was directly linked to sales of TIC investments, or that their

investments directly increased what Weber was paid by his employers.  But even if they had, that would be legally insufficient to establish Plaintiffs conferred a direct benefit on Weber.  *See Simons v. Park City RV Resort, LLC*, 2015 UT App 168, ¶ 18, 354 P.3d 215 (affirming summary judgment where none of the disputed payments were made directly to the individual defendant but rather the payments "may have indirectly helped fund his salary as an employee of NSC and other disbursements."); *see also Smith v. LifeVantage Corp.*, No. 2:18-cv-00621, 2020 WL 6940735, *5 (D. Utah Nov. 25, 2020) (dismissing unjust enrichment claim as to officer of company).

Plaintiffs' unjust enrichment claim against Weber should be dismissed.

### III.    The Fraud-Based Claims Against Weber Should be Dismissed.

Plaintiffs' fraud-based claims (both common law and securities fraud) fail to meet the heightened pleading standards applicable to those claims.[3]  Plaintiffs rely on three places in the Second Amended Complaint to bolster their claim that they have identified "specific false or misleading statements" allegedly made by Weber.  [*See, e.g.,* Opp. at 39, 41].  None of those citations survive casual scrutiny.  In fact, they were largely addressed by Weber's initial Motion.  [*See* Motion at 3-4].

For example, Plaintiffs cite paragraphs 602-604 and 620-622 of the Complaint for Weber's allegedly specific statements and omissions.  As articulated in the Motion, those paragraphs simply identify alleged inaccuracies in the marketing materials, at times quoting directly from the very materials Plaintiffs identify in their Complaint.  [*See* Motion at 5; *e.g., compare* SAC ¶ 260 with ¶ 603].  Plaintiffs allege that Weber distributed marketing materials but not that he made any false

---

[3] Because Plaintiffs contend that the common law fraud and fraudulent concealment claims survive for the same reasons they assert in defense of their federal securities-fraud claims, those arguments will be addressed collectively here.  [*See* Opp. at 39].

or misleading statements apart from those materials.  In fact, the allegations encompass any possible form of alleged communication, "phone calls, emails, and other communications" over a seven-month period.  [SAC ¶ 622].  That does not allow Weber to identify when the statements were made, in what form, or even whether they consisted of more than forwarding the marketing materials someone else had prepared.

Additionally, Plaintiffs refer to paragraphs 504-509 of the Complaint.  Those paragraphs broadly claim that nineteen different defendants (the "Colliers/Long Parties") collectively "developed the Marketing Materials with input from the Developer Parties and the HSH Parties." [SAC ¶ 507].  Plaintiffs further allege that Weber and other defendants "reviewed" and "distributed" the materials. [*Id.* ¶¶ 508, 509].  Again, there is no specific allegation that Weber prepared, drafted, edited, or verified any aspect of the marketing materials.

Even if these broad groupings of defendants sufficiently identify alleged conduct particularly attributable to Weber, nothing in those allegations establishes a basis for concluding that Weber had knew the marketing materials were false.  Plaintiffs urge the Court to adopt a "holistic" perspective and contend that the requisite scienter "may be inferred from circumstantial evidence."  [Opp. at 11].  In support of that position, Plaintiffs contend that they have alleged "Defendants were not peripheral actors." [*Id.* at 12].  With respect to Weber, this is false.  Plaintiffs have alleged nothing more than that Weber was "an employee and agent" of Millcreek and Colliers. [SAC ¶¶ 39, 40].  There are no allegations that he was a "partner"[4] or that he "structured the TIC

---

[4] Plaintiffs attach a Memorandum of Understanding (Dkt. 223.1) as evidence that Weber was a "partner."  There is not a single reference to Weber in that document, nor does it appear on its face to have been sent to him or included him in any way.  If anything, it demonstrates that Weber was not a decision-maker or owner in any sense of the specified entities.

program, selected or approved tenants," "approved" marketing materials, "trained brokers," or "received financial benefits from the sales." [*See* Opp. at 12]. Instead, Plaintiffs simply resort to citing the general allegations made against all Defendants. [*See id.*]. The sum total of Plaintiffs' allegations against Weber is that he allegedly distributed marketing materials to potential investors. That does not amount to a basis for inferring he knew those materials were false, or that he had "access to information about tenant instability and the inadequacy of the purported guarantees." [*Id.*]. In fact, there are no allegations in the 253-page Second Amended Complaint about Weber's access to or knowledge of ***anything*** underlying the marketing materials. At best, Plaintiffs have alleged that Weber repeated information from the marketing materials that he was not responsible for drafting or fact-checking. That cannot establish an inference of the requisite mental state for fraud-based claims.

