Terry E. Welch (5819) twelch@parrbrown.com
Bentley J. Tolk (6665) btolk@parrbrown.com
Rodger M. Burge (8582) rburge@parrbrown.com
C. Chase Wilde (17546) cwilde@parrbrown.com
PARR BROWN GEE & LOVELESS, P.C.
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750

*Attorneys for Kevin Long*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PATTI KLAIR, ROBERT MYERS, ROBERT BARNES, ERIC CARNRITE, ELIZABETH HILL-D'ALLESSANDRO, ROBERT TANNEHILL, DITAS TANNEHILL, JOSE REMENTERIA, TEENA REMENTERIA, CHARLES BRAUER, LAURA BRAUER, KAREN MARION, KATHERINE MADERA, CARL MCQUEARY, LYNN MCQUEARY, DONALD PATTERSON, KURTIS TRENT MANNING, TONY SCHAKER, PATRICK WHITE, HILDEGARD WHITE, QUEST REALTY TRUST, SECURE STORAGE LLC, KURTIS TRENT MANNING LIVING TRUST, <br><br> Plaintiffs, <br><br> v. <br><br> COLLIERS INTERNATIONAL GROUP, INC.; COLLIERS INTERNATIONAL HOLDINGS (USA), INC.; COLLIERS INTERNATIONAL INTERMOUNTAIN, LLC; KEVIN LONG; MILLCREEK COMMERCIAL PROPERTIES, LLC; ANDREW BELL; TREVOR WEBER; SPENCER TAYLOR; BLAKE MCDOUGAL, SCOTT RUTHERFORD; EQUITY SUMMIT GROUP; ELEVATED 1031; MILLROCK | **MEMORANDUM IN OPPOSITION TO THIRD PARTY DEFENDANTS JOSHUA CONSTANTIN AND JUSTIN SMITH'S MOTION TO DISMISS** <br><br> **(Oral Argument Requested)** <br><br> Case No. 2:23-cv-00407-AMA-CMR <br><br> Judge Ann Marie McIff Allen <br> Magistrate Judge Cecilia M. Romero |

INVESTMENT FUND 1, LLC; MILLROCK INVESTMENT FUND 1 MANAGEMENT, LLC; KGL REAL ESTATE DEVELOPMENT PLLC; SMART COVE, LLC; GTR HOLDINGS, LLC; LONG HOLDINGS, LLC; BRENT SMITH; THOMAS SMITH; LEW CRAMER; MATTHEW HAWKINS; GIL BOROK; DAVID JOSKER; JERALD ADAM LONG; MARY STREET; CAMS REALTY, LLC; MOUNTAIN WEST COMMERCIAL, LLC; STEVE CATON; SARC US, INC.; EMANUEL BUTERA; JAMIE BUTERA; JAMESON, LLC DBA AMERICAN DEVELOPMENT PARTNERS; SCOTT KING; MERIT COMMERCIAL REAL ESTATE, LLC; MARK MACHLIS; LADY MIRA BLUE MACHLIS; HELLO BELLO, LLC; SAMUEL DUKE; KGL ADVISORS, LLC,

          Defendants.

KEVIN LONG,

       Third-Party Plaintiff,

v.

JOSHUA CONSTANTIN, an individual, JUSTIN SMITH, an individual, EMANUEL BUTERA, an individual, and JAMESON LLC dba AMERICAN DEVELOPMENT PARTNERS, a Tennessee limited liability company,

Third-Party Defendants.

Third-Party Plaintiff Kevin Long ("Long"), through his undersigned counsel, respectfully submits this memorandum in opposition to the Motion to Dismiss [Dkt. 290] (the "Motion to Dismiss") filed by Third-Party Defendants Joshua Constantin ("Constantin") and Justin Smith ("Smith"; collectively with Constantin, "Moving Third-Party Defendants").

**INTRODUCTION**

Unlike Moving Third-Party Defendants, Long did not create the false information at the center of this case. Like the above-captioned plaintiffs ("Plaintiffs"), Long relied on the information provided by Joshua Constantin and Justin Smith regarding the financial condition of Healthcare Solutions Holdings, Inc./Healthcare Solutions Management Group, Inc. ("Healthcare Solutions"), and had no reason to suspect that such information was falsified. Astonishingly, however, Moving Third-Party Defendants fabricated more than $75 million in assets, falsely represented that tenant entities and lease guaranties were legitimate, and promised bonds that never existed. Plaintiffs now allege that they were harmed by Long purportedly passing that information along to them.

Having induced Long into the underlying transactions through their false representations and omissions, Moving Third-Party Defendants now seek to escape liability for their misconduct by arguing that Long cannot pursue derivative claims against the very parties whose representations allegedly gave rise to Plaintiffs claims against him and that they lack particularity. But the Third-Party Complaint identifies who made the misrepresentations, when they were made, what was said, how Long relied on them, and how those representations unfortunately exposed Long to the claims asserted in this litigation by Plaintiffs.

Moving Third-Party Defendants' remaining grounds for dismissal fare no better. Constantin's service objection fails because Long diligently attempted service, timely sought an extension, and moved for alternative service when conventional service proved unsuccessful. The Court has specific personal jurisdiction because Constantin and Smith directed misrepresentations and business communications to Long and Utah-based entities. And the statute of limitations

defense fails because untimeliness does not appear on the face of the Third-Party Complaint and Long's claim for implied indemnity has not yet accrued.

Because the Third-Party Complaint plausibly states claims for declaratory relief, implied indemnity, fraud, and negligent misrepresentation, and because none of the grounds asserted by Moving Third-Party Defendants warrant dismissal, Long respectfully requests that the Court deny the Motion to Dismiss in its entirety.

