Christopher M. Von Maack (10468)
  vonmaack@mvmlegal.com
Eric K. Schnibbe (8463)
  schnibbe@mvmlegal.com
Craig M. Hansen (18202)
  hansen@mvmlegal.com
**MCNEILL | VON MAACK**
236 South 300 East
Salt Lake City, Utah 84111
Telephone: 801.823.6464

Dean A. Kent (pro hac vice pending)
  dkent@trenam.com
**TRENAM, KEMKER, SCHARF, BARKIN, FRYE, O'NEILL & MULLIS, P.A.**
101 E. Kennedy Blvd., Suite 2700
Telephone: 813.223.7474

*Attorneys for Defendants Emanuel Butera, Jamie Butera, and Jameson LLC dba American Development Partners and Third-Party Defendants Emanuel Butera and Jameson LLC dba American Development Partners*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| **PATTI KLAIR**, *et al.*,<br><br>　　**Plaintiffs**,<br><br>v.<br><br>**COLLIERS INTERNATIONAL, INC.**, *et al.*,<br><br>　　**Defendants.** | **ADP PARTIES' MOTION TO COMPEL ARBITRATION AND STAY OR, IN THE ALTERNATIVE, DISMISS THIRD-PARTY COMPLAINT** |
| **KEVIN LONG,**<br><br>　　**Third-Party Plaintiff,**<br><br>v.<br><br>**JOSHUA CONSTANTIN**, *et al.*,<br><br>　　**Third-Party Defendants.** | **Case No. 2:23-cv-00407-AMA-CMR**<br><br>**District Judge Ann Marie McIff Allen**<br><br>**Magistrate Judge Cecilia M. Romero** |

Pursuant to 9 U.S.C. § 4 and Rule 12(b)(6) of the Federal Rules of Civil Procedure,

Third-Party Defendants Emanuel Butera ("Mr. Butera") and Jameson LLC dba American

Development Partners ("ADP") (collectively, "ADP Parties"), through their counsel of record,

MCNEILL VON MAACK, submit ADP Parties' Motion to Compel Arbitration and Stay or, in the

Alternative, Dismiss Third-Party Complaint.  *See* 9 U.S.C. § 4; Fed. R. Civ. P. 12(b)(6).

**TABLE OF CONTENTS**

RELIEF SOUGHT AND GROUNDS THEREFOR ................................................................. 5

BACKGROUND .............................................................................................................. 6

RELEVANT FACTS ......................................................................................................... 6

STANDARDS.................................................................................................................... 9

ARGUMENT .................................................................................................................. 10

I.     THE COURT SHOULD COMPEL ARBITRATION AND STAY LONG'S CLAIMS AGAINST ADP PARTIES............................................................................ 10

     A.     There Is A Written Agreement to Arbitrate. .......................................... 11

     B.     The Determination of Arbitrability Is for the Arbitrator. ..................... 12

     C.     Long's Claims Are Arbitrable. .............................................................. 12

     D.     A Stay Is Warranted............................................................................. 13

II.     ALTERNATIVELY, THE COURT SHOULD DISMISS LONG'S CLAIMS AGAINST ADP PARTIES.............................................................................. 13

     A.     Long's First Cause of Action—Declaratory Relief—Fails Because the Declaratory Judgment Act Does Not Provide an Independent Federal Cause of Action................................................................... 13

     B.     Long's Second Cause of Action—Implied Indemnity—Fails Because It Is Not Cognizable Here and, Even If It Were Cognizable, Is Premature. ............... 14

     C.     Long's Third Cause of Action—Fraud—Fails as to ADP Parties for Lack of Particularity and by Operation of the Economic Loss Rule. ........................... 16

          1.     Long's Fraud Allegations Lack the Required Particularity. ..................... 16

          2.     Long's Fraud Claim Is Barred by the Economic Loss Rule. .................... 20

     D.     Long's Fourth Cause of Action—Negligent Misrepresentation—Fails for Lack of Particularity and by Operation of the Economic Loss Rule. ................... 22

          1.     Long's Fourth Cause of Action Fails to Comply with Rule 9(b). ............ 22

2.    The Economic Loss Rule Bars Long's Negligent Misrepresentation Claim Against ADP Parties. .................................................................... 22

CONCLUSION ............................................................................................................. 23

VERIFICATION ........................................................................................................... 24

CERTIFICATE OF SERVICE ..................................................................................... 25

**TABLE OF AUTHORITIES**

**CASES**

*Aclys Int'l v. Equifax*, 438 F. App'x 689 (10th Cir. 2011) (unpublished) ................................... 21

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ...................................................... 10

*BOSC, Inc. v. Bd. of Cnty. Commissioners of Cnty. of Bernalillo*, 853 F.3d 1165 (10th Cir. 2017) ........................................................................................................... 9, 11

*Bylsma v. R.C. Willey*, 2017 UT 85, 416 P.3d 595 ........................................................... 14, 15