**IV.    The Conspiracy and Aiding/Abetting Claims Against Weber Should be Dismissed.**

Because the claims for conspiracy and aiding and abetting are dependent on viable underlying tort claims, they fail for the reasons explained in the Motion and this brief. Without an underlying tort, the claims are not "viable independent causes of action that can survive on their own." *Hansing v. Utah Dep't of Nat. Res.*, No. 2:24-CV-480 DBP, 2025 WL 1676532, at *9 (D. Utah June 13, 2025). Plaintiffs do not contest this standard. If the Court dismisses the claims against Weber for breach of fiduciary duty and the fraud-based torts, the conspiracy and aiding/abetting claims must also be dismissed.

**V.    The Securities Claims Against Weber Should be Dismissed.**

Plaintiffs' securities claims against Weber warrant dismissal for at least three reasons: (1) the pleadings lack sufficient particularity regarding the alleged false statements by Weber; (2) the

claims are untimely; and (3) the investments fail to meet the definition of "security" under the Utah statute.

With respect to the lack of particularity, Plaintiffs' attempts to conjure specificity from the general allegations against Defendants (rather than Weber) are largely addressed *supra* with the other fraud-based claims. *See* 15 U.S.C. § 78u-4(b)(2) (plaintiff must "state with particularity facts giving rise to a ***strong inference*** that the defendant acted with the required state of mind.") (emphasis added). In short, the generic allegations fail to provide adequate notice to Weber of when, how, and what false statements he allegedly made and also cannot provide a basis for inferring the requisite scienter. *See also* Motion at 6-7.

With respect to the untimeliness of the Plaintiffs' unregistered securities, Plaintiffs argue that they could not discover the fraud earlier than October 2022 because "Defendants' conduct prevented earlier discovery." [Opp. at 18]. Initially, the alleged concealment is irrelevant to the claim that the securities were unregistered. [SAC ¶¶ 964-969]. Further, Plaintiffs concede that the allegations of "concealment" are not specific to Weber, but "apply to the Colliers/Long Parties' concealment generally." [*Id.* at 19]. There are no allegations that ***Weber*** had any part in the alleged concealment by the Colliers/Long Parties or engaged in any conduct that prevented Plaintiffs from discovering their claims earlier. Moreover, the generic assertions that after the sales closed, "Defendants retained control over the properties, lease administration, and the flow of information to investors" are not linked in any way to Weber's role as a salesman. [*See id.* at 20]. Indeed, Plaintiffs allege that Weber's involvement with Plaintiffs concluded by May 2022. [SAC 603]. Plaintiffs filed their original complaint more than one year after the latest alleged conduct by

Weber.  [*See* Dkt. 1].  Accordingly, the claim against him is untimely and presumptively barred by the Securities Act.[5]

Finally, Plaintiffs have failed to allege the prerequisite existence of a "security" under Utah law.  Pursuant to DUCivR 7-1(a)(8), Weber joins in and incorporates by reference the arguments raised by co-defendants with respect to the dismissal of the Securities Claims, including the lack of allegations sufficient to identify the investments at issue as securities under Utah law.  [*See, e.g.,* Dkt. 276 at 6-7].

## VI.   CONCLUSION

For the foregoing reasons, the Court should dismiss the claims against Weber.  Despite the breadth of the Second Amended Complaint, there are no allegations specific to Weber that could amount to a legally cognizable claim.  Plaintiffs' hope to gloss over those details by grouping Weber with myriad other defendants and their collective conduct.  That approach should be rejected, particularly given the heightened pleading standard applicable to claims of fraudulent conduct.

DATED this 29th day of May 2026.

JAMES DODGE RUSSELL & STEPHENS, P.C.

*/s/ Lara A. Swensen*
Lara A. Swensen
Mitchell A. Stephens

*Counsel for Defendant Trevor Weber*

---

[5] Further, in order to impute Defendants' alleged acts of concealment to Weber, the conspiracy claim would have to be viable.  As discussed above, it fails for lack of a viable underlying tort.