## STATEMENT OF RELEVANT FACTS

1.      During the relevant period, Millrock Investment Fund 1 Management, LLC was the manager of Millrock Investment Fund 1, LLC, with the former being wholly owned by Long. [Third-Party Compl. ¶ 10.] Additionally, Long was President and CEO of Millcreek Commercial Properties, LLC during the relevant period. [*Id.*] Millrock developed certain medical properties, while Millcreek marketed tenant-in-common ("TIC") interests in those properties. [*Id.* ¶¶ 23–41.]

2.      Beginning in 2019, Smith, Constantin, and Butera repeatedly represented to Long that Healthcare Solutions was financially stable and possessed more than $75 million in assets. They supported those representations with financial reports and audited financial statements that were later alleged by the SEC to have been falsified. [*Id.* ¶¶ 24–34, 103–109.]

3.      Smith and Constantin also represented that Healthcare Solutions and its subsidiaries would serve as legitimate tenants and guarantors under the leases for the Keller, Naperville, and Kennesaw Properties, that the leases would be secured by bonds from Lloyd's of London, and that Equipment Allowance funds would be used to purchase equipment for the Properties. [*Id.* ¶¶ 42–72, 131–158.]

4

4.      Relying on those representations, Millrock entered into lease agreements and related transactions concerning the Properties, while Millcreek marketed TIC interests in the Properties to investors, including Plaintiffs. [*Id.* ¶¶ 35–60, 157–160.]

5.      The Third-Party Complaint alleges that the representations made by Third-Party Defendants were false. The tenant entities were not legitimate business entities, Healthcare Solutions failed to honor its lease obligations and guaranties, the promised bonds were never obtained, and the Equipment Allowance funds were diverted instead of being used to equip the Properties. [*Id.* ¶¶ 61–85, 144–156.]

6.      In August 2022, after Long learned the promised bonds had not been obtained, Smith executed a Loan Agreement on behalf of Healthcare Solutions again promising that the bonds would be finalized and that Healthcare Solutions would satisfy its payment obligations. Healthcare Solutions later defaulted on both the Loan Agreement and its lease obligations. [*Id.* ¶¶ 64–85.]

7.      Plaintiffs subsequently filed this action alleging they relied on representations concerning the legitimacy of the tenants, Healthcare Solutions' financial ability to satisfy its guaranties, the existence of the Lloyd's of London bonds, and the intended use of the Equipment Allowance. [*Id.* ¶¶ 89–102.]

8.      Long alleges that any representations he made to Plaintiffs regarding those matters, if made, were based on representations originally made by Smith, Constantin, Emanuel Butera, and American Development Partners, that he had no independent knowledge those representations were false, and that he reasonably relied on them in conducting the underlying transactions. [*Id.* ¶¶ 102, 114–160.]

9.      In August 2024, the SEC filed an enforcement action against Smith and Constantin alleging that, for years, they had fabricated Healthcare Solutions' assets, falsified financial records, and misled investors and auditors. [*Id.* ¶¶ 103–108.] The Third-Party Complaint alleges the same falsified financial documents identified by the SEC were provided to Long during the parties' business relationship. [*Id.* ¶ 109.]

10.     On March 27, 2026, the parties to the underlying lawsuit stipulated that fact discovery could not efficiently proceed until the Court resolved the responsive motions to the Second Amended Complaint and any responsive motions to the Third-Party Complaint. The Court granted the stipulation, and fact discovery remains stayed under the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(3)(B) (the "PSLRA") while multiple motions to dismiss are pending. [Stipulated Motion to Extend Fact Discovery Deadline, Dkt. 178; Third Amended Scheduling Order, Dkt. 183.]

11.     On May 22, 2026, Long retained a professional process server to serve the Third-Party Defendants. Smith was personally served that same day. Long's Rule 4(m) deadline to serve Constantin was May 26, 2026. Before that deadline expired, Long timely moved for an extension of time to complete service, and that motion remains pending. [Mot. for Extension of Time to Serve Third-Party Complaint, Dkt. 258.] On June 24, 2026, Long filed a Motion for Alternative Service on Third-Party Defendant Joshua Constantin [Dkt. 295] ("Motion for Alternative Service").

12.     Between May 22 and May 27, 2026, the process server made seven separate attempts to personally serve Constantin at his residence in Slidell, Louisiana (the "Slidell

6

Address"). Service could not be completed because Constantin's residence is gated and requires an access code. [Motion for Alternative Service at ¶¶ 15–17.]

13.     During one of those service attempts, Constantin remotely opened the subdivision gate for the process server but failed to meet the process server at the gate of his own residence after entry despite the process server leaving both a voicemail and text message. [*Id.* ¶ 18.]

14.     Long's counsel also attempted service by sending the Third-Party Complaint and summons to Constantin via USPS Certified Mail. USPS was unable to complete delivery, reporting "No Access to Delivery Location" and later "Notice Left (No Authorized Recipient Available)." [*Id.* ¶¶ 19–21.]

15.     Despite asserting insufficient service of process as a basis for dismissal, Constantin filed a substantive motion to dismiss, raising multiple Rule 12 defenses. He also filed an Email Filing and Electronic Notification Form identifying his Slidell Address and email address, lcajosh1@gmail.com, as his contact information for electronic notice in this action. [*Id.* ¶¶ 23–25.]

## **LEGAL STANDARD**

In ruling on a motion to dismiss, the court must "accept the well-pleaded facts alleged as true and view them in the light most favorable to the plaintiff[.]" *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023). "[G]ranting [a] motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted) (second alteration in original).