*Capana Swiss Advisors AG v. Rymark*, No. 2:23-cv-467-TS-CMR, 2026 WL 1396589 (D. Utah May 19, 2026) (unpublished)............................................................ 13

*Christensen v. Desert Rock Cap., Inc.*, No. 2:24-cv-808-RJS-CMR, 2025 WL 1135598 (D. Utah Apr. 17, 2025) (unpublished)...................................................... 9, 10, 12

*Dale K. Barker Co., P.C. v. Valley Plaza*, 541 F. App'x 810 (10th Cir. 2013) (unpublished) ...................................................................................................... 5

*Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, 221 P.3d 234.................................................................... 21

*Davidson Lumber Sales, Inc. v. Bonneville Inv., Inc.*, 794 P.2d 11 (Utah 1990) ........................ 15

*Jacobsen v. Deseret Book Co.*, 287 F.3d 936 (10th Cir. 2002) .................................................. 6

*Logan v. Bank of Am., N.A.*, No. 2:12-cv-191-DN, 2012 WL 5874364 (D. Utah Nov. 20, 2012) (unpublished) ............................................................................................ 22

*Nero v. Oklahoma*, No. 22-6121, 2022 WL 14423872 (10th Cir. Oct. 25, 2022) (unpublished) .................................................................................................... 14

*Preventive Energy Sols., L.L.C. v. nCap Ventures 5, L.L.C.*, No. 21-4099, 2023 WL 7148434 (10th Cir. Oct. 31, 2023) (unpublished)................................................. 20, 21, 22

*Reighard v. Yates*, 2012 UT 45, 285 P.3d 1168.................................................................... 20

*Sunridge Dev. Corp. v. RB & G Eng'g Inc.*, 2010 UT 6, 230 P.3d 1000 .................................... 21

*TDC Lending LLC v. Private Capital Group, Inc.*, 340 F. Supp. 3d 1218 (D. Utah Sept. 13, 2018) ............................................................................................... 16, 18

*Vicidiem, Inc. v. Christensen*, No. 2:19-cv-358-DBB-DBP, 2020 WL 7027869 (D. Utah Nov. 30, 2020) (unpublished) ................................................................... 15

*Weber v. Colliers Int'l Grp., Inc.*, No. 2:25-cv-00162-DBB-DBP, 2026 WL 1650734 (D. Utah June 8, 2026) (unpublished)............................................. 6, 16, 17, 19

**RULES**

Fed. R. Civ. P. 8 .................................................................................................... 5
Fed. R. Civ. P. 9 .............................................................................................. *passim*
Fed. R. Civ. P. 12 .................................................................................................. 1
Fed. R. Civ. P. 13 .................................................................................................. 5

**STATUTES**

9 U.S.C. § 2 ........................................................................................................ 10
9 U.S.C. § 3 ..................................................................................................... 9, 13
9 U.S.C. § 4 ..................................................................................................... 1, 10
28 U.S.C. § 2201 ................................................................................................... 8
UTAH CODE ANN. § 48-3a-407 .................................................................................. 11

## RELIEF SOUGHT AND GROUNDS THEREFOR

ADP Parties respectfully request that the Court grant this motion and either (a) enter an order compelling arbitration and staying the claims asserted against ADP Parties in the Amended Answer and Third-Party Complaint (ECF 162) (the "Third-Party Complaint")[1] filed by Defendant and Third-Party Plaintiff Kevin Long ("Long"); or, (b) in the alternative, dismiss those claims.

The grounds for the requested relief are as follows: (1) Long's claims against ADP Parties are subject to an agreement to arbitrate; (2) Long's declaratory relief claim is not cognizable as an independent cause of action; (3) Long's implied indemnity claim fails because it is not cognizable here and, even if it were cognizable, is premature; (4) Long fails to plead his fraud and negligent misrepresentation claims with the required particularity as to ADP Parties and engages in impermissible group pleading; and (5) Long's tort claims against ADP Parties are barred by the economic loss rule.

---

[1] Although stylized as third-party claims, Long's claims against ADP Parties are more accurately classified as crossclaims because both Long and ADP Parties are listed as defendants in the Second Amended Complaint (ECF 158) (the "SAC"). [*See* SAC at 1–2, ECF 158.] *See* Fed. R. Civ. P. 13(g) ("A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action. The crossclaim may include a claim that the coparty is or may be liable to the crossclaimant for all or part of a claim asserted in the action against the crossclaimant."). The Court should proceed as though ADP Parties are crossclaim defendants. *See* Fed. R. Civ. P. 8(c)(2) ("If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so."); *Dale K. Barker Co., P.C. v. Valley Plaza*, 541 F. App'x 810, 813 (10th Cir. 2013) (unpublished) (proceeding with correct classification of party despite "taxonomical mistake" in pleading).