## **ARGUMENT**

The Motion to Dismiss should be denied for each of the reasons addressed below. First, Constantin's service of process argument fails because Long diligently attempted service, timely sought an extension, and moved for alternative service when conventional service proved unsuccessful. Second, the Court has specific personal jurisdiction over Smith and Constantin based on their Utah-directed representations and communications. Third, Long's claims are proper under Rule 14 because they seek to impose derivative liability for the same alleged misrepresentations Plaintiffs attribute to Long. Fourth, the Third-Party Complaint adequately pleads implied indemnity, fraud, negligent misrepresentation, and declaratory relief. Fifth, the fraud-based claims cannot be dismissed on limitations grounds because untimeliness does not appear on the face of the pleading and Long's cause of action for implied indemnity has not yet accrued. Finally, Long should be granted leave to amend if the Court determines that dismissal of any part of the Third-Party Complaint is warranted.

## I. THE COURT SHOULD DENY THE MOTION TO DISMISS BECAUSE LONG IS ENTITLED TO AN EXTENSION OF TIME TO COMPLETE SERVICE.

In the context of a Rule 12(b)(5) motion to dismiss for insufficient service of process, the plaintiff bears the burden of establishing the validity of service. *See Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992). If service is untimely under Rule 4(m), the Court must extend the time of service where the plaintiff shows good cause and may grant a

permissive extension even absent good cause. *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995).

A.    **Long Has Shown Good Cause for the Delay and is Entitled to a Mandatory Extension of Time for Service.**

Good cause under Rule 4(m) requires "some showing of good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified." *Putnam v. Morris*, 833 F.2d 903, 905 (10th Cir. 1987) (citation modified). Defendant evasion is a recognized example of good cause. *See Fernandez v. City & Cnty. of San Francisco*, No. C-93-2597 MHP, 1994 WL 117796, at *2 (N.D. Cal. Mar. 14, 1994) (unpublished).

Good cause exists for the delay in effectuating service on Constantin because Long has shown good faith in attempting to comply with Rule 4(m), yet Constantin appears to be intentionally evading service. Long's counsel hired a process server to personally serve Constantin, and that process server made seven attempts between May 22 and May 27, 2026, to serve Constantin with process at the Slidell Address, but the gate around the Slidell Address frustrated the process server's attempts. [Motion for Alternative Service ¶¶ 11, 15–16.] Despite remotely opening the gate to the subdivision for the process server, Constantin failed to meet the process server or respond to his voicemail or text messages, indicating that Constantin was likely present and reachable, yet refused to be served. [*Id*. ¶ 18.] Long's counsel also attempted to serve Constantin via USPS Certified Mail, but the USPS was unable to deliver the mailing to Constantin at the Slidell Address. [*Id*. ¶¶ 19–21.] Long's counsel filed both a timely Motion for Extension of Time to Serve Third-Party Complaint and a timely Motion for Alternative Service, both of which remain pending before this Court. Due to Long's good faith efforts to serve Constantin and Constantin's apparent evasion of service and/or inability to be served, there is good cause for any

delay in effectuating service to Constantin, and Long is entitled to a mandatory extension of time to effect service.

### B. Alternatively, the Court Should Exercise Its Discretion to Grant Long a Permissive Extension of Time to Serve Constantin.

This Court maintains discretion to grant a permissive extension of time for service. *Espinoza*, 52 F.3d at 841. Where good cause is absent, the Court "must still consider whether a permissive extension of time may be warranted," and "may in its discretion either dismiss the case without prejudice or extend the time for service." *Id*. Relief is justified here for several reasons.

First, Constantin will suffer no prejudice from a modest extension. Constantin was able to file his Motion to Dismiss. Constantin's filing of a substantive motion demonstrates actual notice of the Third-Party Complaint. Further, fact discovery does not close until nine months after the Court decides any responsive motions to the Third-Party Complaint. [Motion for Alternative Service ¶¶ 7–9.] Therefore, an extension permits Constantin to participate fully in the existing schedule without any meaningful loss of time to prepare a defense.

Second, the circumstances that delayed service are attributable substantially to Constantin's own conduct. Constantin controlled access to the Slidell Address and declined to respond at the property gate after granting the process server entry to the subdivision and remained unresponsive across seven separate service attempts over the course of several days. [*Id*. ¶¶ 11, 15–16, 18.]

Third, dismissal may potentially operate to bar refiling one or more of Long's claims under the applicable limitations period. To the extent the limitations period on any claim would preclude a refiled action, that potential bar weighs heavily in favor of a permissive extension. *See Espinoza*, 52 F.3d at 842.

For these reasons, a permissive extension is warranted.

**II.   THE COURT HAS SPECIFIC PERSONAL JURISDICTION OVER MOVING THIRD-PARTY DEFENDANTS BECAUSE MOVING THIRD-PARTY DEFENDANTS HAVE MINIMUM CONTACTS WITH UTAH.**

When a court "rules on a Fed.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, . . . the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). And "[i]n ascertaining the facts necessary to establish jurisdiction, the district court must accept as true the allegations set forth in the [Third-Party] [C]omplaint to the extent they are uncontroverted by defendant's affidavits." *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987). Likewise, "any factual disputes in the parties' affidavits must be resolved in plaintiffs' favor." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). Altogether, "all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Ten Mile*, 810 F.2d at 1524 (citation omitted).

Further, "[t]he Utah Supreme Court has stated that 'specific jurisdiction gives a court power over a defendant . . . with respect to claims arising out of particular activities of the defendant in the forum state.'" *Parah, LLC v. G' Strat LLC*, No. 2:13CV756, 2014 WL 545871, at *2 (D. Utah Feb. 10, 2014) (unpublished) (citing *Arguello v. Industrial Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992)).