## BACKGROUND

In *Weber v. Colliers International Group, Inc.*—a substantially similar tenant-in-common ("TIC") interest case pending in this district—Judge David Barlow articulated background largely applicable to this dispute. *See Weber v. Colliers Int'l Grp., Inc.*, No. 2:25-cv-162-DBB-DBP, 2026 WL 1650734, at *1–2 (D. Utah June 8, 2026) (unpublished).[2]

## RELEVANT FACTS

### The Development Contracts

1. On November 20, 2020, ADP and Defendant Millrock Investment Fund 1, LLC ("Millrock") entered into an agreement styled "American Development Partners Development Contract" (the "Keller Development Contract")[3] related to property in Keller, Texas (the "Keller Property"). [*See* Keller Development Contract, a true and correct copy of which is attached as Exhibit "1"; *see also infra* Verification.]

2. Long signed the Keller Development Contract as Millrock's "Manager." [*Id.* at 27, Ex. 1.]

---

[2] The *Weber* decision is in the docket as ECF 315-1.

[3] Although the Keller Development Contract was not attached to the Third-Party Complaint, it may still be considered for the purposes of this motion. For instance, on a motion to dismiss under Rule 12(b)(6), the Court may consider documents that "are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). Here, Long's claims arise from a business venture between Millrock, ADP, and others to develop medical centers, and the Keller Development Contract is therefore the primary evidence of the relationship between ADP and Millrock. [*See* Third-Party Complaint ¶¶ 23, 35–38, 53–59, 84, 90–91, 101–02, 144–47, 176–77, 186, ECF 162.]

3. Under the terms of the Keller Development Contract, ADP is defined as "DEVELOPER," Millrock is defined as "OWNER," and nonparty Built-More, LLC is referred to as "CONTRACTOR."  [*Id.* at 1, Ex. 1.]

4. The Keller Development Contract includes a section titled "Arbitration" that reads, in relevant part, as follows:

> A. Any controversy or Claim arising out of or relating to this contract or contract warranty or the breach thereof which cannot be resolved by mediations shall be settled by arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.
>
> ….
>
> C. DEVELOPER, CONTRACTOR and OWNER agree to include in each contract for construction or design services on the Project a clause which requires that disputes under that contract be settled by arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules.
>
> D. Any representative of OWNER or consultant to OWNER or DEVELOPER and CONTRACTOR or any Subcontractor to DEVELOPER and CONTRACTOR on the Project shall have the same rights in any arbitration proceeding as are afforded by arbitration rules to DEVELOPER and CONTRACTOR and OWNER.  If more than one demand for arbitration is made by a Party with respect to the Project, all such Claims shall be consolidated into a single arbitration unless the Parties otherwise agree in writing.

[*Id.* § 41.A, C–D, (emphasis added), Ex. 1.]

5. ADP entered into substantially identical development agreements with respect to the properties in Kennesaw, Georgia (the "Kennesaw Property") and Naperville, Illinois (the "Naperville Property"), albeit with different parties as owners.  [*See infra* Verification.]

**The Complaint**

6.      On June 21, 2023, Plaintiffs initiated this action.  [*See* Complaint, ECF 1.]

7.      In the Complaint, Plaintiffs alleged 15 causes of action against Long related to Plaintiffs' purchase of TIC interests in the Keller, Kennesaw, and Naperville Properties.  [*See generally id.*, ECF 1.]

**The Third-Party Complaint**

8.      On February 25, 2026, Long filed the Third-Party Complaint, asserting claims against ADP Parties, Joshua Constantin ("Constantin"), and Justin Smith ("Smith").  [*See* Third-Party Complaint, ECF 162.]

9.      Prior to filing the Third-Party Complaint, Long did not attempt to mediate or arbitrate his claims against ADP Parties.  [*See infra* Verification.]

10.     In the Third-Party Complaint, Long asserts the following four causes of action against ADP Parties (as well as Constantin and Smith):

(a)     declaratory relief under 28 U.S.C. § 2201 (the "Declaratory Judgment Act") (First Cause of Action), [*see id.* ¶¶ 110–17, ECF 162];

(b)     implied indemnity (Second Cause of Action), [*see id.* ¶¶ 118–29, ECF 162];

(c)     fraud (Third Cause of Action), [*see id.* ¶¶ 130–61, ECF 162]; and

(d)     negligent misrepresentation (Fourth Cause of Action).  [*See id.* ¶¶ 162–91, ECF 162].

11.     Through the Third-Party Complaint, Long effectively seeks to have ADP Parties, Constantin, and Smith indemnify him "for whatever amount plaintiffs are awarded for its [sic] causes of action 1, and 3–15 of the Complaint against Long."[4]  [*Id.* at 71, ECF 162.]

## STANDARDS

### Motion to Compel Arbitration and Stay

As recently reiterated by Judge Robert J. Shelby,

> In the context of a Motion to Compel Arbitration, the movant "bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement and the opposing party's failure, neglect, or refusal to arbitrate; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement or the failure to comply therewith."