Because "Utah's long-arm statute is coextensive with the constitutional limitations imposed by the federal Due Process Clause," *Keaty LLC v. Blueprint Summer Programs Inc.*, 2020

UT App 9, ¶ 10, 457 P.3d 432, here, the personal jurisdiction inquiry turns on "whether subjecting defendants to suit in Utah comports with due process," *Greer v. Safeway*, 317 F. App'x 838, 841 (10th Cir. 2009) (unpublished).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (citation and quotation marks omitted). Thus, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist minimum contacts between the defendant and the forum State." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (quotations omitted). "The minimum contacts necessary for specific personal jurisdiction are established if the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1298 (10th Cir. 1999) (citation modified).

The jurisdictional analysis is especially straightforward for claims arising from intentional torts like fraud. Under *Calder v. Jones*, 465 U.S. 783 (1984), as applied by the Tenth Circuit, purposeful direction exists when a defendant takes intentional action, expressly aims that action at the forum, and knows the brunt of the injury will be felt there. *Dudnikov*, 514 F.3d at 1072. Long alleges precisely that: Smith and Constantin intentionally supplied false financial information and performance assurances to Utah-based Long and Millrock and Millcreek so those entities would proceed with the related transactions and market the TIC interests.

"[P]arties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state

12

for the consequences of their activities." *Burger King*, 471 U.S. at 473 (citation and quotation marks omitted). True, a "contract alone does not subject a nonresident defendant to the jurisdiction of the subject forum," but an ongoing business relationship supported by phone calls, meetings, emails, and continued mutual obligations establishes a continuous course of dealing required for finding minimum contacts. *See AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1059 (10th Cir. 2008).

Here, Moving Third-Party Defendants deliberately entered into a relationship with Utah residents. Long is a Utah citizen. [Third-Party Compl. ¶ 1.] Millcreek and Millrock were operated from Utah. [*See id*. ¶¶ 9–10.] They are also Utah companies. Moving Third-Party Defendants knowingly entered into contractual and/or business relationships with Millcreek and Long. [*Id*. ¶¶ 23, 128.] This ongoing commercial relationship created duties extending over several years; the Third-Party Defendants agreed to develop multiple projects, obtain bonds, manage equipment funds, execute leases, and provide guaranties. [*Id*. ¶¶ 35–72.] Constantin provided financial reports and audited financial statements, made repeated representations verbally and via email, and even met with Long in person to solicit a long-term business relationship with Millcreek and Long. [*Id*. ¶¶ 26–31.] Smith also made verbal representations to Long and assured Long of the safety of their proposed business venture. [*Id*. ¶¶ 28–29.] Those allegations are not merely Long's unilateral Utah contacts; they describe Smith's and Constantin's own intentional communications and alleged false assurances directed to a Utah resident and Utah entities for the purpose of inducing reliance. As such, Moving Third-Party Defendants, in their individual capacities, maintained an ongoing course of dealing sufficient to establish minimum contacts in Utah; they did not merely execute a

single agreement in complete isolation from the regulations and sanctions of the forum state, indicating that the Court has specific personal jurisdiction over Moving Third-Party Defendants.

The declarations submitted with the Motion to Dismiss do not defeat jurisdiction at this stage. They largely deny residence, property, offices, and personal Utah licensing, but they do not eliminate the pleaded Utah-directed communications, nor do they deny the alleged financial statements, lease assurances, bond promises, or other representations. The assertion that Smith and Constantin acted in a representative capacity also does not immunize them from jurisdiction for their own alleged tortious conduct. *Niemi v. Lasshofer*, 770 F.3d 1331, 1349 (10th Cir. 2014) ("But status as employees does not somehow insulate defendants from jurisdiction, and the Supreme Court has confirmed that such defendants' contacts must be assessed individually." (citation modified)). At a minimum, if the Court concludes the present record is incomplete, it should permit targeted jurisdictional discovery and/or a jurisdictional hearing.

III.     **LONG'S THIRD-PARTY CLAIMS ARE PROPER UNDER RULE 14 BECAUSE THEY SEEK TO IMPOSE DERIVATIVE LIABILITY FOR PLAINTIFFS' UNDERLYING CLAIMS.**

Federal Rule of Civil Procedure 14 permits a defending party to implead a nonparty "who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). A third-party claim is proper when it is "in some way derivative of the outcome of the main claim," *Hefley v. Textron, Inc.*, 713 F.2d 1487, 1498 (10th Cir. 1983) (quotation omitted), and the Tenth Circuit has recognized pass-through claims seeking indemnification for liability to the original plaintiff as proper Rule 14 claims, *King Fisher Marine Serv., Inc. v. 21st Phoenix Corp.*, 893 F.2d 1155, 1158 n.1 (10th Cir. 1990).

Long's claims satisfy that standard because Plaintiffs and Long focus on the same alleged misrepresentations. Plaintiffs seek to hold Long liable for representations about tenant legitimacy, Healthcare Solutions' guaranties and financial ability, Lloyd's of London bonds, and the Equipment Allowance. [Third-Party Compl. ¶¶ 89–102.] Long alleges those same representations originated with Moving Third-Party Defendants and to the extent that they were passed along to Plaintiffs, if at all, were passed along without Long's independent knowledge of their falsity. [*Id.* ¶¶ 102, 114–129.]