*Christensen v. Desert Rock Cap., Inc.*, No. 2:24-cv-808-RJS-CMR, 2025 WL 1135598, at *2 (D. Utah Apr. 17, 2025) (unpublished) (quoting *BOSC, Inc. v. Bd. of Cnty. Commissioners of Cnty. of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017)).

If a court is satisfied that an issue in a suit or proceeding is referable to arbitration, and one of the parties seeks a stay, then the court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."  9 U.S.C. § 3.

### Motion to Dismiss

With respect to motions to dismiss, the *Weber* court articulated the applicable standard as follows:

---

[4] The lone claim from the Complaint for which Long does not seek indemnification is Plaintiffs' Second Cause of Action for the alleged sale of unregistered securities in violation of Section 12(a)(1) of the Securities Act of 1933.  [*See* Complaint ¶¶ 495–500, ECF 1.]

> Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. In evaluating a motion to dismiss, the court must take as true all well-pleaded facts, as distinguished from conclusory allegations, view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings. <u>Conclusory statements and legal conclusions are not entitled to the assumption of truth</u>.
>
> In addition, <u>under Rule 9(b), when alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake</u>. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. Rule 9(b) applies to all claims that are based on the same core allegations of deception, false misrepresentations, and fraudulent conduct. <u>To satisfy Rule 9(b)'s heightened pleading standard, among other things, a pleading must set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof</u>.

*Id.* at *2 (emphasis added) (quotations, citations, and alterations omitted).

**ARGUMENT**

**I.    THE COURT SHOULD COMPEL ARBITRATION AND STAY LONG'S CLAIMS AGAINST ADP PARTIES.**

The Federal Arbitration Act (the "FAA") provides that, "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract …." 9 U.S.C. § 2. Where there is an agreement to arbitrate, a court should issue an order compelling arbitration of arbitrable issues. *See* 9 U.S.C. § 4. "The [FAA] reflects a 'liberal federal policy favoring arbitration.'" *Christensen*, 2025 WL 1135598, at *2 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 333 (2011)) (granting

10

defendant's motion to compel arbitration and staying case pending the outcome of the arbitration).  Accordingly, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *BOSC*, 853 F.3d at 1170.

### A.      There Is A Written Agreement to Arbitrate.

The Keller Development Contract is a written agreement that contains a provision requiring the submission of an existing controversy "arising out of or relating to" that agreement to mandatory arbitration.  [Keller Development Contract § 41.A ("Any controversy or Claim arising out of or relating to this contract or contract warranty or the breach thereof … shall be settled by arbitration …."), Ex. 1.]

Although Long signed the Keller Development Contract in his role as manager of Millrock, the arbitration provision still applies to Long here.  The arbitration provision expressly extends to "[a]ny representative of [Millrock]."  [*Id.* § 41.D, Ex. 1.]  The manager of a limited liability company is a representative of that company.  *See, e.g.*, UTAH CODE ANN. § 48-3a-407(3)(a) (stating that, generally, "any matter relating to the activities and affairs of the limited liability company is decided exclusively by the manager").  Indeed, Long signed the Keller Development Contract as a representative of Millrock.  [*See* Keller Development Contract at 27, Ex. 1.]  Thus, under the express terms of the Keller Development Contract, the arbitration applies to Long, as a representative of Millrock.

The parties' intent to arbitrate *all* disputes arising out of or related to the Keller Development Contract is further exemplified by the provision in the arbitration section that requires that "each contract for construction or design services on the Project" include a clause requiring arbitration by the AAA.  [*Id.* § 41.C, Ex. 1.]  That pervasive arbitration structure,

11

combined with the express grant of rights to representatives, manifests a clear contractual intent that Long is encompassed within the arbitration regime.

To exclude Long from the arbitration provision would deprive ADP Parties of the benefit of the bargain in the Keller Development Contract and would be inequitable. Although Long asserts his claims individually, the conduct alleged was pursuant to obligations between Millrock and ADP. The apparent reasons for the posture of the third-party claims are that Plaintiffs sued Long individually and Long is seeking indemnification individually. Absent Plaintiffs' claims against Long individually, the third-party claims likely would not have been asserted and, even if they had been asserted, likely would have been asserted by Millrock.

### B.    The Determination of Arbitrability Is for the Arbitrator.

"Where an arbitration agreement incorporates American Arbitration Association (AAA) rules into the agreement, the Tenth Circuit has found that" there is "'clear and unmistakable evidence'" "that the parties delegated" "to the arbitrator" the decision "whether the parties have agreed to arbitrate." *Christensen*, 2025 WL 1135598, at *2 (citations omitted) (ruling that, by incorporating AAA rules, the parties delegated questions of arbitrability to an arbitrator).