### A.    Long Pleads Derivative Liability, Not a Standalone Dispute.

The derivative nature of Long's third-party claims is apparent when plaintiffs' liability theory is mapped against the third-party allegations:

| Long's Alleged Misrepresentations | Third-Party Source Allegation | Why Derivative |
| --- | --- | --- |
| The tenants were legitimate entities with the ability and intent to pay rent under the leases. [Third-Party Compl. ¶ 90(a).] | Smith allegedly executed leases and guaranties for entities that did not exist or were not legitimate, and Smith and Constantin allegedly controlled Healthcare Solutions when it failed to pay as guarantor. [*Id.* ¶¶ 48–52, 61–63, 135–143.] | Long's liability, if any, arises from republishing the same tenant-legitimacy and rent-payment representations alleged to have originated with Moving Third-Party Defendants. |
| Healthcare Solutions could honor lease guaranties. [*Id.* ¶ 90(b).] | Smith and Constantin allegedly represented that Healthcare Solutions had more than $75 million in assets, supplied or caused false financial information to be supplied, and later became the subject of SEC allegations concerning those same assets. [*Id.* ¶¶ 24–32, 103–109, 131–134.] | Long's liability, if any, flows from the same guaranty and financial-strength information supplied by Moving Third-Party Defendants. |
| The leases were insured or secured by Lloyd's of | Constantin and others allegedly promised the bonds, later | Long's liability, if any, is tied to the same bond-security |

| | | |
|---|---|---|
| London bonds. [*Id.* ¶ 90(c).] | represented they would finish formalizing them, and Smith executed the Loan Agreement reaffirming that promise. [*Id.* ¶¶ 42–45, 64–69, 148–154.] | representation made by Moving Third-Party Defendants. |
| The Equipment Allowance would be used to purchase equipment for the Properties. [*Id.* ¶ 90(d).] | Moving Third-Party Defendants allegedly represented that equipment funds would be used for the Properties, but later diverted them or claimed the funds belonged to Healthcare Solutions or its insiders. [*Id.* ¶¶ 53–59, 76–80, 144–147, 176–180.] | Long's liability, if any, arises from passing along the same equipment-use representation made by Moving Third-Party Defendants. |

This alignment matters because Long's Rule 14 theory is expressly contingent. Counts I and II seek a declaration and indemnity only to the extent Long is found liable to plaintiffs, and the prayer likewise requests damages or indemnification only if Plaintiffs prevail against Long. [*Id.* ¶¶ 117, 124, 129 & Prayer ¶ 2.] If plaintiffs recover nothing from Long, Long has no liability-over recovery under Rule 14.

## B. Any Direct Damages Theories Do Not Defeat Impleader and, at Most, Should Be Severed.

Moving Third-Party Defendants argue that Long's claims could theoretically exist even if plaintiffs lose. But Rule 14 does not require dismissal merely because a pleading also includes related direct-damages allegations. Once a proper derivative liability claim brings a third-party defendant into the case, Rule 18 permits additional claims to be pleaded against that properly joined party. *See* Fed R. Civ. P. 18(a); *see also Exec. Fin. Servs., Inc. v. Heart Chec, Inc.*, 95 F.R.D. 383, 384 (D. Colo. 1982) ("Thus, Rule 18(a) makes clear, at least since its amendment in 1966, that a defendant asserting a proper third-party claim may join with it other claims he may have against the third-party defendant.").

16

Long does not rely on standalone business loss damages to establish Rule 14 impleader. For Rule 14 purposes, Long seeks liability over, indemnity, reimbursement, and declaratory relief only for all or part of any liability imposed on Long in favor of Plaintiffs based on the same alleged representations made by Moving Third-Party Defendants. To the extent Counts III and IV of the Third-Party Complaint include additional direct damages arising from the same transaction, those claims are properly joined once the liability-over claim is in the case, or alternatively may be severed or tried separately under Rule 14(a)(4), not dismissed wholesale.

**C.      Utah Law and Apportionment Principles Support Preserving the Liability-Over Issue at the Pleading Stage.**

Long is not seeking contribution among equally culpable joint tortfeasors through his Third-Party Complaint. Long alleges that any liability to Plaintiffs would be derivative or secondary because Moving Third-Party Defendants supplied the false information, knew or were in a superior position to know the truth, and to the extent Long conveyed any of that information to others, it was because Long lacked independent knowledge of its falsity. [Third-Party Compl. ¶¶ 121–129.]

At the pleading stage, the Court need not decide whether the facts ultimately establish indemnity, apportionment, or no liability at all. If the Court concludes that any portion of Long's theory sounds in comparative apportionment rather than classic indemnity, impleader is proper where the third-party defendant's fault would directly affect the extent of the third-party plaintiff's liability. *Cf. Tietz v. Blackner*, 157 F.R.D. 510, 513–14 (D. Utah 1994). At a minimum, Rule 14(a)(4) gives the Court discretion to strike, sever, or separately try any discrete non-derivative component; it does not require dismissal of the liability-over claims.

Accordingly, the Third-Party Complaint is properly pleaded, and the Motion to Dismiss should be denied.

## IV.    LONG HAS PROPERLY PLEADED IMPLIED INDEMNITY.

Implied indemnity arises from equitable considerations and is recognized where, as between the parties, based upon their respective culpability, the obligation ought to be discharged by the more culpable party. *See Hanover Ltd. v. Cessna Aircraft Co.*, 758 P.2d 443, 445 (Utah Ct. App. 1988). Implied indemnity shifts a loss from a party who is only secondarily or passively liable to the party whose conduct was the primary cause of the harm. *See id*. That doctrine is distinct from contribution. The Utah Liability Reform Act may bar contribution among joint tortfeasors, but it does not resolve at the pleading stage whether Long has alleged classic loss-shifting from a passively or derivatively exposed party to the parties whose active misrepresentations allegedly caused the loss. *Cf. Bylsma v. R.C. Willey*, 2017 UT 85, ¶ 64, 416 P.3d 595 ("A right to implied indemnity exists independent of any assessment of fault, and is instead based on the relationship of the parties. It therefore makes perfect sense that the LRA contains no provision barring an action for implied indemnity." (footnote omitted)).