Here, the Keller Development Contract expressly incorporates AAA Rules. [*See* Keller Development Contract § 41.A (stating that the arbitration shall be "administered by the American Arbitration Association under its Construction Industry Arbitration Rules"), Ex. 1.] Thus, any disputes about arbitrability are for the arbitrator, not this Court.

### C.    Long's Claims Are Arbitrable.

Although arbitrability is a determination for the arbitrator, Long's claims are subject to the Keller Development Contract's mandatory arbitration clause. Indeed, in the Third-Party

Complaint, Long asserts claims that arise out of or relate to the Keller Development Contract. [*See* Third-Party Complaint ¶¶ 23, 35–38, 53–59, 84, 90–91, 101–02, 144–47, 176–77, 186, ECF 162.] For instance, Long asserts claims against ADP Parties related to the use of the "Equipment Allowance" that Millrock paid to ADP under the Keller Development Contract. [*See id.*, ECF 162; Keller Development Contract at 28 (defining "Contract Price" as inclusive of "allowances for purchased materials and equipment"), Ex. 1.] Accordingly, not only is there an enforceable and mandatory arbitration provision, but the Third-Party Complaint asserts claims falling within the scope of that provision. Consequently, those claims are subject to arbitration pursuant to the arbitration provision in the Keller Development Agreement and are not properly adjudicated here.

### D.     A Stay Is Warranted.

If the Court finds that there is an enforceable agreement to arbitrate (which it should), then it must stay Long's claims against ADP Parties. *See* 9 U.S.C. § 3.

## II.     ALTERNATIVELY, THE COURT SHOULD DISMISS LONG'S CLAIMS AGAINST ADP PARTIES.

### A.     Long's First Cause of Action—Declaratory Relief—Fails Because the Declaratory Judgment Act Does Not Provide an Independent Federal Cause of Action.

Long's First Cause of Action against ADP Parties is a standalone claim for "Declaratory Relief" and is brought pursuant to the Declaratory Judgment Act. [*See* Third-Party Complaint ¶¶ 110–17, ECF 162.]

Declaratory relief is a remedy, not a stand-alone cause of action. *See Capana Swiss Advisors AG v. Rymark*, No. 2:23-cv-467-TS-CMR, 2026 WL 1396589, at *14 (D. Utah May 19, 2026) (unpublished) ("[T]he Declaratory Judgment Act does not provide an independent federal

cause of action." (alteration in original) (quoting *Nero v. Oklahoma*, No. 22-6121, 2022 WL 14423872, at *2 (10th Cir. Oct. 25, 2022) (unpublished)).  Stand-alone claims for declaratory relief "are not proper" and should be dismissed.  *Id.* (dismissing third-party plaintiffs' "declaratory relief claims").  Accordingly, Long's stand-alone claim for declaratory relief should be dismissed.

> **B.      Long's Second Cause of Action—Implied Indemnity—Fails Because It Is Not Cognizable Here and, Even If It Were Cognizable, Is Premature.**

"Implied indemnity is a doctrine applying in a *limited* number of scenarios that shifts the entire burden of a plaintiff's loss from a *non-culpable* party to a culpable party." *Bylsma v. R.C. Willey*, 2017 UT 85, ¶ 32, 416 P.3d 595 (emphasis added).  The Utah Supreme Court has explained the narrow scope of the doctrine as follows:

> A right to implied indemnity is based on a theory of quasi-contract or contract implied in law and flows from the relationship between the parties*.  It applies in principal/agent and strict products liability situations*, where principles of vicarious liability impose on a *non-culpable* party the liability incurred by a culpable one.

*Id.* (cleaned up) (emphasis added).

Long's implied indemnity claim fails, for at least three reasons.  First, Long's claims do not arise in the situations of principal/agent or strict products liability.  Long does not allege that he was an agent of ADP Parties, and this action does not involve products liability.  Rather, the claims in this case arise from alleged reliance on inaccurate information.  [*See* Third-Party Complaint ¶ 102, ECF 162.]  Accordingly, Long's implied indemnity claim cannot apply to this situation and should be dismissed.

Second, if Long is found liable on Plaintiffs' claims, he cannot be not non-culpable.  The Complaint expressly asserts that Long is culpable.  [*See, e.g.*, Complaint ¶¶ 199, 204, 209, 214,

14

219, 245, 250, 255, 260, 314, 319, 337, 342, 347, 351, 359, 419–20, 427, 429, 469, 526, 538–40, ECF 1; SAC ¶¶ 514, 519, 524, 529, 534, 560, 565, 570, 575, 629, 634, 652, 657, 662, 667, 675, 740–41, 748, 750, 795, 814, 1012, 1015, 1035, 1071, ECF 158.]  As such, should Long be found liable, implied indemnity would be inapplicable to him.  *See Bylsma*, 2017 UT 85, ¶ 32 (requiring that party seeking implied indemnification is "non-culpable").