Moving Third-Party Defendants conflate Long's corporate roles with the basis of his liability. The relevant distinction is between the character of the parties' conduct, not whether the indemnitee happened to be a business professional. The Third-Party Complaint alleges that Long received false information, was himself induced and deceived by Moving Third-Party Defendants, and to the extent he relayed that information, it was without independent knowledge of its falsity. [Third-Party Compl. ¶¶ 121–127.] Those allegations describe passive or derivative conduct. Holding a position as a principal of a business does not, as a matter of law, make Long an active

18

tortfeasor or foreclose implied indemnity. Whether Long's role in fact rose to the level of active fault is a factual question that cannot be resolved on the pleadings.

Moving Third-Party Defendants note that Long pleads no express indemnity contract; that is not a defect. [Motion to Dismiss at 10.] Implied indemnity is an equitable doctrine that arises by operation of law precisely where no express indemnity agreement exists, to prevent the party whose active wrongdoing caused the harm from escaping the loss at the expense of a passively liable party.

## V.    LONG HAS PROPERLY PLEADED FRAUD AND NEGLIGENT MISREPRESENTATION.

Fraud must be pleaded with particularity; the complaint must adequately identify (1) the time, place and contents of the fraudulent misrepresentations or omissions; (2) the identity of the party alleged to have made the misrepresentations or omissions; and (3) the consequences of those misrepresentations or omissions. *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726–27 (10th Cir. 2006); *see also Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252−55 (10th Cir. 1997). Rule 9(b) expressly permits intent, knowledge, and other conditions of mind to be alleged generally. *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000).

The Third-Party Complaint meets Rule 9(b)'s requirements. First, Long pleads numerous specific dates and timeframes; for example, the Third-Party Complaint alleges that Constantin met personally with Long in January 2020 and reaffirmed Healthcare Solutions' purported financial condition and attended subsequent conference calls and Zoom meetings in November and December 2022 during which Constantin made additional representations concerning Healthcare Solutions' lease obligations and assets. [Third-Party Compl. ¶¶ 30–31; 74–80.]

19

The Third-Party Complaint likewise identifies the place and manner in which the alleged fraud occurred. It alleges that Smith and Constantin made the representations through a coordinated telephone call [*id.* ¶¶ 28–29], an in-person meeting with Long in January 2020 [*id.* ¶¶ 30–31], written financial statements supplied to Long [*id.* ¶¶ 26, 32], written lease agreements and guaranties executed by Smith [*id.* ¶¶ 48–52], the written Loan Agreement executed by Smith [*id.* ¶¶ 66–72], a November 2022 conference call [*id.* ¶¶ 74–76], and a December 2022 Zoom meeting [*id.* ¶¶ 77–80].

The Third-Party Complaint also pleads the contents of the alleged fraud with specificity. It alleges that Smith and Constantin represented Healthcare Solutions possessed more than $75 million in assets [*id.* ¶¶ 26–32, 131–133]; that Healthcare Solutions was financially stable [*id.* ¶¶ 27, 131]; that the tenant entities were legitimate businesses capable of paying rent [*id.* ¶¶ 49–52, 135–143]; that Healthcare Solutions would honor its corporate guaranties [*id.* ¶¶ 49, 51, 137, 140–143]; that the leases were or would be secured by bonds from Lloyd's of London [*id.* ¶¶ 64–69, 148–154]; and that Healthcare Solutions intended and was able to repay the Loan Agreement [*id.* ¶¶ 153–156].

These and other similar allegations in the Third-Party Complaint identify each third-party defendant's particular role in the alleged fraud, and where certain allegations refer to defendants collectively, they do so because the complaint alleges they acted jointly in carrying out the same fraudulent course of conduct. The Third-Party Complaint alleges that Smith personally represented Healthcare Solutions' financial condition during a coordinated phone call, discussed the liquidity and priority of Healthcare Solutions' assets, signed the lease agreements and guaranties, executed the Loan Agreement, represented that the tenant entities were legitimate, and represented that

20

Healthcare Solutions would honor its guaranties and repay its obligations. [*Id*. ¶¶ 28–29, 49–52, 66, 135–141, 153–156.] It separately alleges that Constantin met personally with Long, confirmed Healthcare Solutions' purported financial condition, explained that Healthcare Solutions qualified as a multi-disciplinary medical company because of its claimed assets, later represented that bonds would be completed if Millrock made a loan, promised on multiple occasions that the bonds would be finalized, threatened during a November 2022 conference call to "empty the corporate shell" if the property owners pursued the guaranty, and made additional statements concerning the Equipment Allowance during a December 2022 Zoom meeting. [*Id*. ¶¶ 30–31, 65, 69, 74–80.] These allegations plainly distinguish Smith's and Constantin's individual conduct and provide each defendant fair notice of the specific fraud claims asserted against them.

The Third-Party Complaint also satisfies Rule 9(b)'s requirement in that it pleads the consequences of the alleged fraud. It alleges that Long reasonably relied on Smith's and Constantin's representations by entering into the lease agreements and the Loan Agreement on behalf of Millrock, by allowing Millcreek to unknowingly market the properties based on those representations, and that Long has been accused by Plaintiffs of passing on false representations that would have originated with the information provided by Third-Party Defendants. [*Id*. ¶¶ 157–160.] It further alleges that, as a direct consequence of those alleged misrepresentations, Long has been subjected to multiple lawsuits arising from those same alleged representations. [*Id*. ¶ 159.]