Third, even if implied indemnity could apply here (which it cannot), Long's claim is premature.  An indemnification claim arises from the prospective indemnitee's "'*payment* of a judgment or a settlement.'"  *Vicidiem, Inc. v. Christensen*, No. 2:19-cv-358-DBB-DBP, 2020 WL 7027869, at *4 (D. Utah Nov. 30, 2020) (unpublished) (emphasis added) (quoting *Davidson Lumber Sales, Inc. v. Bonneville Inv., Inc.*, 794 P.2d 11, 19 (Utah 1990)) (dismissing indemnity claim because prospective indemnitee had failed to allege that he had paid any underlying claim, judgment, or settlement).  "Possible future liability that could result in a payment someday clearly does not meet the requirement of 'payment of the underlying claim or the payment of a judgment or a settlement.'"  *Vicidiem, Inc.*, 2020 WL 7027869, at *4 (quoting *Davidson Lumber Sales, Inc.*, 794 P.2d at 19).

Here, Long has not alleged that he paid any amounts to Plaintiffs (and has not even been found liable).  Instead, Long alleges that ADP Parties "have a duty to indemnity Long" *if* "any judgment [is] entered against Long."  [Third-Party Complaint ¶ 124, ECF 162; *see also id.* at 71 (seeking indemnification from ADP Parties "for whatever amount plaintiffs are awarded for [their] cause of action 1, and 3–15 of the Complaint against Long"), EFC 162.]  Until Plaintiffs' underlying suit against Long is resolved, and Long pays any judgment to Plaintiffs, Long's indemnity claim is not ripe for adjudication and should be dismissed.

15

**C.      Long's Third Cause of Action—Fraud—Fails as to ADP Parties for Lack of Particularity and by Operation of the Economic Loss Rule.**

1.      Long's Fraud Allegations Lack the Required Particularity.

In Utah, a plaintiff asserting a common-law fraud claim must show the following nine elements:

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.

*Weber*, 2026 WL 1650734, at *21 (citations omitted).

Furthermore, in alleging fraud, Rule 9(b) of the Federal Rules of Civil Procedure requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also TDC Lending LLC v. Private Capital Group, Inc.*, 340 F. Supp. 3d 1218, 1224 (D. Utah Sept. 13, 2018). "The purpose of Rule 9(b) is to afford a defendant fair notice of a plaintiff's claims and the factual grounds supporting those claims." *Weber*, 2026 WL 1650734, at *21 (citations omitted). Therefore, to satisfy Rule 9(b)'s purpose and its heightened pleading standard, Long must "'set forth the who, what, when, where and how of the alleged fraud' and describe 'the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *TDC Lending LLC*, 340 F. Supp. 3d at 1224 (citation omitted). Finally, allegations of misrepresentations against a group of individual defendants "cannot satisfy Rule 9(b)" because "it is facially inconsistent with the

16

requirement that a complaint state the identity of the party making a false statement." *Weber*, 2026 WL 1650734, at *6.

Here, Long's fraud allegations against ADP Parties lack the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure and, thus, should be dismissed.

Insofar as it relates to his claims against ADP Parties, Long alleges as follows:

        a.      Healthcare Solutions and Its Assets

1.      "In the first quarter of 2019, Butera met with Long in person and represented that Healthcare Solutions had more than $75 million in assets." [Third-Party Complaint ¶ 25, ECF 162; *see also id.* ¶ 102.a, ECF 162.]

2.      "Butera and Constantin also provided financial reports and audited financial statements to support their representations." [*Id.* ¶ 26, ECF 162.]

3.      "Butera and Constantin represented to Long verbally and via email on multiple occasions that Healthcare Solutions was a financially stable company with significant assets." [*Id.* ¶ 27, ECF 162.]

4.      "Acting as an agent for Healthcare Solutions, Butera emailed Long supposed financial statements that reflected Healthcare Solutions' financial status—these same financial statements were filed with the SEC." [*Id.* ¶ 32, ECF 162.]

        b.      The Bonds

5.      "At a meeting in Salt Lake City in 2019, Butera represented to Long that he would work with Healthcare Solutions to obtain bonds to securitize the lease agreements for the Properties." [*Id.* ¶ 42, ECF 162.]

6.      "Butera represented to Long on multiple occasions that he had obtained and executed the necessary bonds for the Properties." [*Id.* ¶ 45, ECF 162; *see also id.* ¶ 102.d, ECF 162.]

7.      "Constantin and Butera represented to Long in August 2022 that they would finish formalizing the bonds, but only if Millrock made some kind of loan to Healthcare Solutions." [*Id.* ¶ 65, ECF 162.]

8.      "During this same time period, Butera and Constantin assured Long on multiple occasions that they would finish formalizing the bonds." [*Id.* ¶ 69, ECF 162.]