The Tenth Circuit has not decided whether Rule 9(b) applies to negligent misrepresentation claims. Accordingly, courts may evaluate whether Rule 9(b) applies by determining if the claim "rings" of fraud. *Denver Health & Hosp. Auth. v. Beverage Distributors Co.*, LLC, 843 F. Supp. 2d 1171, 1177 (D. Colo. 2012). Even assuming Rule 9(b) applies, dismissal is still unwarranted

21

because the negligent misrepresentation claim expressly incorporates the same detailed factual allegations underlying the fraud claim. [Third-Party Complaint ¶ 162]. As discussed above, the Third-Party Complaint identifies the specific speakers, the time and manner of the communications, the substance of the alleged misrepresentations, why those representations were false, Long's reliance, and the resulting damages. [*See generally* Third-Party Complaint.] Those allegations provide Smith and Constantin with precisely the notice Rule 9(b) is intended to require. Accordingly, whether analyzed under Rule 8 or Rule 9(b), the negligent misrepresentation claim is adequately pleaded.

Therefore, the fraud and negligent misrepresentation claims provide sufficient notice of the particularity of the alleged misconduct to satisfy the applicable pleading rules.

## VI.    LONG HAS PROPERLY PLEADED CONDUCT CONSTITUTING FRAUDULENT CONCEALMENT/NONDISCLOSURE.

Under Utah law, to prevail on fraudulent concealment a plaintiff must prove "(1) that the nondisclosed information is material, (2) that the nondisclosed information is known to the party failing to disclose, and (3) that there is a legal duty to communicate." *Yazd v. Woodside Homes Corp.,* 2006 UT 47, ¶ 10, 143 P.3d 283.[1] This legal duty "may arise from a relationship of trust between the parties, an inequality of knowledge or power between the parties, or other attendant circumstances indicating reliance." *McDougal v. Weed*, 945 P.2d 175, 179 (Utah Ct. App. 1997).

---

[1] Although the Third-Party Complaint does not assert a standalone cause of action titled "fraudulent concealment," the Motion to Dismiss separately challenges Long's nondisclosure and concealment allegations. [Motion to Dismiss at 11–12.] Those allegations are pleaded as part of Long's Fourth Cause of Action for negligent misrepresentation. [*See* Third-Party Compl. ¶¶ 186–190.] To the extent the Motion to Dismiss characterizes them as a separate concealment theory, they are adequately pleaded for the reasons stated herein.

Utah law also recognizes that no duty to disclose exists where parties deal at arm's length and the underlying facts are reasonably within the knowledge of both parties. *See Sugarhouse Fin. Co. v. Anderson*, 610 P.2d 1369, 1373 (Utah 1980). Here, the underlying facts are not reasonably within the knowledge of both parties. Further, "where a person makes an affirmative statement, that person has a common-law duty to disclose all material facts necessary to prevent that statement from being misleading." *Shree Ganesh, LLC v. Weston Logan, Inc.*, 2021 UT 21, ¶ 37, 491 P.3d 885.

The Third-Party Complaint plausibly alleges that Smith and Constantin occupied the highest levels of management at Healthcare Solutions and therefore plausibly possessed exclusive knowledge regarding the company's true financial condition, the legitimacy of the tenant entities, the existence of the promised Lloyd's of London bonds, and Healthcare Solutions' ability and intent to satisfy its lease guaranties and contractual obligations. [Third-Party Compl. ¶¶ 12–17.] The Third-Party Complaint further alleges that Smith and Constantin personally supplied Long with financial statements reflecting Healthcare Solutions' purported assets, represented that Healthcare Solutions possessed more than $75 million in assets, represented that the tenant entities were legitimate, represented that Healthcare Solutions would honor its guaranties, and represented that the promised bonds had been or would be obtained. [*Id*. ¶¶ 26–32, 49–52, 64–69, 131–156, 163–185.] Those facts were uniquely within Smith's and Constantin's knowledge and were not equally available to Long.

Moreover, when Smith and Constantin made affirmative representations regarding Healthcare Solutions' financial condition, the legitimacy of the tenant entities, the existence of the bonds, and Healthcare Solutions' ability to perform under the leases and Loan Agreement, they

assumed a common-law duty to disclose additional material facts necessary to prevent those representations from being misleading. The Third-Party Complaint alleges that Smith and Constantin failed to disclose that Healthcare Solutions' financial statements were fabricated, that the tenant entities were not legitimate, that the promised bonds had never been obtained, and that Healthcare Solutions lacked the financial ability to honor the obligations they represented it would perform. [*Id.* ¶¶ 131–160, 163–190.] Accepting those allegations as true, Long has plausibly alleged a duty to disclose under Utah law, and dismissal is therefore inappropriate.

## VII.    THE DECLARATORY JUDGMENT CLAIM IS NOT DUPLICATIVE.

A court "may declare the rights and other legal relations of any interested party," 28 U.S.C. § 2201(a), and the Tenth Circuit assesses whether to entertain such a claim under the discretionary factors of *State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994), including, in particular, whether the declaration would settle the controversy and clarify the legal relations at issue. Here, the declaratory claim and the implied indemnity claim are not coextensive; the declaratory claim seeks a declaration regarding Third-Party Defendants' responsibility, whereas the implied indemnity claim is a claim for monetary reimbursement. The question is whether the declaration "would serve a useful purpose," and here, the declaratory claim may afford relief the indemnity claim cannot. *See id.* In addition, Rule 8(d) permits alternative and contingent pleading. Fed. R. Civ. P. 8(d)(2), (3). A declaration of the parties' derivative liability relationship would clarify legal relations before any judgment against Long and would guide settlement and case management in a way a later damages award alone may not. For these reasons, the Court should deny the Motion to Dismiss to the extent it seeks dismissal of the First Cause of Action.

24

## VIII.    LONG'S FRAUD CLAIMS ARE TIMELY BECAUSE THEY ACCRUE UPON DISCOVERY AND UNTIMELINESS DOES NOT APPEAR ON THE FACE OF THE COMPLAINT.