9.      "Despite having represented to Long that they would finish formalizing the bonds, Butera, Smith, and Constantin never finished securing the bonds." [*Id.* ¶ 85, ECF 162.]

c.      The Equipment Allowance

10.     "Based on Butera's many assurances, Long believed that Butera was using the Equipment Allowance to equip the Properties with the necessary equipment." [*Id.* ¶ 57, ECF 162; *see also id.* ¶ 102(e), ECF 162]

11.     "American Development agreed to transfer the Equipment Allowance to Healthcare Solutions, and Healthcare Solutions was supposed to use the Equipment Allowance to purchase the necessary equipment." [*Id.* ¶ 58, ECF 162.]

None of the above allegations can sustain Long's fraud claims against ADP parties. That is true for two reasons. First, Long does not plead his fraud claims with the requisite particularity—"the who, what, when, where and how of the alleged fraud and describe the time, place, *and* contents of the false representation, the identity of the party making the false statements and the consequences thereof." *TDC Lending LLC*, 340 F. Supp. 3d at 1224

(emphasis added) (additional quotations and citation omitted). Here, each allegation Long asserts against Mr. Butera fails to meet at least one of these required elements. For example, regarding Mr. Butera's alleged representation related to Healthcare Solutions' assets, Long asserts that in 2019 Mr. Butera represented that Healthcare Solutions "had more than $75 million in assets." [Third-Party Complaint ¶ 25, ECF 162.] But Long's allegation fails to identify *where* the representation was made or provide sufficient detail regarding *when* the alleged misrepresentation was made to allow Mr. Butera fair notice.

Likewise, Long's allegations regarding Mr. Butera's representations related to the bonds are also deficient. Those allegations do not identify when, where, or how these representations were made. [*See id.* ¶ 45, ECF 162.]

Finally, Long's allegations regarding representations relating to the Equipment Allowance entirely fail to comply with Rule 9(b). Not only does Long fail to identify any alleged representation made by ADP regarding the Equipment Allowance, but, regarding Mr. Butera, Long simply alleges that Butera made "many assurances," without even attempting to identify what the assurances were, or when, where, and how such assurances were made. [*Id.* ¶ 57, ECF 162.] Without the required particularity, ADP Parties do not have fair notice of Long's claims or the factual grounds supporting those claims.

Second, Long's fraud claim fails as to ADP Parties because Long engaged in impermissible group pleading, which is entirely inconsistent with particularity requirement of Rule 9(b). *See Weber*, 2026 WL 1650734, at *6. More specifically, out of the 11 paragraphs in the Third-Party Complaint's general allegations that reference alleged representations made by Mr. Butera, six of those paragraphs state that the alleged representations were made by "Butera

19

and Constantin" or "Butera, Smith, and Constantin" or "Constantin, Smith, Butera, and American Development." [Third-Party Complaint ¶¶ 26–27, 58, 65, 69, 102, ECF 162.] As an example, Long alleges that, "Butera and Constantin assured Long on multiple occasions that they would finish formalizing the bonds." [*Id.* ¶ 69, ECF 162.] That allegation fails to meet the Rule 9(b) standard because it attributes the multiple representations to "Butera and Constantin." [*See id.*, ECF 162.] Did both individuals make the representations? Did Mr. Butera make some of the representations and Constatin make others? It is impossible to know because Long fails to provide the details that Rule 9(b) requires.

The allegations in Paragraph 102 of the Third-Party Complaint are even worse. In that paragraph, Long provides a list of alleged representations made by "Constantin, Smith, Butera, and American Development." [*Id.* ¶ 102, ECF 162.]

ADP Parties are entitled to a fair notice of Long's claims and the factual grounds supporting those claims. Because Long failed to provide that detail, ADP Parties have not received fair notice of the claims against them. Therefore, Long's fraud against the ADP Parties should be dismissed.

> 2. Long's Fraud Claim Is Barred by the Economic Loss Rule.

"The economic loss rule is a judicially-created doctrine that 'prevents recovery of economic damages under a theory of tort liability when a contract covers the subject matter of the dispute.'" *Preventive Energy Sols., L.L.C. v. nCap Ventures 5, L.L.C.*, No. 21-4099, 2023 WL 7148434, at *8 (10th Cir. Oct. 31, 2023) (unpublished) (quoting *Reighard v. Yates*, 2012 UT 45, ¶ 14, 285 P.3d 1168) (affirming district court's dismissal of claims for fraud, fraudulent inducement, fraudulent misrepresentation, and negligent misrepresentation by operation of

economic loss rule). "In essence, 'the economic loss rule prevents parties who have contracted with each other from recovering beyond the bargained-for risks.'" *Id.* (quoting *Sunridge Dev. Corp. v. RB & G Eng'g Inc.*, 2010 UT 6, ¶ 28, 230 P.3d 1000). "Application of the rule is not limited to cases where there is a direct contract between the parties." *Aclys Int'l v. Equifax*, 438 F. App'x 689, 691 (10th Cir. 2011) (unpublished); *see also Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, ¶ 23, 221 P.3d 234 ("Exempting strangers to a contract from the economic loss rule would convert a contract cause of action into one for tort.").