The statute of limitations is an affirmative defense, and "it is the defendant's burden to plead an affirmative defense." *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018). For that reason, dismissal on limitations grounds at the pleading stage is available only in the narrow circumstance where "the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." *Id*. As a threshold matter, although not entirely clear, it appears that Constantin and Smith are only challenging the Third Cause of Action (Fraud) and Fourth Cause of Action (Negligent Misrepresentation) on statute of limitations grounds. However, to the extent that Moving Third-Party Defendants challenge The First Cause of Action (Declaratory Relief) or the Second Cause of Action (Implied Indemnification) on statute of limitations grounds, Moving Third-Party Defendants would be mistaken because "a cause of action for indemnity does not arise until the liability of the party seeking indemnity results in his damage, either through payment of a sum clearly owed or through the injured party's obtaining an enforceable judgment." *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 218 (Utah 1984).[2] Here, any cause of action for implied indemnity does not accrue if and until Long becomes obligated to pay Plaintiffs in the underlying action. Accordingly, such a claim could not have lapsed.

---

[2] Courts have recognized that it is proper to implead indemnitors notwithstanding the fact that the underlying indemnity claim has not yet accrued so that all the liabilities can be resolved in a single action. *See, e.g.*, *Wandrey v. McCarthy*, 804 F. Supp. 1384, 1386 (D. Kan. 1992); *Conrad Shipyard, L.L.C. v. Franco Marine 1 LLC*, 431 F. Supp. 3d 839, 849 (E.D. La. 2020); *Degennaro v. Fid. & Deposit Co. of Maryland*, No. CIV. 89-2078, 1989 WL 150570, at *4 (E.D.N.Y. Dec. 4, 1989).

Further, as Smith and Constantin concede, under Utah law, an action sounding in fraud "does not accrue until the discovery by the aggrieved party of the facts constituting the fraud or mistake." Utah Code § 78B-2-305(1)(d); *see also* Motion at 13.

At a minimum, the Third-Party Complaint does not establish every fact necessary to Moving Third-Party Defendants' statute of limitations defense. It does not allege when Long discovered the alleged fraud, when he should have discovered it, or that no tolling or statutory discovery principles could apply. Instead, the Third-Party Complaint alleges continuing reassurances, new promises, and additional representations by Smith and Constantin extending through at least late 2022, followed by the SEC's 2024 enforcement action concerning the financial documents provided to Long. [Third-Party Compl. ¶¶ 64–80, 103–109.] Because the face of the Third-Party Complaint does not conclusively establish untimeliness, dismissal on statute of limitations grounds is improper.

Even assuming, for the sake of argument only, that some fraud-based allegations concern statements made outside the typical limitations period, dismissal is still premature because the Third-Party Complaint alleges facts that support tolling under Utah's statutory discovery rule for fraud. *See* Utah Code § 78B-2-305(1)(d). Smith and Constantin allegedly continued to provide assurances and new promises through late 2022, including promises that the Lloyd's of London bonds would be finalized, that Healthcare Solutions would satisfy its lease and loan obligations, and that Healthcare Solutions' assets remained available to support those obligations. [Third-Party Compl. ¶¶ 64–80, 153–156.] Those allegations, combined with the later SEC enforcement action alleging that the same financial records provided to Long were falsified, preclude any conclusion from the pleadings alone about when Long knew or reasonably should have known the facts

constituting the alleged fraud. At minimum, whether Utah's statutory discovery rule for fraud applies, and the extent of its application, depend on factual questions concerning concealment, reasonable diligence, and the timing of Long's discovery of Third-Party Defendants' fraud, which cannot be resolved on the pleadings.

## IX.    **ALTERNATIVELY, IF THE COURT DETERMINES DISMISSAL IS WARRANTED, ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE.**

If the Court identifies any pleading deficiency, dismissal with prejudice would be overly harsh. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). The Motion to Dismiss does not show that amendment would be futile, and the case remains at the pleading stage with discovery stayed. At most, the Court should dismiss any deficient claim without prejudice so Long may seek leave to amend under Rule 15 through a separate motion, if necessary

## REQUEST FOR ORAL ARGUMENT

Pursuant to DUCivR 7-1(g), Long requests oral argument on the Motion to Dismiss. Good cause exists because oral argument would assist the Court in resolving the issues raised in the Motion to Dismiss.

## CONCLUSION

For the foregoing reasons, Long respectfully requests that the Court deny the Motion to Dismiss in its entirety.

RESPECTFULLY SUBMITTED on July 6, 2026

PARR BROWN GEE & LOVELESS, P.C.

/s/ Bentley J. Tolk
Terry E. Welch
Bentley J. Tolk

27

Rodger M. Burge
C. Chase Wilde

*Attorneys for Kevin Long*

## WORD LIMIT CERTIFICATION

The undersigned certifies that this **MEMORANDUM IN OPPOSITION TO THIRD PARTY DEFENDANTS JOSHUA CONSTANTIN AND JUSTIN SMITH'S MOTION TO DISMISS** contains 7,091 words, excluding the caption, face sheet, signature block, certificate of service, and exhibits, and complies with DUCivR 7-1(a)(4)

/s/ Bentley J. Tolk

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 6, 2026, I caused a true and correct copy of the foregoing **MEMORANDUM IN OPPOSITION TO THIRD PARTY DEFENDANTS JOSHUA CONSTANTIN AND JUSTIN SMITH'S MOTION TO DISMISS** to be filed via the court's electronic filing system which automatically provides notice to counsel of record and any other individual registered to receive electronic notifications of case activity.

/s/ Bentley J. Tolk

30