Here, there are contracts that cover the subject matter of Long's fraud claims. In fact, the Third-Party Complaint specifically alleges that "Smith, Constantin, *Butera, and American Development each had a contractual and/or business relationship* with Millcreek and, therefore, *with Long too regarding the Properties and the representations at issue*." [Third-Party Complaint ¶ 128 (emphasis added), ECF 162.] Additionally, Long further alleges that there were lease agreements for each of the properties and attached copies of the lease agreements as exhibits to the Third-Party Complaint. [*See id.* ¶¶ 46–52, ECF 162; *see also* Lease Agreements, ECF 162-1.] Long also alleges that "Millrock and Healthcare Solutions entered into a Loan Agreement and Promissory Note," which is also attached as an exhibit to the Third-Party Complaint. [Third-Party Complaint ¶ 66, ECF 162; *see also* Loan Agreement and Promissory Note, ECF 162-1.] Finally, Long alleges that Millrock paid ADP an Equipment Allowance and management fee in connection with agreements related to the Keller and Naperville properties. [*See* Third-Party Complaint ¶¶ 53–54, ECF 162; *see also* Keller Development Contract, Ex. 1.] In short, whether the alleged representation relates to the leases, bonds, or Equipment

Allowance, there is a contract that "covers the subject matter" of the alleged misrepresentation. *See Preventive Energy Sols., L.L.C*, 2023 WL 7148434, at *8. Consequently, Long's fraud claim against ADP Parties should be dismissed by operation of the economic loss rule.

**D.     Long's Fourth Cause of Action—Negligent Misrepresentation—Fails for Lack of Particularity and by Operation of the Economic Loss Rule.**

1.     Long's Fourth Cause of Action Fails to Comply with Rule 9(b).

"Under Utah law, negligent misrepresentation constitutes a form of fraud, therefore, the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure applies to negligent misrepresentation claims." *Logan v. Bank of Am., N.A.*, No. 2:12-cv-191-DN, 2012 WL 5874364, at *3 (D. Utah Nov. 20, 2012) (unpublished) (dismissing negligent misrepresentation claim for want of particularity).

Long's negligent misrepresentation allegations mirror his fraud allegations. [*Compare* Third-Party Complaint ¶¶ 131–34, 142–61, *with* Third-Party Complaint ¶¶ 163–66, 174–91, ECF 162.] As discussed above, Long's allegations regarding representations made by ADP Parties fail to meet the standards of Rule 9(b). [*See supra* § II.C.1.] Therefore, like his fraud claim, Long's negligent misrepresentation claim against ADP Parties also fails to comply with Rule 9(b) and should be dismissed.

2.     The Economic Loss Rule Bars Long's Negligent Misrepresentation Claim Against ADP Parties.

As noted above, Long's negligent misrepresentation allegations mirror his fraud allegations. [*Compare* Third-Party Complaint ¶¶ 131–34, 142–61, *with* Third-Party Complaint ¶¶ 163–66, 174–91, ECF 162.] Thus, for the reasons set forth in Section III.C.2 above, Long's

negligent misrepresentation claim is likewise barred by the economic loss rule.  [*See supra* § III.C.2.]

## CONCLUSION

For the reasons stated above, the Court should grant this motion and either (a) issue an order compelling arbitration and staying Long's claims against ADP, or (b) dismiss Long's claims asserted against ADP Parties.

DATED this 31st day of July, 2026.

**McNEILL | VON MAACK**

Christopher M. Von Maack
Eric K. Schnibbe
Craig M. Hansen
*Attorneys for Defendants Emanuel Butera, Jamie Butera, and Jameson LLC dba American Development Partners and Third-Party Defendants Emanuel Butera and Jameson LLC dba American Development Partners*

23

## VERIFICATION

I, Emanuel Butera, declare under criminal penalty under the law of Utah that Paragraphs 1, 5, and 9 from the above Statement of Relevant Facts are true and correct.

DATED this 31st day of July, 2026.


_/s/ Emanuel Butera_____
Emanuel Butera

## CERTIFICATE OF SERVICE

I hereby certify that I am employed by the law firm of MCNEILL VON MAACK, 236 South 300 East, Salt Lake City, Utah 84111, and that, pursuant to Rule 5(b) of the Federal Rules of Civil Procedure, a true and correct copy of the foregoing **ADP PARTIES' MOTION TO COMPEL ARBITRATION AND STAY OR, IN THE ALTERNATIVE, DISMISS THIRD-PARTY COMPLAINT** was delivered this 31st day of July, 2026, via CM/ECF to all parties and counsel registered to receive email notices of filings.

/s/ Camille Coley